*2/21/01*

*N/c to end*
*summons*
*issue*
*Receipt #*
*Caldwell/##6.*
*Dauphin Cty.*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                    :   Civil Action No.
                  Plaintiff        :   **1: CV  01-0326**
                                   :
        v.                         :
                                   :
CNA INSURANCE COMPANIES, and       :
CONTINENTAL CASUALTY COMPANY,      :   JURY TRIAL DEMANDED
                                   :
                  Defendants       :

**COMPLAINT**

FILED
HARRISBURG

FEB 2 0 2001

MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

**The Parties**

1.   Plaintiff, Joan D. Tesché ("Mrs. Tesché"), is an
adult individual domiciled and residing at 7737 Fishing Creek
Valley Road, Harrisburg, Dauphin County, Pennsylvania 17112.

2.   Defendant, CNA Insurance Companies ("CNA"), is an
Illinois corporation engaged in the business of writing,
underwriting, and/or administering various types of insurance,
including certain employers' disability plans.  CNA has its
principal place of business at CNA Plaza, Chicago, Illinois; is

qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents.

3. Defendant, Continental Casualty Company ("CCC"), a CNA affiliate, is a corporation engaged in the business of writing, underwriting, and/or administering various types of insurance, including acting as administrator, trustee, and/or insurer/underwriter of certain employers' disability plans. CCC has its principal place of business at CNA Plaza, Chicago, Illinois; is qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents.

4. Defendants and their respective employees, agents, independent contractors, affiliates, plan sponsors, plan trustees, and plan administrators arbitrarily, capriciously, and erroneously denied long-term disability benefits to Mrs. Tesché.

**Jurisdiction and Venue**

5. This is a civil action involving claims in excess of $75,000.00, exclusive of interest and costs. Jurisdiction is

based on 28 U.S.C. §1332 (diversity of citizenship) in that every issue of fact and law is between citizens of different states. Jurisdiction is also based on 28 U.S.C. §1331 (federal question jurisdiction) in that some or all of Mrs. Tesché's claims arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq., as amended.

6.   Pursuant to Section 502(a), (f) of ERISA, 29 U.S.C. §1132(a), (f), the United States District Courts have jurisdiction over actions by beneficiaries of ERISA-regulated plans to recover benefits due under such plans.  Alternatively, this court may have pendent jurisdiction over Mrs. Tesche's state-law claims, as alleged below.

7.   Venue over this action rests with the United States District Court for the Middle District of Pennsylvania.

## ALLEGATIONS COMMON TO ALL COURTS

8.   At all relevant times, Mrs. Tesché was a full-time employee of AMP Incorporated of Harrisburg, Pennsylvania.

3

9.    As an AMP employee, Mrs. Tesché was entitled to long-term disability benefits through CNA Insurance Companies "CNA") and its affiliate/underwriter/plan trustee/plan administrator, Continental Casualty Company ("CCC").  (CNA and CCC are hereafter collectively referred to as "CNA" in this complaint.)  Attached as Exhibit "A" is a copy of the disability ("LTD") policy, under which Mrs. Tesché qualified as an "Insured Employee" and/or a beneficiary or participant of the plan.

10.  CNA's LTD policy was and is an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. §1002(1), and related provisions.  Alternatively, if Mrs. Tesché's claims do not relate to an employee welfare benefit plan, such claims are governed by Pennsylvania insurance laws and common law.

11.  On or about May 3, 1997, CNA determined that Mrs. Tesché was disabled from her occupation as a System Procedure Analyst; and CNA paid benefits for the 24-month own occupation period commencing after the 180-day elimination period.

12.  By letter dated October 7, 1999, CNA determined that Mrs. Tesché did not fall within the definition of "total disability" under the policy, and that she was not entitled to

4

benefits beyond October 30, 1999, i.e., the end of the 24-month period of benefits.  Attached as Exhibit "B" is a copy of CNA's October 7, 1999 determination.

13.  By letters dated October 22, 1999 and December 3, 1999, Mrs. Tesché, through her attorney, Steven Courtney, timely appealed CNA's initial determination.  Attached as Exhibit "C" are copies of Mr. Courtney's appeal letters.

14.  In support of her appeal, Mrs. Tesché submitted a December 22, 1999 medical report from her treating physician, Steven B. Wolf, M.D.  In his report, Dr. Wolf opined that Mrs. Tesché was not employable based on her current medical condition, including her inability to perform jobs identified by CNA. Attached as Exhibit "D" is a copy of Dr. Wolf's December 22, 1999 report.

15.  By letter dated January 3, 2000, CNA and its affiliate/plan trustee/plan administrator/plan sponsor, CNA Group Benefits, confirmed that the final decision would be determined by the CNA Appeals Committee within the time period required by ERISA.  Attached as Exhibit "E" is a copy of CNA's January 3, 2000 letter.

5

16.  By letter dated February 21, 2000, CNA and CNA Group Benefits rendered an untimely final decision on Mrs. Tesché's appeal.  Attached as Exhibit "F" is a copy of CNA's February 21, 2000 decision.

17.  Mrs. Tesché has exhausted all administrative appeals of CNA's decision denying her continued receipt of LTD benefits.

18.  Mrs. Tesché applied for social security disability benefits, alleging that she was unable to perform any gainful employment.

19.  By letter dated January 15, 2001, the Social Security Administration awarded social security benefits to Mrs. Tesché retroactive to October 1, 1999.  Attached as Exhibit "G" is a copy of the Social Security Administration's January 15, 2001 award letter.

## COUNT I - BREACH OF INSURANCE CONTRACT/POLICY
### TESCHÉ v. CNA, CCC

20.  Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 19 above.

21.  This state-law cause of action is partially based on the CNA policy, a copy of which is attached as Exhibit "A." This cause of action is also based on all summary plan descriptions, claims manuals, plan documents, and other related documents (collectively "the Contract"), all of which are in defendant's possession and are incorporated by reference herein.

22.  Assuming, in the alternative, there was no written policy or contract between CNA and Mrs. Tesché, there existed an implied-in-fact contract between the parties based on their oral and written representations, course of dealing, and the surrounding circumstances.  Alternatively, Mrs. Tesché was a third-party beneficiary of the express or implied contract.

23.  Defendants, and their respective employees, agents, independent contractors, plan administrators, plan trustees, and plan sponsors, breached certain express and/or implied obligations in the Contract, including, without limitation:

(a)  they had superior knowledge regarding the requirements for continuing LTD benefits and failed to disclose such information to Mrs. Tesché as part of the appeal process;

7

(b)  CNA and its agents knew or should have known that they had a duty to disclose such material facts;

(c)  specifically, CNA did not advise Mrs. Tesché that her treating physician would have to address certain required criteria in his medical report, including "...a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education." See Exhibit "F."

(d)  they failed to counsel and notify Mrs. Tesché about the subtle but critical distinction between the own occupation definition and the any occupation definition in the Contract;

(e)  they breached their fiduciary and contractual duties of loyalty, honesty, good faith, fair dealing, and disclosure by failing to advise Mrs. Tesché about all necessary requirements for her continued receipt of LTD benefits;

(f)  they failed to provide Mrs. Tesché with an opportunity to submit additional medical evidence addressing CNA's disability criteria, and they issued an untimely decision; and

8

(g)   they breached the terms of the Contract,

because:

(i)   they wrongfully terminated Mrs. Tesché's

LTD benefits; and

(ii) Mrs. Tesché provided sufficient proof to

establish her right to continued receipt of benefits.

24.   As a result of defendants' breach of their express

and implied contractual obligations and promises, Mrs. Tesché has

sustained and will continue sustain unliquidated damages and

losses in excess of $75,000.00, representing past and ongoing LTD

benefits, plus interest and costs.

**WHEREFORE**, plaintiff demands judgment against

defendants, CNA Insurance Companies and Continental Casualty

Company, jointly and severally, in an amount in excess of

$75,000.00, exclusive of interest and costs.

9

## COUNT II - VIOLATIONS OF ERISA/EMPLOYEE BENEFIT PLAN
## TESCHÉ v. CNA, CCC

25.  Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 24 above.

26.  This cause of action is based on Section 502 of ERISA, 29 U.S.C. §§1132(a)(1)(B), 1132(a)(2), and 1132(a)(3) and related provisions, which authorize participants and beneficiaries:

(a)  to recover benefits due under the terms of a plan, or to enforce or clarify rights under the plan;

(b)  to recover damages due to breaches of fiduciary duties; and

(c)  to seek equitable relief and to redress violations of ERISA and the plan.

27.  This Court should review defendants' final decision based on a de novo standard in that:

(a)  CNA's Contract does not vest discretion in its plan administrator to construe the plan's terms and to determine claimants' eligibility for benefits;

(b)  the <u>de novo</u> standard applies to defendants' purely factual determination;

(c)  defendants and their respective representatives had a conflict of interest in evaluating and deciding Mrs. Teshcé's claim;

(d)  defendants and their respective representatives acted in bad faith and breached their fiduciary duties; and

(e)  defendants and their respective representatives failed to conduct a thorough, independent, and professional review of the relevant evidence;

(f)  the <u>de novo</u> standard is appropriate based on such other grounds as may be established through discovery and at trial.

28.  Alternatively, this Court should review and reverse defendants' decision and conclude that it was arbitrary and capricious, unsupported by substantial evidence, and/or erroneous as a matter of law.

29.  Based on defendants' violations of ERISA, breaches of its fiduciary duties, and breaches of the Contract, Mrs.

11

Tesché is entitled to all available relief under ERISA and all benefits under the plan, inclusive of prejudgment interest, attorneys' fees, treble, liquidated, and punitive damages and costs.

30. Alternatively, if the Court is not inclined to grant monetary damages and other available relief, plaintiff requests that:

(a) the Court retroactively reinstate Mrs. Tesché's benefits, with interest; or

(b) remand the case to defendants' plan administrator, with the direction that Mrs. Tesché be afforded the opportunity to submit further evidence in support of her claim.

**WHEREFORE**, plaintiff demands judgment against defendants, CNA Insurance Companies and Continental Casualty Company, jointly and severally, in an amount in excess of

$75,000.00, exclusive of interest and costs.  Plaintiff requests

such other relief as the Court deems appropriate.


Respectfully submitted,


KEEFER WOOD ALLEN & RAHAL, LLP


Dated: 2/20/01

Bradford Dorrance
I. D. No. 32147
210 Walnut Street
P. O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

(Attorneys for Plaintiff)

13

**Attach this document to  policy** 

# Continental Casualty Company

**CNA**

For All the Commitments You Make®

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

### RIDER # 6

In consideration of the payment of premium for the policy to which this rider is attached, it is hereby agreed and understood that the following named division is made a part of this policy:

M/A COM, A Division of Amp Incorporated

In all other respects, this policy will remain unchanged.

Signed By: _____    Title: _____

Date: _____

This rider takes effect on January 1, 1999, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR - 83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*Bernard L. Hengelbrugh*
Chairman of the Board

*Jonathan Kanton*
Secretary

SRR-15288                    Countersigned by
                             Licensed Resident Agent _____

# Continental Casualty Company

**CNA**
For All the Commitments You Make®

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## RIDER # 5

In consideration of the payment of the premium for the Policy to which this rider is attached, it is hereby understood and agreed that the Minimum Monthly Benefit as stated on Addendum 2 form B1-54765-A is amended to read as follows:

In no event will the Monthly Benefit payable for Total Disability (but not for Partial Disability and/or Rehabilitative Employment) be reduced to less than 10% of the Employee's base pay.

In all other respects the Policy shall remain the same.

Accepted By: *John A Vantine*

Title: *GLOBAL RISK MANAGER*

Date: _____

This rider takes effect on September 4, 1998, 12:01 A.M., Standard Time, at the address of the Holder and expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions, and provisions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. SR-83089679 issued to AMP. Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago, Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY,

*Dennis Chookaszian*
Chairman of the Board

*Jonathan Kantor*
Secretary

Attach this document to your Poli

# Continental Casualty Company

**CNA**
For All the Commitments You Make®

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## Amendment Rider #4

In consideration of the payment of the premium for the policy to which this rider is attached, We agree to waive Our right to change the premium rate. Such agreement shall be valid until __January 1, 2000__ if:

(1)    There are no changes made to the program;

(2)    There is a minimum of 10 Insured Employees and there is less than a 25% change to the number of Insured Employees since the EFFECTIVE DATE of this rider;

(3)    There are no new classes of employees, subsidiaries, affiliated companies or new acquisitions of the Employer added after the EFFECTIVE DATE of this rider.

In all other respects this policy shall remain the same.

This rider takes effect on January 1, 1998,12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP, Inc. by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookacyian*
Chairman of the Board

*D. M. Lowry*
Secretary

Countersigned by _____
Licensed Resident Agent

SRR-15288

*Laura*

**Attach this document to your Policy**

# Continental Casualty Company



For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

A Stock Company

### Amendment Rider #3

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood and agreed that the Description of Eligible Employees as stated in Item #2 of the Master Application, Z1-67957-C is amended to read as follows:

\*Active, full-time means an employee who is normally scheduled to work an average of at least 32 hours per week and meets AMP Incorporated's definition of a full-time employee.

In all other respects this policy shall remain the same.

This rider takes effect on January 1, 1997, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookaszian*

Chairman of the Board

*D. M. Lowry*

Secretary

Countersigned by _____

Licensed Resident Agent

SRR-15288

Attach this document to your Policy

## Continental Casualty Company

CNA

*For all the Commitments You Make*

| | |
|---|---|
| CNA Plaza | A Stock Company |
| Chicago, Illinois | Herein called the Company |

### Rider # 2

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood an agreed that paragraph (2) of the Exclusions and Limitations section of the policy is amended to read as follows:

(2)  Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type or drug or alcohol addiction; except that it at the end of such 24 month period, the Employee is  confined in a hospital or other institution qualified to provide care and treatment incident to such Disability:

In all other respects, the policy remains unchanged.

Accepted By:  _____

Title:  _____

Date:  _____

This rider takes effect on January 1, 1996,12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditio and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookaszian*
**Chairman of the Board**

*D. M. Lowry*
**Secretary**

Countersigned by _____
**Licensed Resident Agent**

SRR-15288

 

Attach this document to your Policy

**CNA**

## Continental Casualty Company

For all the Commitments You Make

CNA Plaza
Chicago, Illinois

A Stock Company
Herein called the Company

### Rider #1

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood an agreed that the Monthly Benefit as described in item #9 of the Master Application (Z1-67957-C) is amended to read as follows:

MONTHLY BENEFIT   -    60% of the Insured Employee's Salary (1) or $18,000 per month, whichever is the lesser amount, minus the reductions in (2) below.

In all other respects, the policy remains unchanged.

Accepted by: _____

Title:         _____

Date:        _____

This rider takes effect on January 1,1995,12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, condition and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. M. Lowry*
Secretary

*D. H. Chookaszian*
Chairman of the Board

Countersigned by _____
Licensed Resident Agent

SRR-15288



# Continental Casualty Company

**CNA**
For All the Commitments You Make*

CNA Plaza
Chicago, Illinois 60685

A Stock Company

| | FORMS ATTACHED AT ISSUANCE |
|---|---|
| AMP Incorporated | B1-68058-C |
| **EMPLOYER** | T1-68083-B37 |
| | T1-67942-B |
| SR 83089679 | B1-89395-A |
| **POLICY NUMBER** | T1-67955-B |
| | B1-89406-A |
| January 1, 1995 | T1-89397-A37 |
| **EFFECTIVE DATE** | |

We agree with the Employer to insure certain eligible employees of the Employer. We promise to pay benefits for loss covered by this policy in accordance with its provisions.

This policy is issued in consideration of the payment of premium and the statement made in the Application.

## POLICY EFFECTIVE DATE AND TERM

This policy takes effect on the Effective Date stated above. All insurance periods will be computed from that date. This policy remains in force for the period for which premium has been paid. It may be renewed for further successive periods by payment of premium as stated in this policy. We have the right to non-renew it as of the first annual anniversary date or any later premium due date. If We non-renew, We must give the Employer at least 31 days prior written notice of such non-renewal.

All periods of insurance begin and end at 12:01 a.m., Standard Time, at the Employer's address stated in the Application.

## ELIGIBLE EMPLOYEES

The employees eligible to be insured under this policy are described in Statement 2 of the Application.

## EMPLOYEE'S EFFECTIVE DATE OF INSURANCE

The insurance for employees who are eligible as of the Effective Date of this policy shall take effect on such date. The insurance for employees who become eligible after the Effective Date of this policy and enroll within 30 days shall take effect as stated in Statement 8 of the Application. The insurance of employees who enroll more than 30 days after becoming eligible will take effect on the date We approve such evidence of insurability as We may require.

If, because of Injury or Sickness, an eligible employee is not working full-time on the date the insurance would otherwise take effect, it will take effect on the day the employee returns to full-time work for a continuous period equal to the time the employee was not working full-time. This return to full-time work requirement will not exceed 30 days.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*D. H. Chookaszian*
**Chairman of the Board**

*D. W. Young*
**Secretary**

Countersigned by _____
**Licensed Resident Agent**

# Continental Casualty Company



CNA Plaza
Chicago, Illinois 60685

**A Stock Company**

SR 83089679

Application is hereby made to the Continental Casualty Company for a policy of group insurance based on the following statements and representations:

1. Employer_____**AMP Incorporated**_____
   470 Friendship Road
   Address__**P.O. Box 3608, M/S 176 -23**__City_____**Harrisburg**_____State_____**PA**_____Zip Code__**17105-3608**_____

   Nature of Business__**Mfg. Electronic and Electrical Devices**_____

2. What period of time must elapse before an employee is eligible for this coverage?

   Present Employees_____Exempt - 0 days / Non-Exempt - 3 Months_____New Employees_____Exempt - 0 days / Non-Exempt - 3 Months_____

The following group or groups of employees are eligible:

| DESCRIPTION OF ELIGIBLE EMPLOYEES |
|---|
| All active, full-time* exempt and non-exempt employees of the Holder who elect to purchase Supplemental LTD Insurance |
| *"Active, full-time" means an employee works at least 40 hours per week.  Part-time, temporary or seasonal employees are not eligible. |

3. Total Number of Employees on Payroll____**14,677**_____Total Number Eligible___**14,677**_____

4. Insured Employee Occupation Period:_____**24 months**_____

5. Premium is calculated by:      **See Addendum 1**

6. Premium is payable in the following manner:      **See Addendum 1**

7. What percent of the premium is to be paid by the Employer? ____**0**__%

8. This policy shall be made effective at 12:01 A.M., Standard Time at the above address of the Employer on **January 1, 1995** .

   The insurance of Employees who become eligible after the effective date of this policy shall become effective on:

   The first day of the month coinciding with or next following the date the eligible employee's enrollment card is received by the Employer.

Z1-67957-C

# TABLE OF CONTENTS

| | Page |
|---|---|
| Eligible Employees | 1 |
| Policy Effective Date and Term | 1 |
| Employee's Effective Date of Insurance | 1 |
| Definitions | 3 |
| Disability Benefits | 4 |
| Extension of Maximum Period Payable | 5 |
| Recurrent Disability | 5 |
| Exclusions and Limitations | 5 |
| Termination of Employee's Insurance | 6 |
| Premium | 6 |
| Waiver of Premium | 6 |
| Certificate | 6 |
| Uniform Provisions | 6-7 |
| General Provisions | 7 |
| Attachments | |

## DEFINITIONS

"Application" means the Employer's application attached to this policy.

"Disability" means Total Disability and Rehabilitative Employment.

"Injury" means bodily injury caused by an accident which results, directly and independently of all other causes, in loss which begins while the Insured Employee's coverage is in force.

"Insured Employee" means an employee whose insurance is in force under the terms of this policy.

"Monthly Benefit", "Elimination Period", and "Maximum Period Payable" mean that benefit and those periods shown in the Schedule of Benefits which apply to the Insured Employee.

"Pre-existing Condition" means a condition for which medical treatment or advice was rendered, prescribed or recommended within 90 days prior to the Insured Employee's effective date of insurance. A condition shall no longer be considered pre-existing if it causes loss which begins after the employee has been insured under this policy for a period of 12 consecutive months.

"Rehabilitative Employment" means that the Insured Employee, because of Injury or Sickness, is:
  (1)  continuously unable to perform the substantial and material duties of his regular occupation;
  (2)  under the regular care of a licensed physician other than himself; and
  (3)  gainfully employed in any occupation, on a full-time or part-time basis, for which he is or becomes qualified by education, training or experience.

"Salary" means as defined in the Schedule of Benefits.

"Schedule of Benefits" means Statement 9 of the Application for this policy.

"Sickness" means sickness or disease causing loss which begins while the Insured Employee's coverage is in force. Sickness shall not include any loss caused by or resulting from a pre-existing condition.

"Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness, is:
  (1)  continuously unable to perform the substantial and material duties of his regular occupation;
  (2)  under the regular care of a licensed physician other than himself; and
  (3)  not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period shown in Statement 4 of the Application, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:
  (1)  continuously unable to engage in any occupation to which he is or becomes qualified by education, training or experience; and
  (2)  under the regular care of a licensed physician other than himself.

"We", "Our" and "Us" means the Continental Casualty Company, Chicago, Illinois.

## DISABILITY BENEFITS

TOTAL DISABILITY BENEFIT.  We will pay the Monthly Benefit for each month of Total Disability which continues after the Elimination Period.  The Monthly Benefit will not be payable during the Elimination Period nor beyond the Maximum Period Payable.

REHABILITATIVE EMPLOYMENT BENEFIT.  We will pay a Rehabilitative Employment Benefit for each month of Rehabilitative Employment which follows: (1) the Elimination Period; or (2) a period for which Total Disability Benefits were payable.

The amount payable will be equal to the Monthly Benefit less a portion of the Insured Employee's earnings from such employment. The portion which will be deducted is the Rehabilitative Employment Reduction shown in the Schedule of Benefits.

Rehabilitative Employment Benefits will cease: (1) on the date the Insured Employee's earnings from such Rehabilitative Employment equals or exceeds 100% of the Insured Employee's pre-Disability Salary; or (2) at the end of the Maximum Period Payable, whichever occurs first.

GENERAL.  Total benefits payable for Total Disability and Rehabilitative Employment shall not exceed the Maximum Period Payable.

If a benefit is payable for a period less than 1 month, it will be paid on the basis of 1/30th of the Monthly Benefit for each day of Disability.

## EXTENSION OF MAXIMUM PERIOD PAYABLE

The Maximum Period Payable will extend beyond the age at which the Monthly Benefit otherwise ceases if the disabled employee reaches that age but has not received 12 Monthly Benefit payments during the current period of Disability. In that event, the Maximum Period Payable shall be extended during the continuance of the Disability until a total of 12 monthly payments have been made.

T1-67949-A

## RECURRENT DISABILITY

If Disability for which benefits were payable ends but recurs to the same or related causes less than six months after the end of a prior Disability, it will be considered a resumption of the prior Disability. Such recurrent Disability shall be subject to the provisions of this policy that were in effect at the time the prior Disability began.

Disability which recurs more than six months after the end of a prior Disability shall be subject to: (1) a new Elimination Period; (2) a new Maximum Period Payable; and (3) the other provisions of this policy that are in effect on the date the Disability recurs.

Disability must recur while the Insured Employee's coverage is in force under this policy.

T1-67950-B

## EXCLUSIONS AND LIMITATIONS

The policy does not cover any loss caused by or resulting from:

(1) declared or undeclared war or any act of either;

(2) Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type; except that if at the end of such 24 month period, the Employee is confined in a hospital or other institution qualified to provide care and treatment incident to such Disability:

   (a) if such confinement is for a period of not less than 14 consecutive days, indemnity will be paid during such confinement and for not longer than 90 days after the termination of such confinement; and

   (b) if, during the 90 day period specified in paragraph (a) above, an Employee is reconfined in such hospital or institution for a period of not less than 14 consecutive days, indemnity will be paid during such reconfinement and for not longer than 90 days after the termination of such reconfinement; or

(3) a Pre-existing condition.

 

## TERMINATION OF EMPLOYEE'S INSURANCE

The Insured Employee's coverage will terminate on the earliest of the following dates:
(1) the date this policy is terminated;
(2) the premium due date if the Employer fails to pay the required premium for the Insured Employee, except for an inadvertent error; or
(3) the date the Insured Employee
   (a) is no longer a member of a class eligible for this insurance,
   (b) with draws from the program,
   (c) is retired or pensioned, or
   (d) ceases work because of a leave of absence, furlough, layoff or temporary work stoppage due to a labor dispute, unless We and the Employer have agreed in writing to continue insurance during such period.

Termination will not affect a covered loss which began before the date of termination.

T1-67951-A

## PREMIUM

Premium for this policy is computed as stated in Statement 5 of the Application. It shall be paid by the Employer as stated in Statement 6 of the Application. Payment is to be made to Us or Our Agent. The Premium rate may be changed at the end of the first insurance year or any later premium due date.

### WAIVER OF PREMIUM

We will waive premium for an Insured Employee during the period of Disability for which the Monthly Benefit is payable under this policy. During this period, the Insured Employee's insurance will remain in force. This provision is subject to the Termination of Employee's Insurance provision, except for payment of premium.

T1-67952-B

## CERTIFICATES

We will deliver certificates of insurance to the Employer for issuance to each Insured Employee. The certificates will describe the benefits, to whom they are payable, the policy limitations and where this policy may be inspected.

T1-67953-A

## UNIFORM PROVISIONS

**ENTIRE CONTACT; CHANGES.** This policy, the Application, the evidence of insurability (if any) of each Insured Employee, and any attached papers are the entire contract between the parties.
Any statement made by the Employer or any Insured Employee shall, in the absence of fraud, be a representation and not a warranty.
No such statement shall void the insurance, reduce the benefits or be used in defense to a claim unless it is in writing and a copy furnished to the Employer or Insured Employee, whoever made the statement. No statement of the Employer will be used to void this policy after it has been in force for two years. No statement of any Insured Employee will be used in defense to a claim for loss incurred or disability which begins after the employee has been insured for 2 years.
No change in this policy is valid unless approved in writing on this policy by one of Our officers. No agent has the right to change this policy or to waive any of its provisions.

**GRACE PERIOD.** A grace period of 31 days is allowed for the payment of each premium due after the first premium. This policy will remain in force during the grace period.

A grace period will not apply if We have sent written notice to the Employer of Our intent not to renew this policy at least 31 days before the premium due date. Such notice will be sent to the Employer's last address as shown in Our records.

If the Employer gives Us written notice of his intent to renew this policy, the grace period will not apply. This policy will terminate on the date stated on the notice or on the date We receive such notice, whichever is later. The Employer will be liable for all premiums due for the period this policy remains in force including the grace period, if it applies.

**NOTICE OF CLAIM.** Written notice of claim must be given to Us within 30 days after the loss begins or as soon as reasonably possible

The notice will suffice if it identifies the Insured Employee and this policy. It must be sent to Us at Out Home Office, CNA Plaza, Chicago, Illinois 60685 or given to Our agent.

**CLAIM FORMS.** After We receive the written notice of claim, We will furnish claim forms within 15 days. If we do not, the claimant will be considered to have met the requirements for written proof of loss if We receive written proof which describes the occurrence, extent and nature of the loss.

**WRITTEN PROOF OF LOSS.** Written proof of loss must be furnished to Us within 90 days after the end of a period for which We are liable. If it is not possible to give the proof within 90 days, the claim is not affected if the proof is given as soon as reasonably possible. Unless the Insured Employee is legally incapacitated, written proof must be given within 1 year of the time it is otherwise due.

**TIME OF PAYMENT OF CLAIM.** Benefits will be paid monthly immediately after We receive due written proof of loss.

**PAYMENT OF CLAIM.** All Disability benefits are paid to the Insured Employee. Any accrued Disability or Survivor Income benefits unpaid at the Insured Employee's death will be paid to the named beneficiary, if any.

If there is no surviving named beneficiary, payment may be made at Our option, to the surviving person or persons in the first of the following classes of successive preference beneficiaries: the Insured Employee's (a) spouse; (b) children including legally adopted children; (c) parents; or (d) estate.

If any benefit is payable to an estate, a minor or a person not competent to give a valid release, We may pay up to $1,000 to any relative or beneficiary of the Insured Employee whom We deem to be entitled to this amount. We will be discharged to the extent of such payment made by Us in good faith.

**PHYSICAL EXAMINATION.** At Our expense, We have the right to have a physician examine the Insured Employee as often as reasonably necessary while the claim is pending.

**LEGAL ACTIONS.** No action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after 3 years (Kansas 5 years, South Carolina 6 years) from the date written proof is required.

**CONFORMITY WITH STATE STATUTES.** If any provision of this policy conflicts with the statutes of the state in which this policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute.

## GENERAL PROVISION

We have the right to inspect all of the Employer's records on this policy at any reasonable time. This right will extend until: (1) 2 years after termination of this policy; or (2) all claims under this policy have been settled, whichever is later.

This policy is not in lieu of and does not affect any requirements for coverage by Worker's Compensation Insurance.

**CNA**

*For All the Commitments You Make*®

# Continental Casualty Company

CNA Plaza
Chicago, Illinois 60685          **A Stock Company**

## POLICY TERM AND PREMIUM RATE
## GUARANTEE RIDER

We agree to waive Our right to non-renew this policy and to change the premium rate. Such agreement shall be valid until the __1st__ annual anniversary date if:

(1)  There are no changes made to the program;

(2)  There is a minimum of 10 Insured Employees and there is less than a __25%__ change to the number of Insured Employee since the EFFECTIVE DATE of this policy; and

(3)  There are no new classes of employees, subsidiaries, affiliated companies or new acquisitions of the Employer added after the EFFECTIVE DATE of this policy.

This rider takes effect on the EFFECTIVE DATE of this policy, it is subject to all definitions, conditions and provisions of this policy not inconsistent herewith.

Attached to and made a part of Policy No. __SR 83089679_____ issued to __AMP Incorporated__ by Continental Casualty Company, General Office, Chicago, Illinois but the same shall not be binding upon Us unless countersigned by Our authorized agent.

*D. H. Chookaszian*
Chairman of the Board

*D. W. Lowry*
Secretary

Countersigned by _____
**Licensed Resident Agent**

# CONTINUITY OF COVERAGE

Continuity of coverage is provided as follows for all your Employees whose coverage and/or eligibility are affected by the cancellation of your prior group long-term disability insurance policy and replaced with this policy.

**EMPLOYEES ACTIVELY-AT-WORK.** Each employee insured under the prior policy on the date the Employer changed insurers will be covered by the benefits provided under this policy if such employee is:

1)   eligible for coverage under this policy in accordance with its ELIGIBLE EMPLOYEES provision; and
2)   actively-at-work on the Effective Date of this policy.

**EMPLOYEES NOT ACTIVELY-AT-WORK.** An employee not actively-at-work, due to Injury or Sickness, on the EFFECTIVE DATE of this policy will be covered for the benefits indicated below provided such employee:

1)   was validly insured under the Employer's prior policy on the date of transfer; and
2)   is a member of the ELIGIBLE EMPLOYEES under this policy.

The benefits provided will be the benefits provided by the prior policy less any benefits paid or payable under that policy.

Coverage will be provided until the earliest of the following dates:

1)   the date the employee becomes eligible and insured under this policy as described in the ACTIVELY-AT-WORK provision above;
2)   the date the employee's coverage ends in accordance with the termination provision of this policy; or
3)   the date that is the end of any benefit extension as provided under the prior carrier's policy.

**PRE-EXISTING CONDITIONS.** If a Pre-existing Condition Exclusion is included in this policy, benefits may be payable for a disability due to a pre-existing condition for eligible employees who:

1)   were actively-at-work on the date of transfer; and
2)   insured under this policy on its Effective Date.

The benefit payable will be the benefit payable under this policy.

Any time applied towards satisfying the elimination or waiting periods of the same or similar provisions under the prior policy shall be credited towards our policy.

## SURVIVOR INCOME BENEFIT

If an Insured Employee dies after having received the benefit provided by this policy for at least 12 successive months and during a period for which benefits are payable, We will pay a Survivor Income Benefit. This benefit is equal to the amount the Insured Employee was last entitled to receive for the month preceding his death.

The Survivor Income Benefit shall be payable on a monthly basis immediately after We receive written proof of the Insured Employee's death. It is payable for the period stated in Statement 9 of the Application. The benefit shall accrue from the Insured Employee's date of death.

This benefit is payable to the beneficiary, if any, named by the Insured Employee under this policy. If no such beneficiary exists, the benefit will be payable in accordance with the PAYMENT OF CLAIMS provisions.

ADDENDUM 1

SR 83089679
Policy Number

January 1, 1995
Effective Date

AMP Incorporated
Employer

5. Premium is calculated by:

Multiplying the monthly salary for each Insured Employee by __*__ An Insured Employee's salary in excess of $30,000 per month shall not be included in the premium calculation for such Insured Employee.

6. Premium is payable in the following manner:

The policy is issued in consideration of the payment in arrears of the monthly premium which is based on the actual wage or salary of all Insured Employees for the first and each subsequent policy and calculated at the premium rate stated above.  Such payment shall be made within 20 days after the end of each monthly premium accounting period, or as soon thereafter as is reasonably possible and shall be accompanied by a premium adjustment report.

"Salary" as used in Statements 5 and 6 with respect to an Employee other than a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began.  It excludes commissions, overtime earnings, incentive pay, bonuses or other compensation.

"Salary" as used in Statements 5 and 6 with respect to a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began.  It excludes overtime earnings, incentive pay, bonuses or other compensation, but it includes the monthly average of commissions paid to the Insured Employee by the Employer during the preceding 12 month period, but not to exceed the maximum monthly benefit amount on file with the Human Resources Department.

| *Age Bond | Payroll Factor |
|-----------|----------------|
| 20 - 24   | .04%           |
| 25 - 29   | .05%           |
| 30 - 34   | .06%           |
| 35 - 39   | .10%           |
| 40 - 44   | .15%           |
| 45 - 49   | .22%           |
| 50 - 54   | .31%           |
| 55 - 59   | .43%           |
| 60 - 64   | .50%           |
| 65 - 69   | .41%           |
| 70 - 74   | .20%           |

SR 8309679
Policy Number

**ADDENDUM 2**

January 1, 1995
Effective Date

AMP Incorporated
Employer

(1) "Salary" as used in Statements 5 and 6 with respect to an Employee other than a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes commissions, overtime earnings, incentive pay, bonuses or other compensation.

"Salary" as used in Statements 5 and 6 with respect to a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes overtime earnings, incentive pay, bonuses or other compensation, but it includes the monthly average of commissions paid to the Insured Employee by the Employer during the preceding 12 month period, but not to exceed the maximum monthly benefit base amount on file with the Human Resources Department.

(2) The Monthly Benefit under this policy shall be reduced by:

1. Disability benefits paid, payable, or for which there is a right under:
   a. The Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's Disability.
   b. Any Worker's Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational injury or sickness,
   c. Any State Disability Benefit Law:

2. Disability benefits paid under:
   a. Any group insurance plan provided by or through the Employer,
   b. Any formal sick leave plan provided by the Employer, or
   c. Any Retirement Plan provided by the Employer;

3. Retirement benefits paid under the Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's retirement.

4. Retirement benefits paid under a Retirement Plan provided by the Employer for which the Insured Employee did not make a contribution.

If any benefit described above is paid in a single sum through compromise settlement or as an advance on future liability, the amount which pertains to the Insured Employee's Disability will be divided by the number of months from the date of its receipt to the end of the benefit period applicable to the Insured Employee. The result shall be deducted from the Insured Employee's Monthly Benefit.

The Monthly Benefit, after the reductions stated above, if any, will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which there is a right under any other benefit described above.

"Retirement Plan" means a plan which provides retirement benefits to employees and is not funded wholly by employee contributions. It does not include: 1) a profit sharing plan, a thrift or savings plan; 2) an individual retirement account (IRA); 3) a tax sheltered annutiy (TSA); 4) a stock ownership plan; or 5) a deferred compensation plan.

SR 83089679
Policy Number

ADDENDUM 2 (continued)

January 1, 1995
Effective Date

AMP Incorporated
Employer

In no event will the Monthly Benefit payable for Total Disability (but not for Partial Disability and/or Rehabilitative Employment) be reduced to less than $____50.00____ or __10__% of the Insured Employee's Monthly Benefit prior to the reductions stated above, whichever is greater.

SR 83089679
Policy Number

January 1, 1995
Effective Date

ADDENDUM 3

AMP Incorporated
Employer

| Age on Date Disability Commences | To the Insured Employee's 65th Birthday |
|---|---|
| 59 years or younger | 54 months |
| 60 - 64 | 30 months |
| 65 - 69 | 18 months |
| 70 - 74 | 12 months |
| 75 and older | |

B

OCT 1 1 1999

# CNA GROUP BENEFITS

P O Box 946710  Maitland  FL  32794-6710

**Laura Collins, HIA**
Disability Specialist
National Accounts Claims
Telephone   800-262-7997  x6239
Facsimile    407-919-6410

October 7, 1999

Clark De Vere
Metzger, Wickersham, Knauss & Erb, P.C.
3211 North Front Street
P.O. Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 0083089679
Continental Casualty Company

Dear Mr. De Vere:

We are contacting you with regard to the status of Ms. Tesche's Long Term Disability claim.

Initially and for the first 24 months, "Total Disability" under this policy means that, the Insured Employee, because of Injury or Sickness, is:

> 1)  continuously unable to perform the substantial and material duties of his regular occupation;
> 2)  under the regular care of a licensed physician other than himself; and
> 3)  not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

> 1)  continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
> 2)  under the regular care of a licensed physician other than himself.

Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S & P Analyst Assistant which required her to sit 7 hours per day.  Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 lbs., walk 15 minutes at a time.  He notes these are permanent restrictions. With consideration of her education, training and experience, she is not disabled from other occupations and is not entitled to benefits beyond 24 months (10/30/99).  We had her claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Exhibit "B"

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 0083089679                      -2-                      October 7, 1999
Continental Casualty Company

If you disagree with our decision, you have the right to appeal under regulations specified by the Employee Retirement Income Security Act(ERISA)1974 as amended.

If you have additional medical information not mentioned above or wish us to reconsider our decision, you should

- submit your formal request for reconsideration **in writing** to my attention **within 60 days** of the date of this letter

- addressed to       **Attn:  Laura Collins**
                     **CNA**
                     **PO BOX 946710**
                     **Maitland, FL  32794-6710**

- include your **claim number** and **policy number** on any correspondence.

Our decision will be reconsidered at the time of receipt of your information.  If this information does not alter our decision, you will be informed of this and your claim will then be submitted to the Appeals Committee for a formal review.  The Committee will issue a ruling within 60 days of receipt of your appeal as mandated by the Employee Retirement Income Security Act(ERISA)1974 as amended.  This regulations allows an additional 60 days to reach a decision if necessary, however you will be notified within the first 60 days if this review will require an extension of time to reach a decision.  This decision will be in writing and mailed directly to you or your representative.

**Appeals received later than 60 days may not be considered.**

Sincerely,

*Laura Collins*

Laura Collins, HIA

October 22, 1999

**METZGER
WICKERSHAM**
SINCE 1888

3211 North Front Street
P.O. Box 5300
Harrisburg, PA 17110-0300
717-238-8187
Fax: 717-234-9478

124 West King Street
Shippensburg, PA 17257
717-530-7515
Fax: 717-530-0734

CNA Group Benefits
National Account
P.O. Box 946710
Maitland, FL  32794-6710

Attn:  Laura Collins, HIA
       Disability Specialist

RE:  Claim No.      :   94-34900P1702
     Policy No.     :   0083089679
     My Client      :   Joan D. Tesche
     Continental Casualty Company

Dear Laura:

As you know, this office represents Joan Tesche in regards to her long-term disability claim
through her employer AMP.  I have prepared this correspondence to serve as a written request
for the "Other Information" Section regarding the appeal procedure that is referenced in the
AMP Employee Handbook regarding Long Term Disability.  Moreover, I would appreciate if
you would forward a copy of the procedure that is to be followed regarding the termination of
an employee's long-term disability status.

Please forward the aforementioned documents to my office at your earliest convenience.  In the
meantime, please contact my office with any questions or concerns.

Very truly yours,

METZGER, WICKERSHAM, KNAUSS & ERB, P.C.

Steven C. Courtney

SCC:ae

cc     Ms. Joan Tesche

Christian S. Erb, Jr.
Robert E. Yetter
James F. Carl
Edward E. Knauss, IV*
Jered L. Hock
Karl R. Hildabrand*
Richard B. Druby
Steven P. Miner
Clark DeVere
E. Ralph Godfrey
Carrie L. Carroll

*Board Certified in civil
trial law and advocacy
by the National Board
of Trial Advocacy

*Document #: 162384.1*                    Exhibit "C"

3 December 1999

**METZGER WICKERSHAM**
SINCE 1888

3211 North Front Street
P.O. Box 5300
Harrisburg, PA 17110-030
717-238-8187
Fax: 717-234-9478

VIA FACSIMILE AND REGULAR MAIL

124 West King Street
Shippensburg, PA 17257
717-530-7515
Fax: 717-530-0734

Laura Collins
CNA Group Benefits
National Account
P.O. Box 946710
Maitland, FL  32794-6710

| RE: | Claim No. | : | 94-34900P1702 |
|---|---|---|---|
| | Policy No. | : | 0083089679 |
| | My Client | : | **Joan D. Tesche** |
| | **Continental Casualty Company** | | |

Dear Laura:

Please be advised that this office represents Joan Tesche in regards to the above referenced matter.  I have prepared this letter to serve as a formal request for a reconsideration of the termination of my client's long-term disability status relative to the above referenced matter. Moreover, I have requested a medical report from Ms. Tesche's attending physician, Dr. Steven B. Wolf of Orthopedic Institute of Pennsylvania, regarding her current medical condition as well as a prognosis.  I initially made this request on October 27, 1999, however, as of the time of this letter, I have not received the medical report.  I contacted Dr. Wolf's office on the above date and I was assured that the report would be forwarded to my office in the very near future.  Please be advised that I will immediately forward to your attention a copy of this report once it is made available.

After you have had an opportunity to review this correspondence, please contact my office with any questions or concerns.  Your anticipated cooperation is appreciated.

Very truly yours,

METZGER, WICKERSHAM, KNAUSS & ERB, P.C.



Steven C. Courtney
SCC/ae
cc     Ms. Joan Tesche

Document #: 164981.1

Christian S. Erb, Jr.
Robert E. Yetter
James F. Carl
Edward E. Knauss, IV*
Jered L. Hock
Karl R. Hildabrand*
Richard B. Druby
Steven P. Miner
Clark DeVere
E. Ralph Godfrey
Carrie L. Carroll

*Board Certified in civil
trial law and advocacy
by the National Board
of Trial Advocacy

DAVID MAX??? R, M.D., F.A.C.S.
RICHA? ?OAL, M.D.
ROBERT A. DAHMUS, M.D.
WILLIAM W. DeMUTH, M.D., F.A.C.S.
JOHN R. FRANKETY II, M.D., F.A.C.S.
MARK R. GRUBB, M.D.
RICHARD H. HALLOCK, M.D.
JAMES R. HAMSHER, M.D., F.A.C.S.

# THE SPINE
# CENTER
# AT

GREGORY A. HANKS, M.D.
ALEXANDER KALEYIAK, M.D.
ROBERT R. KANEDA, D.O.
RONALD W. LIPPE, M.D., F.A.C.S.
JASON J. LITTON, M.D.
STEVEN B. WOLF, M.D.
THOMAS J. YUCHA, M.D.

# ORTHOPEDIC INSTITUTE OF PENNSYLVANIA

TELEPHONE: (717) 761-5530  •  (800) 834-4020  •  FAX: (717) 737-7197

December 22, 1999

Steven C. Courtney, Esq
3211 North Front Street
PO Box 5300
Harrisburg, PA 17110-0300

RE:  Joan D. Tesche
182 48 9637

Dear Mr. Courtney:

This letter is in reference to Joan D. Tesche, who, as you know, is a patient I have seen at the Orthopedic Institute of Pennsylvania. Unfortunately, I am no longer able to take care of Mrs. Tesche due to her current health insurance plan.

I saw Mrs. Tesche in May of 1999. At that time, she was complaining of pain her left SI joint area as well as multiple other problems. She had some involuntary shaking and movements in the arms and legs which is difficult to explain. She has had some increasing pain her back as well as in her left SI joint and has had some problems in her arms and legs as well. She has had fibromyalgia type symptoms. She also has been having some problems with her gait. Her sitting tolerance is getting worse. She cannot sit for more than a half an hour at a time and she cannot stand for more than a half an hour at a time. She cannot walk for more than fifteen minutes at a time. She is constantly shifting.

At this point, I certainly cannot see her returning to her previous job at all. Her condition seems to be worsening and I think her prognosis is poor for returning to her occupation. She is currently going to the Hershey Pain Clinic for treatment.

Her physical exam, when I saw her, showed that she had a markedly positive FABER test on the left side and she has increased pain in her left SI joint with a shock on her nerve root. She is unable to sit on her left buttock cheek very well at all. She shifts her weight when sitting. She is unable to sit in one position. She has no sciatic nerve tension signs at all. Her strength is intact in her lower extremities. Her upper extremities also shows normal strength. She has negative Hoffman's signs although her reflexes are brisk at the biceps and triceps as well as at the knees and the ankles. Her Babinski's are down going and there is no sustained clonus.

I referred Joan to Dr. Fred Hess who is a spine surgeon who could see Joan with her current health insurance plan. I felt that Joan may need a work up by a Rheumatologist as well.

ORTHOPEDIC SURGEONS, LTD.
ADDRESS ALL CORRESPONDENCE TO: 875 POPLAR CHURCH ROAD, CAMP HILL, PA 17011

CAMP HILL OFFICE        HARRISBURG OFFICE        CAMP HILL OFFICE        HERSHEY OFFICE        CAMP HILL OFFICE
3916 TRINDLE RD.        450 POWERS AVE.        890 POPLAR CHURCH RD., STE. 108    10 WEST CHOCOLATE AVE., STE. 105    875 POPLAR CHURCH RD.

RE: TESCHE, JOAN D.
PAGE 2
December 22, 1999

At this point, I do not feel that Mrs. Tesche is employable including these
positions; telemarketer, customer service representative, motel night
auditor and an automobile rental agent.

Sincerely,

Steven B. Wolf MD

SBW/nyd

Sent via fax, original to follow

E

# **CNA** GROUP BENEFITS

P O Box 946710  Maitland  FL  32794-6710

**Laura Collins, HIA**
*Disability Specialist*
*National Accounts Claims*
Telephone   800-262-7997  x6239
Facsimile    407-919-6410

January 3, 2000

Steven C. Courtney
Metzger, Wickersham, Knauss & Erb, P.C.
3211 North Front Street
P. O. Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 83089679
Continental Casualty Company

Dear Mr. Courtney:

Today we received your letter along with the letter from Steven B. Wolf, MD, dated December 22, 1999.

We have fully reviewed this information and find it provides us with no additional medical documentation that would alter our previous decision of October 7, 1999.

Therefore, at this time, we have forwarded this letter, along with Ms. Tesche's complete file to the Appeals Committee for their review.

The Appeals Committee will issue a ruling within 60 days of receipt of your appeal.  ERISA regulations allow the Committee an additional 60 days to reach a decision if necessary.  The Committee will notify you in writing if the additional time is required.

Should you have any questions, please contact our office.  Thank you.

Sincerely,

Laura Collins

Laura Collins, HIA

Exhibit "E"

F



**CNA GROUP BENEFITS**

*Group Disability-Claim Administration*
*PO Box 946710 Maitland FL 32794-6710*

*Cheryl Sauerhoff*
*Claims Consultant*
*Telephone1-800-303-9744 x 6343*

February 21, 2000

Steven Courtney
Metzger, Wickersham, Knauss & Erb, PC
3211 North Front St.
PO Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan Tesche

Claim No: 94-34900P1702
Policy No: 0083089679

Dear Mr. Courtney:

The Long-Term Disability clam of the above-mentioned claimant has been referred to Appeals pursuant to the receipt of your letter.  A comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits.

*The Long Term Disability Policy indicates that during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is:*
- *Continuously unable to perform the substantial and material duties of the regular occupation;*
- *Under the regular care of a licensed physician other than the Insured Employee; and*
- *Not gainfully employed in any occupation for which you are or become qualified by education, training or experience.*

*After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:*
- *Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience: and*
- *Under the regular care of a licensed physician other than himself.*

The date of loss was 5/3/97.  The attending physician statement was completed by Dr. Rubenstein dated 9/19/97 for a diagnosis of "chronic back pain". Ms. Tesche's occupation is noted as systems procedure analyst.  The noted restrictions are cannot perform heavy lifting, climbing, bending and tolerates prolonged sitting poorly.

The claimant was found to be disabled from her occupation and paid benefits for the 24 month own occupation period commencing after the180-day elimination period.  Based on the claimant's age, experience, geographic location, salary, education and the medical restrictions given by the treating physician, it was determined that the claimant was not totally disabled from any occupation.  Those occupations were detailed in the 10/7/99 letter and will not be revisited at this time.

Exhibit "F"

Policy No: 0083089679                    -2-

All information has been reviewed and indicated that the claimant is not less than sedentary in the physical demand level for occupational work. The medical documentation does not reflect this level of severity.

The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to one hour, sitting for one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman.

Dr. Wolf was requested to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the occupations described would not be options for the claimant but does not state why. There is no detail of any functional impairment or any information relating to the claimant's inabilities to perform her activities of daily living.

While we appreciate Dr. Wolf's opinion, the any occupation determination is a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education.

Therefore, based on the information contained within your claim file, we find that the decision to terminate benefits was correct and proper. You have exhausted your administrative remedies at this time and this decision is final and binding.

Sincerely.


Cheryl Sauerhoff
Appeals Committee Member

717 469-9277

From: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 2 of 6  Tuesday, January 30, 2001 11:01 AM

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  January 15, 2001
Claim Number:  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HA

JOAN D TESCHE
7737 FISHING CREEK
VALLEY RD
HARRISBURG, PA 17112

You are entitled to monthly disability benefits beginning October 1999.

**The Date You Became Disabled**

We found that you became disabled under our rules on May 1, 1999.  This is different from the date given on the application.

Also, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits.  For these reasons, your first month of entitlement to benefits is October 1999.

**What We Will Pay And When**

- You will receive $10,851.00 around January 21, 2001.

- This is the money you are due for October 1999 through December 2000.

- Your next payment of $749.00, which is for January 2001, will be received on or about the second Wednesday of February 2001.

- After that you will receive $749.00 on or about the second Wednesday of each month.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153

C                                        See Next Page

Exhibit "G"

717 469-9277

From: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 3 of 6  Tuesday, January 30, 2001 11:01 AM

Page 2 of 5

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HA

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| October | 1999 | $707.30 | Entitlement began |
| December | 1999 | $724.20 | Cost-of-living adjustment |
| December | 2000 | $749.50 | Cost-of-living adjustment |

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability Benefits...What You Need To Know." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A state or other public or private vocational rehabilitation provider may contact you to talk about their services. The rehabilitation provider may offer you counseling, training, and other services that may help you go to work. To keep getting disability benefits, you have to accept the services offered unless we decide you have a good reason for not accepting.

You do not have to wait to be contacted about vocational rehabilitation services. You can contact the nearest state vocational rehabilitation office directly and let them know that you are interested in receiving services.

Case 1:01-cv-00528-WWC    Document 1    Filed 02/20/2001    Page 46 of 48

717 469-9277

From: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 4 of 6  Tuesday, January 30, 2001 11:01 AM

Page 3 of 5

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HA

If you go to work, special rules can allow us to continue your cash payments and health insurance coverage. For more information about how work and earnings may affect disability benefits, you may call or visit any Social Security office. You may wish to ask for any of the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication No. 05-10052).

- How Social Security Can Help With Vocational Rehabilitation (SSA Publication No. 05-10050).

**If You Disagree With The Decisions**

If you disagree with the decisions, you have the right to appeal. A person who did not make the first decision will decide your case. We will review those parts of the decisions you disagree with and will look at any new facts you have. We may also review those parts of the case that you believe are correct and may make them unfavorable or less favorable to you.

**About The Appeals**

If you disagree with the nonmedical decisions we made on your case, the appeal is called a reconsideration. Some examples of nonmedical decisions are the amount of your payment, and the month your payment starts. You will not meet with the person who decides your case.

If you disagree with the disability (medical) decision made by the state, the appeal is called a hearing. Some examples of medical decisions are the date your disability started or whether you are still disabled.

**If You Want To Appeal**

- You have 60 days to ask for an appeal.

- The 60 days start the day after you receive this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason if you wait more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a form SSA-561-U2, called "Request for Reconsideration," or a form HA-501, called "Request for Hearing." Contact one of our offices if you want help.

**If You Ask For A Reconsideration And A Hearing**

If you ask for both a reconsideration and a hearing, we will process the hearing first, even if you made the reconsideration request first. When we make our decisions, we will send you letters explaining our decisions on both the reconsideration and the hearing.

717 469-9277

From: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 5 of 6 Tuesday, January 30, 2001 11:01 AM

Page 4 of 5

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HA

## How The Hearing Process Works

After we send your case for a hearing, an Administrative Law Judge (ALJ) will mail you a letter at least 20 days before the hearing to tell you its date, time and place. The letter will explain the law in your case and tell you what has to be decided. Since the ALJ will review all the facts in your case, it is important that you give us any new facts as soon as you can.

The hearing is your chance to tell the ALJ why you disagree with the decisions in your case. You can give the ALJ new evidence and bring people to testify for you. The ALJ also can require people to bring important papers to your hearing and give facts about your case. You can question these people at your hearing.

## It Is Important To Go To The Hearing

It is very important that you go to the hearing. If for any reason you can't go, contact the ALJ as soon as possible before the hearing and explain why. The ALJ will reschedule the hearing if you have a good reason.

If you don't go to the hearing and don't have a good reason for not going, the ALJ may dismiss your request for a hearing.

## Things To Remember For The Future

We decided that you are disabled under our rules. But, this decision must be reviewed once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

## If You Have Any Questions

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-717-782-3400. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
555 WALNUT STREET
HARRISBURG, PA 17101

717 469-9277

From: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 6 of 6 Tuesday, January 30, 2001 11:01 AM

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HA

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Carolyn W. Colvin*

Carolyn W. Colvin
Deputy Commissioner
for Operations