# ORIGINAL

*to crw/o*

*(3 pm
4/2/01)*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
HARRISBURG, PA

APR 0 2 2001

|  |  |
|---|---|
| JOAN D. TESCHE | : |
| vs. | : |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : |

CIVIL ACTION

MARY E. D'ANDREA  CLERK
Per _____
Deputy Clerk

NO. 1:CV-01-0326
(William W. Caldwell, J.)

---

## DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL CASUALTY COMPANY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) AND TO STRIKE ANY JURY TRIAL REQUEST

Defendants CNA Insurance Companies and Continental Casualty Company respectfully move this Court to dismiss Plaintiff's Complaint under and pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike any request for a jury trial for the reasons detailed in Defendants' Memorandum of Law in support of these motions, which memorandum is incorporated by reference as though set forth at length herein.

CHRISTIE, PABARUE, MORTENSEN and YOUNG
A Professional Corporation

BY: _____ 3/29/01
JAMES A. YOUNG, ESQUIRE
Attorney ID No. 00213
MICHAEL J. BURNS, ESQUIRE
Attorney ID No. 62088

1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
(215) 587-1600
(215) 587-1699 (fax)

Attorneys for Defendants

337092-1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOAN D. TESCHE | : | CIVIL ACTION |
| vs. | : | |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : | NO. 1:CV-01-0326 (William W. Caldwell, J.) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL CASUALTY COMPANY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) AND TO STRIKE ANY JURY TRIAL REQUEST**

I.    **INTRODUCTION**

The within action presents a claim for the payment of long term disability insurance benefits under an ERISA[1] employee welfare benefit plan. In her Complaint, plaintiff attempts to set forth a state law cause of action in Count I for breach of contract and in Count II a state law bad faith cause of action at sub-paragraph 27(d); requests remedies that are not available as a matter of law under ERISA in both Counts I and II of her Complaint; and, in Count II purports to set forth an ERISA-based cause of action that is compound in that it seeks relief under two different ERISA theories and overall is vague and unclear such that Count II fails to plead a legally cognizable ERISA cause of action. Accordingly, defendants CNA Insurance Companies and Continental Insurance Company ("Continental") herein move to dismiss the following: (1) Count I of plaintiff's Complaint in _toto_ and the "bad faith" assertion in sub-paragraph 27(d) in Count II on the basis that ERISA preempts all of these state law causes of action; and, (2) all non-ERISA damages sought in both Counts I and

_____

[1]  The Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001, _et seq._, as amended ("ERISA").

337092-1



Counts II.  Further, defendants move to dismiss Count II of plaintiff's Complaint as it fails to plead a cognizable ERISA cause of action or, in the alternative, seeks a more definite statement under Fed.R.C.P. 12(e).    Lastly, defendants also move to strike any jury trial request since such a trial is not provided for under ERISA.

## II.    STATEMENT OF PROCEDURAL HISTORY AND RELEVANT FACTS

Joan Tesche ("plaintiff") alleges that she is entitled to long term disability insurance benefits as a subscriber under a group disability insurance contract between Continental and her employer, AMP, Inc. ("AMP").[2] The plan through which AMP provides disability insurance benefits to its employees, including plaintiff, is an "employee welfare benefit plan" as that term is defined under ERISA, 29 U.S.C. §1102.  Indeed, at paragraph 9 of her Complaint, plaintiff avers that given her status as an employee of AMP she was "entitled to long term disability benefits" under the policy at issue.  See Exhibit "1" at Para. 9.  Plaintiff's own Complaint, therefore, confirms that this case involves an ERISA plan.

On or about February 20, 2001 plaintiff filed her Complaint in the United States District Court for the Middle District of Pennsylvania.  Upon information and belief, plaintiff through counsel sent the Complaint to defendants via regular mail on March 9, 2001. Defendants now move to dismiss plaintiff's Complaint for the reasons set forth below.

## III.    STANDARD OF REVIEW FOR A 12(b)(6) MOTION TO DISMISS

A court must dismiss under Fed.R.C.P. 12(b)(6) if it appears beyond doubt that the Plaintiff can prove no set of facts in support of the claims as plead which would entitle the Plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations raised in the complaint must be assumed to be true. Jenkins v. McKeithen, 395 U.S. 411, 421

---

[2]  Attached hereto as Exhibit "1" is a true and correct copy of plaintiff's Complaint ("Complaint").



(1969). The complaint should be construed liberally in the Plaintiff's favor, giving that party the benefit of all fair inferences which may be drawn from the allegations. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). "The issue is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## IV.  ERISA PREEMPTS ALL OF THE STATE LAW CAUSES OF ACTION AND REMEDIES PLEAD BY PLAINTIFF

It is well-established that ERISA was enacted in 1974 to comprehensively and exclusively regulate employee benefit plans. *See,* Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); 29 U.S.C. § 1002.   Congress provided that, subject only to certain limited exceptions, the rights, regulations and remedies afforded by ERISA "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The United States Supreme Court has specifically held that all state laws that relate to employee welfare benefit plans, including any common law and state statutory rights of employees seeking to recover plan benefits, are preempted by ERISA. Pilot Life, supra. ERISA further defines the term "state law" broadly to include "all laws, decisions, rules, regulations or other state action having the effect of law, of any state." 29 U.S.C. § 1144(c)(1). The Supreme Court has repeatedly stated that the preemption provision of ERISA is extremely broad. 481 U.S. at 47; Shaw v. Delta Airlines, Inc., 463 U.S. 85 (1983). A state law "relates to a benefit plan . . . if it has a connection with or reference to such a plan." 463 U.S. at 96-97.  Furthermore, because Congress used the phrase "relate to" in its broadest sense, the Supreme Court has "emphasized that the preemption clause is not limited to state laws specifically designed to affect employee benefit plans." 481 U.S. at 47-48, citing Shaw, 463 U.S. at 97.  Simply, ERISA expressly preempts state law in a "deliberately expansive" fashion. Id.

337092-1                                      3

In Pilot Life, supra, the Supreme Court held that when a plaintiff claims benefits under an employee benefit plan, ERISA provides the exclusive remedy. There, the plaintiff brought several state common law claims, including tortious breach of contract and fraud described as arising under the Mississippi law of bad faith. Plaintiff sought damages allegedly resulting from an insurance company's processing of her claim for benefits under an insurance policy provided by her employer.   The Supreme Court held that this claim, regardless of the name attached to it, was preempted because the state law at issue related to an employee benefit plan. 481 U.S. at 57. accord, Metropolitan Life Insurance Company v. Taylor, 471 U.S.. 58 (1987) (breach of contract, reinstatement of benefits, and mental anguish preempted by ERISA).

In accordance with the United States Supreme Court's decision in Pilot Life and its progeny, all of the state law causes of action alleged in plaintiff's Complaint are preempted by ERISA. Specifically, ERISA's civil enforcement mechanism under 29 U.S.C. § 1132 is the "exclusive vehicle" for enforcement of benefit claims. 481 U.S. at 56.  Thus, the common law causes of action raised in plaintiff's Complaint, each based upon the alleged improper handling of a claim for long-term disability benefits under an employee benefit plan, "undoubtedly meet the criteria for preemption under §514(a)." 481 U.S. at 48.

More specifically, ERISA comprehensively regulates employee welfare benefit plans funded through the purchase of insurance or as otherwise provide medical benefits. Arber v. Equitable Beneficial Life Ins. Co., 848 F.Supp. 1204, 1210 (E.D. Pa. 1994). In Arber, which involved a claim for the payment of medical benefits, plaintiff's state law cause of action for breach of contract was found to be preempted by ERISA. Id.  It is equally well-settled in this Circuit that not only is a state law breach of contract cause of action preempted by ERISA, but any claim for wrongful denial of employee benefits brought under Pennsylvania's "bad faith" insurance statute is also preempted. Garner v. Blue Cross, 859 F. Supp. 145, 148-49,

(M.D. Pa. 1994), aff'd 52 F.3d 314, cert. denied 116 S. Ct. 189 (1995) (alleged breach of contract, negligence and violation of Pennsylvania "bad faith" insurance statute claims all preempted by ERISA); Hall v. Hartford Life and Accident Ins. Co., 1995 U.S. Dist. Lexis 2097 (E.D. Pa., February 24, 1995) (Kelly, J.) (alleged violation of Pennsylvania "bad faith" statute preempted by ERISA); Ruth v. UNUM Life Ins. Co. of America, 1994 U.S. Dist. Lexis 12501 (E.D. Pa., September 6, 1994) (Giles, J.) (alleged breach of contract, other common law tort claims and violation of Pennsylvania "bad faith" insurance statute claims preempted by ERISA); Booz v. UNUM Life Ins. Co. of America, 1993 U.S. Dist. Lexis 13143 (E.D. Pa., July 29, 1993) (Newcomer, J.) (alleged breach of contract and violation of Pennsylvania "bad faith" insurance statute preempted by ERISA).[3]

Plaintiff's purported claim for violation of the covenant of fair dealing at paragraph 23(e) of Count I is also expressly preempted. In Garner v. Capital Blue Cross, 859 F.Supp. 145 (M.D. Pa. 1994), aff'd. 52 F.3d 314 (3d Cir. 95), the plaintiff filed suit to recover health insurance benefits under an employee welfare benefit plan and asserted claims for negligence, negligent or intentional infliction of emotional distress, bad faith denial of claim (pursuant to 42 Pa. Cons. Stat. §8371), fraud, violation of covenants of good faith and fair dealing and breach of contract. The District Court noted that all of the plaintiff's claims related to an employee welfare benefit plan under ERISA and were preempted. The court also noted that ERISA is an equitable statute and that its civil remedies provisions contemplate equitable actions and do not provide for awards of money damages. Id., 859 F.Supp. at 148-150.

The overwhelming weight of authority clearly establishes that any and all state causes of action plead in Count I of plaintiff's Complaint are preempted by ERISA and must be dismissed. Further, to the extent plaintiff seeks to assert a state law "bad faith" claim in

---

[3]  These cases are attached as Exhibit 2A, 2B, and 2c.

Count II at sub-paragraph 27(d), such a claim is also preempted by ERISA. Accordingly, the claims must be stricken and dismissed with prejudice.

### A. Plaintiff's Request For Non-ERISA Damages Also Must Be Stricken

Moreover, plaintiff's non-ERISA damage claims also must be stricken as preempted. Plaintiff's demand for punitive, unliquidated and liquidated, and treble damages, whether plead in Count I or Count II of plaintiff's Complaint, must be dismissed because these state law damage claims are not available in a claim for benefits under ERISA. Mertens v. Hewitt, -- U.S. --, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); Pane v. RCA Corp., 868 F.2d 631 (3d Cir. 1989). Thus, any claim for compensatory damages, liquidated or unliquidated damages, treble damages, punitive damages, pre-judgment interest and any other non-ERISA damage claim as set forth in plaintiff's Complaint must be stricken and dismissed as preempted. Id.

### V. PLAINTIFF IS NOT ENTITLED TO A JURY TRIAL

Plaintiff's jury demand must be stricken because ERISA does not provide for a jury trial in these cases. Pane v. RCA Corp., 868 F.2d 631 (3d Cir. 1989); See also, Biggers v. Wittek Industries, Inc., 4 F.3d 291, 297 (4th Cir. 1993); Borst v. Chevron Corp., 36 F.3d 1308 (5th Cir. 1994), cert. denied, -- U.S. --, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995) (ERISA claims do not entitle a plaintiff to a jury trial); Wardle v. Central States, Southeast and Southwest Area Pension Fund, 627 F.2d 820 (7th Cir. 1980), cert denied 449 U.S. 1112, 66 L.Ed. 2d 841, 101 S.Ct. 922 (1981) (as an ERISA §1132(a)(1)(B) benefit claim is equitable in nature, no right to a jury trial exists); Houghton v. SIPCO, 38 F.3d 953, 957 (8th Cir. 1994) (no right to money damages or to a jury trial under ERISA); Kirk v. Provident Life & Acc. Ins. Co., 942 F.2d 504 (9th Cir. 1991) (plaintiff's argument that he was entitled to a jury trial in his action challenging the denial of benefits under an ERISA health plan was without merit); Blake v. Unionmutual Stock Life Ins. Co., 906 F.2d 1525 (11th Cir. 1990).

## VI.    COUNT II OF PLAINTIFF'S COMPLAINT FAILS TO STATE A SINGLE, COGNIZABLE CAUSE OF ACTION UNDER ERISA

In Count II of her Complaint, plaintiff attempts to assert a cause of action under ERISA. Unfortunately, as drafted, Count II contains a hodgepodge of allegations that implicate state law claims and two types of claims under ERISA. For example, as above, sub-paragraph 27(d) seems to assert a state law "bad faith" claim as under ERISA there is no such thing as a bad faith claim, see 29 U.S.C. Section 1132. Similarly, plaintiff alleges that defendants committed "breaches of the Contract" at paragraph 29. Throughout Count II, plaintiff asserts at least two distinct, separate claims under ERISA – denial of benefits under section (a)(1)(b) and (a)(3) and breach of fiduciary duty under (a)(2). See Exhibit 1 at para. 26, 27, and 29. Moreover, Count II states the reasons why plaintiff's believe that a de novo standard of review should apply but it fails to precisely set forth the specific acts or omissions which underlie the general averment that ERISA has been violated. Count II as written fails to identify in any understandable manner a specific ERISA cause of action or any precise issue that defendant will be called upon to defend against in this action. Simply, Count II fails to plead a single, cognizable cause of action under ERISA.

In the alternative, to dismissing Count II in its entirety, defendants pursuant to Fed.R.C.P. 12(e) move this Court for an order requiring plaintiff to plead a more definite statement of the facts and law underlying any alleged ERISA claim.

## VII.    CONCLUSION

Because all of the state law causes of action and non-ERISA remedies in plaintiff's Complaint in both Counts I and II are preempted by ERISA, defendants' Motion to Dismiss must be granted. Count I of Plaintiff's Complaint, in toto, Count II at sub-paragraph 27(d), and plaintiff's request for "prejudgment interest, treble, liquidated, and punitive damages" at

paragraph 29 of Count II must be stricken and dismissed with prejudice. Further, Plaintiff's jury trial demand must be stricken as there is no right to a jury trial under ERISA. Lastly, because Count II fails to state a coherent, that is legally cognizable, ERISA cause of action, it must be stricken and dismissed, or plaintiff must be ordered to plead it more specifically so that defendants can identify the issues that they will be called to defend against herein.

CHRISTIE, PABARUE, MORTENSEN and YOUNG
A Professional Corporation

BY: _____

JAMES A. YOUNG, ESQUIRE
Attorney ID No. 00213
MICHAEL J. BURNS, ESQUIRE
Attorney ID No. 62088

1880 JFK Blvd., 10th Floor
Philadelphia, PA  19103
(215) 587-1600
(215) 587-1629 (fax)

Attorneys for Defendants

Dated: __3/29/01_____

337092-1

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on this 29th day of March, 2001 has caused to be served the foregoing document upon all other parties to this action by depositing a copy, postage prepaid in the United States mail addressed as follows:

Bradford Dorrance, Esquire
Keefer Wood Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963

BY: _____
MICHAEL J. BURNS, ESQUIRE

337092-1

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

MIDDLE ———————— DISTRICT OF ———————— PENNSYLVANIA

Joan D. Tesche

**V.**

CNA Insurance Companies and
Continental Casualty Company

## SUMMONS IN A CIVIL CASE

CASE NUMBER: 1:CV-01-326

TO: (Name and address of defendant)

    (SEE COMPLAINT)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Bradford Dorrance, Esquire
Keefer Wood Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

an answer to the complaint which is herewith served upon you, within _____ twenty (20) _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of
time after service.

MARY E. D'ANDREA

CLERK

February 20, 2001

DATE

(BY) DEPUTY CLERK

# NOTICE OF JUDICIAL ASSIGNMENT

This case has been assigned to the Judicial Officer indicated below. Counsel and all parties are advised that there is an Office of the Clerk in the Federal Courthouses in Scranton, Harrisburg and Williamsport, Pennsylvania. Please file all pleadings directly with the Clerk's Office in which the Judicial Officer is stationed. Do not file any courtesy copies with the court.

In accordance with the local rules, counsel will file the original and two copies of all pleadings, motions, memoranda and other documents except discovery material, with the Clerk's Office. Counsel should file any additional copies with the Clerk's Office as may be required by the Local Rules, an Order of Court, or as required by the assigned Judicial Officer listed below.

## JUDICIAL ASSIGNMENT

_____ Judge Thomas I. Vanaskie

_____ Judge A. Richard Caputo

_____ Judge James M. Munley

_____ Judge William J. Nealon

_____ Judge Richard P. Conaboy

_____ Judge Edwin M. Kosik

## CLERK'S OFFICE ADDRESS

William J. Nealon Federal Building &
U.S. District Courthouse
235 N. Washington Avenue
P.O. Box 1148
Scranton, Pennsylvania 18501
(570) 207-5600

---

_____ Judge Sylvia H. Rambo

_____ Judge Yvette Kane

__X__ Judge William W. Caldwell

U.S. District Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, Pennsylvania 17108
(717) 221-3920

---

_____ Judge James F. McClure

_____ Judge Malcolm Muir

U.S. District Courthouse
240 W. Third Street
P.O. Box 608
Williamsport, Pennsylvania 17701
(570) 323-6380

---

NOTE: This case has been referred to the U.S. Magistrate Judge noted below. Please file all documents at the location indicated.

_____ Magistrate Judge J. Andrew Smyser          Harrisburg Address

_____ Magistrate Judge   Malachy Mannion          Scranton Address

_____ Magistrate Judge Thomas M. Blewitt          Scranton Address

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                    :    Civil Action No.

        Plaintiff            :

   v.                            :    1: CV  01-0385

CNA INSURANCE COMPANIES, and       :
CONTINENTAL CASUALTY COMPANY,      :
                        JURY TRIAL DEMANDED

        Defendants           :

## COMPLAINT

### The Parties

1.    Plaintiff, Joan D. Tesché ("Mrs. Tesché"), is an adult individual domiciled and residing at 7737 Fishing Creek Valley Road, Harrisburg, Dauphin County, Pennsylvania 17112.

2.    Defendant, CNA Insurance Companies ("CNA"), is an Illinois corporation engaged in the business of writing, underwriting, and/or administering various types of insurance, including certain employers' disability plans.  CNA has its principal place of business at CNA Plaza, Chicago, Illinois; is

qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents.

3.    Defendant, Continental Casualty Company ("CCC"), a CNA affiliate, is a corporation engaged in the business of writing, underwriting, and/or administering various types of insurance, including acting as administrator, trustee, and/or insurer/underwriter of certain employers' disability plans.  CCC has its principal place of business at CNA Plaza, Chicago, Illinois; is qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents.

4.    Defendants and their respective employees, agents, independent contractors, affiliates, plan sponsors, plan trustees, and plan administrators arbitrarily, capriciously, and erroneously denied long-term disability benefits to Mrs. Tesché.

**Jurisdiction and Venue**

5.    This is a civil action involving claims in excess of $75,000.00, exclusive of interest and costs.  Jurisdiction is

2

based on 28 U.S.C. §1332 (diversity of citizenship) in that every issue of fact and law is between citizens of different states. Jurisdiction is also based on 28 U.S.C. §1331 (federal question jurisdiction) in that some or all of Mrs. Tesché's claims arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq., as amended.

6.    Pursuant to Section 502(a), (f) of ERISA, 29 U.S.C. §1132(a), (f), the United States District Courts have jurisdiction over actions by beneficiaries of ERISA-regulated plans to recover benefits due under such plans.  Alternatively, this court may have pendent jurisdiction over Mrs. Tesche's state-law claims, as alleged below.

7.    Venue over this action rests with the United States District Court for the Middle District of Pennsylvania.

## ALLEGATIONS COMMON TO ALL COURTS

8.    At all relevant times, Mrs. Tesché was a full-time employee of AMP Incorporated of Harrisburg, Pennsylvania.

9.    As an AMP employee, Mrs. Tesché was entitled to long-term disability benefits through CNA Insurance Companies "CNA") and its affiliate/underwriter/plan trustee/plan administrator, Continental Casualty Company ("CCC").   (CNA and CCC are hereafter collectively referred to as "CNA" in this complaint.)  Attached as Exhibit "A" is a copy of the disability ("LTD") policy, under which Mrs. Tesché qualified as an "Insured Employee" and/or a beneficiary or participant of the plan.

10.   CNA's LTD policy was and is an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. §1002(1), and related provisions.  Alternatively, if Mrs. Tesché's claims do not relate to an employee welfare benefit plan, such claims are governed by Pennsylvania insurance laws and common law.

11.   On or about May 3, 1997, CNA determined that Mrs. Tesché was disabled from her occupation as a System Procedure Analyst; and CNA paid benefits for the 24-month own occupation period commencing after the 180-day elimination period.

12.   By letter dated October 7, 1999, CNA determined that Mrs. Tesché did not fall within the definition of "total disability" under the policy, and that she was not entitled to

4

benefits beyond October 30, 1999, i.e., the end of the 24-month period of benefits. Attached as Exhibit "B" is a copy of CNA's October 7, 1999 determination.

13. By letters dated October 22, 1999 and December 3, 1999, Mrs. Tesché, through her attorney, Steven Courtney, timely appealed CNA's initial determination. Attached as Exhibit "C" are copies of Mr. Courtney's appeal letters.

14. In support of her appeal, Mrs. Tesché submitted a December 22, 1999 medical report from her treating physician, Steven B. Wolf, M.D. In his report, Dr. Wolf opined that Mrs. Tesché was not employable based on her current medical condition, including her inability to perform jobs identified by CNA. Attached as Exhibit "D" is a copy of Dr. Wolf's December 22, 1999 report.

15. By letter dated January 3, 2000, CNA and its affiliate/plan trustee/plan administrator/plan sponsor, CNA Group Benefits, confirmed that the final decision would be determined by the CNA Appeals Committee within the time period required by ERISA. Attached as Exhibit "E" is a copy of CNA's January 3, 2000 letter.

5

16. By letter dated February 21, 2000, CNA and CNA Group Benefits rendered an untimely final decision on Mrs. Tesché's appeal. Attached as Exhibit "F" is a copy of CNA's February 21, 2000 decision.

17. Mrs. Tesché has exhausted all administrative appeals of CNA's decision denying her continued receipt of LTD benefits.

18. Mrs. Tesché applied for social security disability benefits, alleging that she was unable to perform any gainful employment.

19. By letter dated January 15, 2001, the Social Security Administration awarded social security benefits to Mrs. Tesché retroactive to October 1, 1999. Attached as Exhibit "G" is a copy of the Social Security Administration's January 15, 2001 award letter.

## COUNT I - BREACH OF INSURANCE CONTRACT/POLICY
### TESCHÉ v. CNA, CCC

20. Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 19 above.

21.  This state-law cause of action is partially based on the CNA policy, a copy of which is attached as Exhibit "A." This cause of action is also based on all summary plan descriptions, claims manuals, plan documents, and other related documents (collectively "the Contract"), all of which are in defendant's possession and are incorporated by reference herein.

22.  Assuming, in the alternative, there was no written policy or contract between CNA and Mrs. Tesché, there existed an implied-in-fact contract between the parties based on their oral and written representations, course of dealing, and the surrounding circumstances.  Alternatively, Mrs. Tesché was a third-party beneficiary of the express or implied contract.

23.  Defendants, and their respective employees, agents, independent contractors, plan administrators, plan trustees, and plan sponsors, breached certain express and/or implied obligations in the Contract, including, without limitation:

(a)  they had superior knowledge regarding the requirements for continuing LTD benefits and failed to disclose such information to Mrs. Tesché as part of the appeal process;

7

(b)  CNA and its agents knew or should have known that they had a duty to disclose such material facts;

(c)  specifically, CNA did not advise Mrs. Tesché that her treating physician would have to address certain required criteria in his medical report, including "...a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education."  See Exhibit "F."

(d)  they failed to counsel and notify Mrs. Tesché about the subtle but critical distinction between the own occupation definition and the any occupation definition in the Contract;

(e)  they breached their fiduciary and contractual duties of loyalty, honesty, good faith, fair dealing, and disclosure by failing to advise Mrs. Tesché about all necessary requirements for her continued receipt of LTD benefits;

(f)  they failed to provide Mrs. Tesché with an opportunity to submit additional medical evidence addressing CNA's disability criteria, and they issued an untimely decision; and

8

(g)  they breached the terms of the Contract, because:

(i)  they wrongfully terminated Mrs. Tesché's LTD benefits; and

(ii)  Mrs. Tesché provided sufficient proof to establish her right to continued receipt of benefits.

24.  As a result of defendants' breach of their express and implied contractual obligations and promises, Mrs. Tesché has sustained and will continue sustain unliquidated damages and losses in excess of $75,000.00, representing past and ongoing LTD benefits, plus interest and costs.

**WHEREFORE**, plaintiff demands judgment against defendants, CNA Insurance Companies and Continental Casualty Company, jointly and severally, in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT II - VIOLATIONS OF ERISA/EMPLOYEE BENEFIT PLAN
### TESCHÉ v. CNA, CCC

25.  Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 24 above.

26.  This cause of action is based on Section 502 of ERISA, 29 U.S.C. §§1132(a)(1)(B), 1132(a)(2), and 1132(a)(3) and related provisions, which authorize participants and beneficiaries:

(a)  to recover benefits due under the terms of a plan, or to enforce or clarify rights under the plan;

(b)  to recover damages due to breaches of fiduciary duties; and

(c)  to seek equitable relief and to redress violations of ERISA and the plan.

27.  This Court should review defendants' final decision based on a <u>de novo</u> standard in that:

(a)  CNA's Contract does not vest discretion in its plan administrator to construe the plan's terms and to determine claimants' eligibility for benefits;

(b)   the _de novo_ standard applies to defendants'

purely factual determination;

(c)   defendants and their respective

representatives had a conflict of interest in evaluating and

deciding Mrs. Teshcé's claim;

(d)   defendants and their respective

representatives acted in bad faith and breached their fiduciary

duties; and

(e)   defendants and their respective

representatives failed to conduct a thorough, independent, and

professional review of the relevant evidence;

(f)   the _de novo_ standard is appropriate based on

such other grounds as may be established through discovery and at

trial.

28.   Alternatively, this Court should review and

reverse defendants' decision and conclude that it was arbitrary

and capricious, unsupported by substantial evidence, and/or

erroneous as a matter of law.

29.   Based on defendants' violations of ERISA, breaches

of its fiduciary duties, and breaches of the Contract, Mrs.

11

Tesché is entitled to all available relief under ERISA and all benefits under the plan, inclusive of prejudgment interest, attorneys' fees, treble, liquidated, and punitive damages and costs.

30.  Alternatively, if the Court is not inclined to grant monetary damages and other available relief, plaintiff requests that:

(a)  the Court retroactively reinstate Mrs. Tesché's benefits, with interest; or

(b)  remand the case to defendants' plan administrator, with the direction that Mrs. Tesché be afforded the opportunity to submit further evidence in support of her claim.

WHEREFORE, plaintiff demands judgment against defendants, CNA Insurance Companies and Continental Casualty Company, jointly and severally, in an amount in excess of

$75,000.00, exclusive of interest and costs.  Plaintiff requests such other relief as the Court deems appropriate.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 2/20/01

Bradford Dorrance
I. D. No. 32147
210 Walnut Street
P. O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

(Attorneys for Plaintiff)

13

Attach this document to your policy

A

# Continental Casualty Company



**For All the Commitments You Make***

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## RIDER # 6

In consideration of the payment of premium for the policy to which this rider is attached; it is hereby agreed and understood that the following named division is made a part of this policy:

M/A COM, A Division of Amp Incorporated

In all other respects, this policy will remain unchanged.

Signed By: _____    Title: _____

Date: _____

This rider takes effect on January 1, 1999, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR - 83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*Bernard L. Hingelbaugh*
Chairman of the Board

*Jonathan Kanton*
Secretary

**SRR-15288**

Countersigned by
Licensed Resident Agent  _____

HIPH 85089679

# Continental Casualty Company

**CNA**
For All the Commitments You Make®

CNA Plaza                    A Stock Company
Chicago, Illinois  60685

## RIDER # 5

In consideration of the payment of the premium for the Policy to which this rider is attached, it is hereby understood and agreed that the Minimum Monthly Benefit as stated on Addendum 2 form B1-54765-A is amended to read as follows:

In no event will the Monthly Benefit payable for Total Disability (but not for Partial Disability and/or Rehabilitative Employment) be reduced to less than 10% of the Employee's base pay.

In all other respects the Policy shall remain the same.

Accepted By: _John A Vantine_____

Title: _GLOBAL RISK MANAGER_____

Date: _____

This rider takes effect on September 4, 1998, 12:01 A.M., Standard Time, at the address of the Holder; expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions, and provisions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. SR-83089679  issued to <u>AMP, Incorporated</u> by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago, Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY,

_Dennis Chookaszian_
**Chairman of the Board**

_Jonathan Kanter_
**Secretary**

Attach this document to your Pol

# Continental Casualty Company


For All the Commitments You Make®

CNA Plaza · · A Stock Company
Chicago, Illinois 60685

### Amendment Rider #4

In consideration of the payment of the premium for the policy to which this rider is attached, We agree to waive Our right to change the premium rate. Such agreement shall be valid until <u>January 1, 2000</u> if:

    (1)      There are no changes made to the program;

    (2)      There is a minimum of 10 Insured Employees and there is less than a <u>25%</u> change to the number of Insured Employees since the EFFECTIVE DATE of this rider;

    (3)      There are no new classes of employees, subsidiaries, affiliated companies or new acquisitions of the Employer added after the EFFECTIVE DATE of this rider.

In all other respects this policy shall remain the same.

This rider takes effect on January 1, 1998, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP, Inc. by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookacjian*

**Chairman of the Board**

*D. M. Lowy*

**Secretary**

Countersigned by _____

**SRR-15288**

**Licensed Resident Agent**

*Laura*

Attach this document to your Policy

# Continental Casualty Company

**CNA**
For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## Amendment Rider #3

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood and agreed that the Description of Eligible Employees as stated in Item #2 of the Master Application, Z1-67957-C is amended to read as follows:

*Active, full-time means an employee who is normally scheduled to work an average of at least 32 hours per week and meets AMP Incorporated's definition of a full-time employee.

In all other respects this policy shall remain the same.

This rider takes effect on January 1, 1997,12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookaszian*
Chairman of the Board

*D. M. Lowry*
Secretary

Countersigned by _____
Licensed Resident Agent

SRR-15288

Attach this document to your Policy

**CNA**

For all the Commitments You Make

# *Continental Casualty Company*

CNA Plaza
Chicago, Illinois

A Stock Company
Herein called the Company

### Rider # 2

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood an agreed that paragraph (2) of the Exclusions and Limitations section of the policy is amended to read as follows:

(2) Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type or drug or alcohol addiction; except that it at the end of such 24 month period, the Employee is confined in a hospital or other institution qualified to provide care and treatment incident to such Disability:

In all other respects, the policy remains unchanged.

Accepted By: _____

Title: _____

Date: _____

This rider takes effect on January 1, 1996, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookasyian*

Chairman of the Board

*D. M. Lowry*

Secretary

Countersigned by _____
Licensed Resident Agent

SRR-15288

Attach this document to your Policy

# Continental Casualty Company

**CNA**

For all the Commitments You Make

CNA Plaza
Chicago, Illinois

A Stock Company
Herein called the Company

### Rider #1

In consideration of the payment of the premium for the policy to which this rider is attached, it is hereby understood an agreed that the Monthly Benefit as described in item #9 of the Master Application (Z1-67957-C) is amended to read as follows:

MONTHLY BENEFIT   -   60% of the Insured Employee's Salary (1) or $18,000 per month, whichever is the lesser amount, minus the reductions in (2) below.

In all other respects, the policy remains unchanged.

Accepted by: _____

Title:     _____

Date:     _____

This rider takes effect on January 1, 1995, 12:01 A.M., Standard Time, at the address of the Holder; it expires concurrently with the policy to which it is attached and is subject to all the definitions, conditions and provisions of the policy not inconsistent herewith.

Attached to and made part of Policy No. SR#83089679 issued to AMP Incorporated by the CONTINENTAL CASUALTY COMPANY, General Office, Chicago Illinois, but the same shall not be binding upon the Company unless countersigned by its duly authorized agent.

*D. H. Chookaszian*
Chairman of the Board

*D. W. Long*
Secretary

Countersigned by _____
Licensed Resident Agent

SRR-15288

# Continental Casualty Company

**CNA**
For All the Commitments You Make®

CNA Plaza
Chicago, Illinois 60685

A Stock Company

AMP Incorporated
EMPLOYER

SR 83089679
POLICY NUMBER

January 1, 1995
EFFECTIVE DATE

FORMS ATTACHED AT ISSUANCE
B1-68058-C
T1-68083-B37
T1-67942-B
B1-89395-A
T1-67955-B
B1-89406-A
T1-89397-A37

We agree with the Employer to insure certain eligible employees of the Employer. We promise to pay benefits for loss covered by this policy in accordance with its provisions.

This policy is issued in consideration of the payment of premium and the statement made in the Application.

## POLICY EFFECTIVE DATE AND TERM

This policy takes effect on the Effective Date stated above. All insurance periods will be computed from that date. This policy remains in force for the period for which premium has been paid. It may be renewed for further successive periods by payment of premium as stated in this policy. We have the right to non-renew it as of the first annual anniversary date or any later premium due date. If We non-renew, We must give the Employer at least 31 days prior written notice of such non-renewal.

All periods of insurance begin and end at 12:01 a.m., Standard Time, at the Employer's address stated in the Application.

## ELIGIBLE EMPLOYEES

The employees eligible to be insured under this policy are described in Statement 2 of the Application.

## EMPLOYEE'S EFFECTIVE DATE OF INSURANCE

The insurance for employees who are eligible as of the Effective Date of this policy shall take effect on such date. The insurance for employees who become eligible after the Effective Date of this policy and enroll within 30 days shall take effect as stated in Statement 8 of the Application. The insurance of employees who enroll more than 30 days after becoming eligible will take effect on the date We approve such evidence of insurability as We may require.

If, because of Injury or Sickness, an eligible employee is not working full-time on the date the insurance would otherwise take effect, it will take effect on the day the employee returns to full-time work for a continuous period equal to the time the employee was not working full-time. This return to full-time work requirement will not exceed 30 days.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*D. H. Chookaszian*
Chairman of the Board

*D. M. Lowry*
Secretary

Countersigned by _____
Licensed Resident Agent

# Continental Casualty Company



**For All the Commitments You Make®**

CNA Plaza
Chicago, Illinois 60685

**A Stock Company**

SR 83089679

Application is hereby made to the Continental Casualty Company for a policy of group insurance based on the following statements and representations:

1. Employer _____ AMP Incorporated _____
   470 Friendship Road
   Address __P.O. Box 3608, M/S 176 -23__ City _____ Harrisburg _____ State ___ PA ___ Zip Code __17105-3608__

   Nature of Business __Mfg. Electronic and Electrical Devices__

2. What period of time must elapse before an employee is eligible for this coverage?

   |                   | Exempt - 0 days              |                  | Exempt - 0 days        |
   |-------------------|------------------------------|------------------|------------------------|
   | Present Employees | Non-Exempt  - 3 Months       | New Employees    | Non-Exempt - 3 Months  |

The following group or groups of employees are eligible:

| DESCRIPTION OF ELIGIBLE EMPLOYEES |
|-----------------------------------|
| All active, full-time* exempt and non-exempt employees of the Holder who elect to purchase Supplemental LTD Insurance |
| *"Active, full-time" means an employee works at least 40 hours per week.  Part-time, temporary or seasonal employees are not eligible. |

3. Total Number of Employees on Payroll _____ 14,677 _____ Total Number Eligible ___ 14,677 ___

4. Insured Employee Occupation Period: _____ 24 months _____

5. Premium is calculated by:     See Addendum 1

6. Premium is payable in the following manner:     See Addendum 1

7. What percent of the premium is to be paid by the Employer?     0     %

8. This policy shall be made effective at 12:01 A.M., Standard Time at the above address of the Employer on _January 1, 1995_.

   The insurance of Employees who become eligible after the effective date of this policy shall become effective on:

   The first day of the month coinciding with or next following the date the eligible employee's enrollment card is received by the Employer.

Z1-67957-C

# TABLE OF CONTENTS

| | Page |
|---|---|
| Eligible Employees | 1 |
| Policy Effective Date and Term | 1 |
| Employee's Effective Date of Insurance | 1 |
| Definitions | 3 |
| Disability Benefits | 4 |
| Extension of Maximum Period Payable | 5 |
| Recurrent Disability | 5 |
| Exclusions and Limitations | 5 |
| Termination of Employee's Insurance | 6 |
| Premium | 6 |
| Waiver of Premium | 6 |
| Certificate | 6 |
| Uniform Provisions | 6-7 |
| General Provisions | 7 |
| Attachments | |

## DEFINITIONS

"Application" means the Employer's application attached to this policy.

"Disability" means Total Disability and Rehabilitative Employment.

"Injury" means bodily injury caused by an accident which results, directly and independently of all other causes, in loss which begins while the Insured Employee's coverage is in force.

"Insured Employee" means an employee whose insurance is in force under the terms of this policy.

"Monthly Benefit", "Elimination Period", and "Maximum Period Payable" mean that benefit and those periods shown in the Schedule of Benefits which apply to the Insured Employee.

"Pre-existing Condition" means a condition for which medical treatment or advice was rendered, prescribed or recommended within 90 days prior to the Insured Employee's effective date of insurance.  A condition shall no longer be considered pre-existing if it causes loss which begins after the employee has been insured under this policy for a period of 12 consecutive months.

"Rehabilitative Employment" means that the Insured Employee, because of Injury or Sickness, is:
    (1)  continuously unable to perform the substantial and material duties of his regular occupation;
    (2)  under the regular care of a licensed physician other than himself; and
    (3)  gainfully employed in any occupation, on a full-time or part-time basis, for which he is or becomes qualified by education, training or experience.

"Salary" means as defined in the Schedule of Benefits.

"Schedule of Benefits" means Statement 9 of the Application for this policy.

"Sickness" means sickness or disease causing loss which begins while the Insured Employee's coverage is in force.  Sickness shall not include any loss caused by or resulting from a pre-existing condition.

"Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness, is:
    (1)  continuously unable to perform the substantial and material duties of his regular occupation;
    (2)  under the regular care of a licensed physician other than himself; and
    (3)  not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period shown in Statement 4 of the Application, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:
    (1)  continuously unable to engage in any occupation to which he is or becomes qualified by education, training or experience; and
    (2)  under the regular care of a licensed physician other than himself.

"We", "Our" and "Us" means the Continental Casualty Company, Chicago, Illinois.

## DISABILITY BENEFITS

**TOTAL DISABILITY BENEFIT.** We will pay the Monthly Benefit for each month of Total Disability which continues after the Elimination Period. The Monthly Benefit will not be payable during the Elimination Period nor beyond the Maximum Period Payable.

**REHABILITATIVE EMPLOYMENT BENEFIT.** We will pay a Rehabilitative Employment Benefit for each month of Rehabilitative Employment which follows: (1) the Elimination Period; or (2) a period for which Total Disability Benefits were payable.

The amount payable will be equal to the Monthly Benefit less a portion of the Insured Employee's earnings from such employment. The portion which will be deducted is the Rehabilitative Employment Reduction shown in the Schedule of Benefits.

Rehabilitative Employment Benefits will cease: (1) on the date the Insured Employee's earnings from such Rehabilitative Employment equals or exceeds 100% of the Insured Employee's pre-Disability Salary; or (2) at the end of the Maximum Period Payable, whichever occurs first.

**GENERAL.** Total benefits payable for Total Disability and Rehabilitative Employment shall not exceed the Maximum Period Payable.

If a benefit is payable for a period less than 1 month, it will be paid on the basis of 1/30th of the Monthly Benefit for each day of Disability.

## EXTENSION OF MAXIMUM PERIOD PAYABLE

The Maximum Period Payable will extend beyond the age at which the Monthly Benefit otherwise ceases if the disabled employee reaches that age but has not received 12 Monthly Benefit payments during the current period of Disability. In that event, the Maximum Period Payable shall be extended during the continuance of the Disability until a total of 12 monthly payments have been made.

T1-67949-A

## RECURRENT DISABILITY

If Disability for which benefits were payable ends but recurs to the same or related causes less than six months after the end of a prior Disability, it will be considered a resumption of the prior Disability. Such recurrent Disability shall be subject to the provisions of this policy that were in effect at the time the prior Disability began.

Disability which recurs more than six months after the end of a prior Disability shall be subject to: (1) a new Elimination Period; (2) a new Maximum Period Payable; and (3) the other provisions of this policy that are in effect on the date the Disability recurs.

Disability must recur while the Insured Employee's coverage is in force under this policy.

T1-67950-B

## EXCLUSIONS AND LIMITATIONS

The policy does not cover any loss caused by or resulting from:

    (1)   declared or undeclared war or any act of either;

    (2)   Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type; except that if at the end of such 24 month period, the Employee is confined in a hospital or other institution qualified to provide care and treatment incident to such Disability:

        (a)   if such confinement is for a period of not less than 14 consecutive days, indemnity will be paid during such confinement and for not longer than 90 days after the termination of such confinement; and

        (b)   if, during the 90 day period specified in paragraph (a) above, an Employee is reconfined in such hospital or institution for a period of not less than 14 consecutive days, indemnity will be paid during such reconfinement and for not longer than 90 days after the termination of such reconfinement; or

    (3)   a Pre-existing condition.

## TERMINATION OF EMPLOYEE'S INSURANCE

The Insured Employee's coverage will terminate on the earliest of the following dates:

    (1)  the date this policy is terminated;

    (2)  the premium due date if the Employer fails to pay the required premium for the Insured Employee, except for an inadvertent error; or

    (3)  the date the Insured Employee

        (a)  is no longer a member of a class eligible for this insurance,

        (b)  with draws from the program,

        (c)  is retired or pensioned, or

        (d)  ceases work because of a leave of absence, furlough, layoff or temporary work stoppage due to a labor dispute, unless We and the Employer have agreed in writing to continue insurance during such period.

Termination will not affect a covered loss which began before the date of termination.

T1-67951-A

## PREMIUM

Premium for this policy is computed as stated in Statement 5 of the Application.  It shall be paid by the Employer as stated in Statement 6 of the Application.  Payment is to be made to Us or Our Agent.  The Premium rate may be changed at the end of the first insurance year or any later premium due date.

## WAIVER OF PREMIUM

We will waive premium for an Insured Employee during the period of Disability for which the Monthly Benefit is payable under this policy.  During this period, the Insured Employee's insurance will remain in force.  This provision is subject to the Termination of Employee's Insurance provision, except for payment of premium.

T1-67952-B

## CERTIFICATES

We will deliver certificates of insurance to the Employer for issuance to each Insured Employee.  The certificates will describe the benefits, to whom they are payable, the policy limitations and where this policy may be inspected.

T1-67953-A

## UNIFORM PROVISIONS

**ENTIRE CONTACT; CHANGES.**  This policy, the Application, the evidence of insurability (if any) of each Insured Employee, and any attached papers are the entire contract between the parties.  Any statement made by the Employer or any Insured Employee shall, in the absence of fraud, be a representation and not a warranty.  No such statement shall void the insurance, reduce the benefits or be used in defense to a claim unless it is in writing and a copy furnished to the Employer or Insured Employee, whoever made the statement.  No statement of the Employer will be used to void this policy after it has been in force for two years.  No statement of any Insured Employee will be used in defense to a claim for loss incurred or disability which begins after the employee has been insured for 2 years.  No change in this policy is valid unless approved in writing on this policy by one of Our officers.  No agent has the right to change this policy or to waive any of its provisions.

**GRACE PERIOD.**  A grace period of 31 days is allowed for the payment of each premium due after the first premium.  This policy will remain in force during the grace period.

A grace period will not apply if We have sent written notice to the Employer of Our intent not to renew this policy at least 31 days before the premium due date.  Such notice will be sent to the Employer's last address as shown in Our records.

If the Employer gives Us written notice of his intent to renew this policy, the grace period will not apply. This policy will terminate on the date stated on the notice or on the date We receive such notice, whichever is later. The Employer will be liable for all premiums due for the period this policy remains in force including the grace period, if it applies.

**NOTICE OF CLAIM.** Written notice of claim must be given to Us within 30 days after the loss begins or as soon as reasonably possible

The notice will suffice if it identifies the Insured Employee and this policy. It must be sent to Us at Out Home Office, CNA Plaza, Chicago, Illinois 60685 or given to Our agent.

**CLAIM FORMS.** After We receive the written notice of claim, We will furnish claim forms within 15 days. If we do not, the claimant will be considered to have met the requirements for written proof of loss if We receive written proof which describes the occurrence, extent and nature of the loss.

**WRITTEN PROOF OF LOSS.** Written proof of loss must be furnished to Us within 90 days after the end of a period for which We are liable. If it is not possible to give the proof within 90 days, the claim is not affected if the proof is given as soon as reasonably possible. Unless the Insured Employee is legally incapacitated, written proof must be given within 1 year of the time it is otherwise due.

**TIME OF PAYMENT OF CLAIM.** Benefits will be paid monthly immediately after We receive due written proof of loss.

**PAYMENT OF CLAIM.** All Disability benefits are paid to the Insured Employee. Any accrued Disability or Survivor Income benefits unpaid at the Insured Employee's death will be paid to the named beneficiary, if any.

If there is no surviving named beneficiary, payment may be made at Our option, to the surviving person or persons in the first of the following classes of successive preference beneficiaries: the Insured Employee's (a) spouse; (b) children including legally adopted children; (c) parents; or (d) estate.

If any benefit is payable to an estate, a minor or a person not competent to give a valid release, We may pay up to $1,000 to any relative or beneficiary of the Insured Employee whom We deem to be entitled to this amount. We will be discharged to the extent of such payment made by Us in good faith.

**PHYSICAL EXAMINATION.** At Our expense, We have the right to have a physician examine the Insured Employee as often as reasonably necessary while the claim is pending.

**LEGAL ACTIONS.** No action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after 3 years (Kansas 5 years, South Carolina 6 years) from the date written proof is required.

**CONFORMITY WITH STATE STATUTES.** If any provision of this policy conflicts with the statutes of the state in which this policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute.

## GENERAL PROVISION

We have the right to inspect all of the Employer's records on this policy at any reasonable time. This right will extend until: (1) 2 years after termination of this policy; or (2) all claims under this policy have been settled, whichever is later.

This policy is not in lieu of and does not affect any requirements for coverage by Worker's Compensation Insurance.

# Continental Casualty Company



**For All the Commitments You Make®**

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## POLICY TERM AND PREMIUM RATE
## GUARANTEE RIDER

We agree to waive Our right to non-renew this policy and to change the premium rate. Such agreement shall be valid until the _1st_ annual anniversary date if:

(1) There are no changes made to the program;

(2) There is a minimum of 10 Insured Employees and there is less than a _25%_ change to the number of Insured Employee since the EFFECTIVE DATE of this policy; and

(3) There are no new classes of employees, subsidiaries, affiliated companies or new acquisitions of the Employer added after the EFFECTIVE DATE of this policy.

This rider takes effect on the EFFECTIVE DATE of this policy, it is subject to all definitions, conditions and provisions of this policy not inconsistent herewith.

Attached to and made a part of Policy No. _SR 83089679_____ issued to _AMP Incorporated_____
_____ by Continental Casualty Company, General Office, Chicago, Illinois but the same shall not be binding upon Us unless countersigned by Our authorized agent.

_D. H. Chookaszian_
**Chairman of the Board**

_D. M. Lowry_
**Secretary**

Countersigned by _____
**Licensed Resident Agent**

## CONTINUITY OF COVERAGE

Continuity of coverage is provided as follows for all your Employees whose coverage and/or eligibility are affected by the cancellation of your prior group long-term disability insurance policy and replaced with this policy.

**EMPLOYEES ACTIVELY-AT-WORK.** Each employee insured under the prior policy on the date the Employer changed insurers will be covered by the benefits provided under this policy if such employee is:

1) eligible for coverage under this policy in accordance with its ELIGIBLE EMPLOYEES provision; and
2) actively-at-work on the Effective Date of this policy.

**EMPLOYEES NOT ACTIVELY-AT-WORK.** An employee not actively-at-work, due to Injury or Sickness, on the EFFECTIVE DATE of this policy will be covered for the benefits indicated below provided such employee:

1) was validly insured under the Employer's prior policy on the date of transfer; and
2) is a member of the ELIGIBLE EMPLOYEES under this policy.

The benefits provided will be the benefits provided by the prior policy less any benefits paid or payable under that policy.

Coverage will be provided until the earliest of the following dates:

1) the date the employee becomes eligible and insured under this policy as described in the ACTIVELY-AT-WORK provision above;
2) the date the employee's coverage ends in accordance with the termination provision of this policy; or
3) the date that is the end of any benefit extension as provided under the prior carrier's policy.

**PRE-EXISTING CONDITIONS.** If a Pre-existing Condition Exclusion is included in this policy, benefits may be payable for a disability due to a pre-existing condition for eligible employees who:

1) were actively-at-work on the date of transfer; and
2) insured under this policy on its Effective Date.

The benefit payable will be the benefit payable under this policy.

Any time applied towards satisfying the elimination or waiting periods of the same or similar provisions under the prior policy shall be credited towards our policy.

## SURVIVOR INCOME BENEFIT

If an Insured Employee dies after having received the benefit provided by this policy for at least 12 successive months and during a period for which benefits are payable, We will pay a Survivor Income Benefit. This benefit is equal to the amount the Insured Employee was last entitled to receive for the month preceding his death.

The Survivor Income Benefit shall be payable on a monthly basis immediately after We receive written proof of the Insured Employee's death. It is payable for the period stated in Statement 9 of the Application. The benefit shall accrue from the Insured Employee's date of death.

This benefit is payable to the beneficiary, if any, named by the Insured Employee under this policy. If no such beneficiary exists, the benefit will be payable in accordance with the PAYMENT OF CLAIMS provisions.

ADDENDUM 1

SR 83089679
Policy Number

AMP Incorporated
Employer

January 1, 1995
Effective Date

5.   Premium is calculated by:

Multiplying the monthly salary for each Insured Employee by __*__. An Insured Employee's salary in excess of $30,000 per month shall not be included in the premium calculation for such Insured Employee.

6.   Premium is payable in the following manner:

The policy is issued in consideration of the payment in arrears of the monthly premium which is based on the actual wage or salary of all Insured Employees for the first and each subsequent policy and calculated at the premium rate stated above. Such payment shall be made within 20 days after the end of each monthly premium accounting period, or as soon thereafter as is reasonably possible and shall be accompanied by a premium adjustment report.

"Salary" as used in Statements 5 and 6 with respect to an Employee other than a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes commissions, overtime earnings, incentive pay, bonuses or other compensation.

"Salary" as used in Statements 5 and 6 with respect to a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes overtime earnings, incentive pay, bonuses or other compensation, but it includes the monthly average of commissions paid to the Insured Employee by the Employer during the preceding 12 month period, but not to exceed the maximum monthly benefit amount on file with the Human Resources Department.

| *Age Bond | Payroll Factor |
|---|---|
| 20 - 24 | .04% |
| 25 - 29 | .05% |
| 30 - 34 | .06% |
| 35 - 39 | .10% |
| 40 - 44 | .15% |
| 45 - 49 | .22% |
| 50 - 54 | .31% |
| 55 - 59 | .43% |
| 60 - 64 | .50% |
| 65 - 69 | .41% |
| 70 - 74 | .20% |

ADDENDUM 2

SR 8309679
Policy Number

AMP Incorporated
Employer

Januay 1, 1995
Effective Date

(1)  "Salary" as used in Statements 5 and 6 with respect to an Employee other than a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began.  It excludes commissions, overtime earnings, incentive pay, bonuses or other compensation.

"Salary" as used in Statements 5 and 6 with respect to a Commissioned Salesperson means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began.  It excludes overtime earnings, incentive pay, bonuses or other compensation, but it includes the monthly average of commissions paid to the Insured Employee by the Employer during the preceding 12 month period, but not to exceed the maximum monthly benefit base amount on file with the Human Resources Department.

(2)  The Monthly Benefit under this policy shall be reduced by:

1.  Disability benefits paid, payable, or for which there is a right under:
    a.  The Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's Disability.
    b.  Any Worker's Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational injury or sickness,
    c.  Any State Disability Benefit Law:

2.  Disability benefits paid under:
    a.  Any group insurance plan provided by or through the Employer,
    b.  Any formal sick leave plan provided by the Employer, or
    c.  Any Retirement Plan provided by the Employer;

3.  Retirement benefits paid under the Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's retirement.

4.  Retirement benefits paid under a Retirement Plan provided by the Employer for which the Insured Employee did not make a contribution.

If any benefit described above is paid in a single sum through compromise settlement or as an advance on future liability, the amount which pertains to the Insured Employee's Disability will be divided by the number of months from the date of its receipt to the end of the benefit period applicable to the Insured Employee.  The result shall be deducted from the Insured Employee's Monthly Benefit.

The Monthly Benefit, after the reductions stated above, if any, will not be further reduced for subsequent cost-of-living increases which are paid, payable, or for which there is a right under any other benefit described above.

"Retirement Plan" means a plan which provides retirement benefits to employees and is not funded wholly by employee contributions.  It does not include: 1) a profit sharing plan, a thrift or savings plan; 2) an individual retirement account (IRA); 3) a tax sheltered annutiy (TSA); 4) a stock ownership plan; or 5) a deferred compensation plan.

ADDENDUM 2 (continued)

SR 83089679
Policy Number

AMP Incorporated
Employer

January 1, 1995
Effective Date

In no event will the Monthly Benefit payable for Total Disability (but not for Partial Disability and/or Rehabilitative Employment) be reduced to less than $ 50.00 or 10 % of the Insured Employee's Monthly Benefit prior to the reductions stated above, whichever is greater.

ADDENDUM 3

<u>SR 83089679</u>
Policy Number

<u>AMP Incorporated</u>
Employer

<u>January 1, 1995</u>
Effective Date

Age on Date
<u>Disability Commences</u>

59 years or younger                     To the Insured Employee's 65th Birthday
    60 - 64                                         54 months
    65 - 69                                         30 months
    70 - 74                                         18 months
    75 and older                                   12 months



OCT 11 1999

# CNA GROUP BENEFITS

P O Box 946710  Maitland  FL  32794-6710

**Laura Collins, HIA**
Disability Specialist
National Accounts Claims
Telephone    800-262-7997  x6239
Facsimile     407-919-6410

October 7, 1999

Clark De Vere
Metzger, Wickersham, Knauss & Erb, P.C.
3211 North Front Street
P.O. Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 0083089679
Continental Casualty Company

Dear Mr. De Vere:

We are contacting you with regard to the status of Ms. Tesche's Long Term Disability claim.

Initially and for the first 24 months, "Total Disability" under this policy means that, the Insured Employee, because of Injury or Sickness, is:

  1)  continuously unable to perform the substantial and material duties of his regular occupation;
  2)  under the regular care of a licensed physician other than himself; and
  3)  not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

  1)  continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
  2)  under the regular care of a licensed physician other than himself.

Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S & P Analyst Assistant which required her to sit 7 hours per day. Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 lbs., walk 15 minutes at a time. He notes these are permanent restrictions. With consideration of her education, training and experience, she is not disabled from other occupations and is not entitled to benefits beyond 24 months (10/30/99). We had her claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Exhibit "B"

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 0083089679
Continental Casualty Company                    -2-                    October 7, 1999

If you disagree with our decision, you have the right to appeal under regulations specified by the Employee Retirement Income Security Act(ERISA)1974 as amended.

If you have additional medical information not mentioned above or wish us to reconsider our decision, you should

- submit your formal request for reconsideration **in writing** to my attention **within 60 days** of the date of this letter

- addressed to          **Attn:  Laura Collins**
                        **CNA**
                        **PO BOX 946710**
                        **Maitland, FL  32794-6710**

- include your **claim number** and **policy number** on any correspondence.

Our decision will be reconsidered at the time of receipt of your information.  If this information does not alter our decision, you will be informed of this and your claim will then be submitted to the Appeals Committee for a formal review.  The Committee will issue a ruling within 60 days of receipt of your appeal as mandated by the Employee Retirement Income Security Act(ERISA)1974 as amended.  This regulations allows an additional 60 days to reach a decision if necessary, however you will be notified within the first 60 days if this review will require an extension of time to reach a decision.  This decision will be in writing and mailed directly to you or your representative.

**Appeals received later than 60 days may not be considered.**

Sincerely,

*Laura Collins*

Laura Collins, HIA

October 22, 1999



**METZGER WICKERSHAM**
**SINCE 1888**

3211 North Front Street
P.O. Box 5300
Harrisburg, PA 17110-0300
717-238-8187
Fax: 717-234-9478

124 West King Street
Shippensburg, PA 17257
717-530-7515
Fax: 717-530-0734

CNA Group Benefits
National Account
P.O. Box 946710
Maitland, FL  32794-6710

Attn:   Laura Collins, HIA
          Disability Specialist

RE:    Claim No.     :     94-34900P1702
         Policy No.     :     0083089679
         My Client      :     Joan D. Tesche
         Continental Casualty Company



Dear Laura:

As you know, this office represents Joan Tesche in regards to her long-term disability claim through her employer AMP.  I have prepared this correspondence to serve as a written request for the "Other Information" Section regarding the appeal procedure that is referenced in the AMP Employee Handbook regarding Long Term Disability.  Moreover, I would appreciate if you would forward a copy of the procedure that is to be followed regarding the termination of an employee's long-term disability status.

Please forward the aforementioned documents to my office at your earliest convenience.  In the meantime, please contact my office with any questions or concerns.

Very truly yours,

METZGER, WICKERSHAM, KNAUSS & ERB, P.C.

Steven C. Courtney

SCC:ae

cc     Ms. Joan Tesche

Christian S. Erb, Jr.
Robert E. Yetter
James F. Carl
Edward E. Knauss, IV*
Jered L. Hock
Karl R. Hildabrand*
Richard B. Druby
Steven P. Miner
Clark DeVere
E. Ralph Godfrey
Carrie L. Carroll

*Board Certified in civil
trial law and advocacy
by the National Board
of Trial Advocacy

Document #: 162384.1                          Exhibit "C"



**METZGER**
**WICKERSHAM**
SINCE 1888

3211 North Front Street
P.O. Box 5300
Harrisburg, PA 17110-0300
717-238-8187
Fax: 717-234-9478

124 West King Street
Shippensburg, PA 17257
717-530-7515
Fax: 717-530-0734

3 December 1999

VIA FACSIMILE AND REGULAR MAIL

Laura Collins
CNA Group Benefits
National Account
P.O. Box 946710
Maitland, FL  32794-6710

RE:    Claim No.        :     94-34900P1702
       Policy No.       :     0083089679
       My Client        :     Joan D. Tesche
       Continental Casualty Company

Dear Laura:

Please be advised that this office represents Joan Tesche in regards to the above referenced matter.  I have prepared this letter to serve as a formal request for a reconsideration of the termination of my client's long-term disability status relative to the above referenced matter. Moreover, I have requested a medical report from Ms. Tesche's attending physician, Dr. Steven B. Wolf of Orthopedic Institute of Pennsylvania, regarding her current medical condition as well as a prognosis.  I initially made this request on October 27, 1999, however, as of the time of this letter, I have not received the medical report.  I contacted Dr. Wolf's office on the above date and I was assured that the report would be forwarded to my office in the very near future.  Please be advised that I will immediately forward to your attention a copy of this report once it is made available.

After you have had an opportunity to review this correspondence, please contact my office with any questions or concerns.  Your anticipated cooperation is appreciated.

Very truly yours,

METZGER, WICKERSHAM, KNAUSS & ERB, P.C.

Steven C. Courtney
SCC/ae
cc       Ms. Joan Tesche

Document #: 164981.1

Christian S. Erb, Jr.
Robert E. Yetter
James F. Carl
Edward E. Knauss, IV*
Jered L. Hock
Karl R. Hildabrand*
Richard B. Druby
Steven P. Miner
Clark DeVere
E. Ralph Godfrey
Carrie L. Carroll

*Board Certified in civil
trial law and advocacy
by the National Board
of Trial Advocacy



DAVID M. JX    R. M.D., F.A.C.S.
RICHA    OCAL, M.D.
ROBERT A. DAHMUS, M.D.
WILLIAM M. DeMUTH, M.D., F.A.C.S.
JOHN R. FRANKENY II, M.D., F.A.C.S.
MARK R. GRUBB, M.D.
RICHARD H. HALLOCK, M.D.
JAMES R. HAMSHER, M.D., F.A.C.S.

GREGORY A. HANKS, M.D.
ALEXANDER KALENAK, M.D.
ROBERT R. KANEDA, D.O.
RONALD W. LIPTE, M.D., F.A.C.S.
JASON J. LITTON, M.D.
STEVEN B. WOLF, M.D.
THOMAS J. YUCHA, M.D.

## THE SPINE CENTER AT

# O R T H O P E D I C   I N S T I T U T E   O F   P E N N S Y L V A N I A

TELEPHONE: (717) 761-5530  •  (800) 834-4020  •  FAX: (717) 737-7197

December 22, 1999

Steven C. Courtney, Esq
3211 North Front Street
PO Box 5300
Harrisburg, PA 17110-0300

RE:  Joan D. Tesche
     182 48 9637

Dear Mr. Courtney:

This letter is in reference to Joan D. Tesche, who, as you know, is a patient I have seen at the Orthopedic Institute of Pennsylvania. Unfortunately, I am no longer able to take care of Mrs. Tesche due to her current health insurance plan.

I saw Mrs. Tesche in May of 1999. At that time, she was complaining of pain her left SI joint area as well as multiple other problems. She had some involuntary shaking and movements in the arms and legs which is difficult to explain. She has had some increasing pain her back as well as in her left SI joint and has had some problems in her arms and legs as well. She has had fibromyalgia type symptoms. She also has been having some problems with her gait. Her sitting tolerance is getting worse. She cannot sit for more than a half an hour at a time and she cannot stand for more than a half an hour at a time. She cannot walk for more than fifteen minutes at a time. She is constantly shifting.

At this point, I certainly cannot see her returning to her previous job at all. Her condition seems to be worsening and I think her prognosis is poor for returning to her occupation. She is currently going to the Hershey Pain Clinic for treatment.

Her physical exam, when I saw her, showed that she had a markedly positive FABER test on the left side and she has increased pain in her left SI joint with a shock on her nerve root. She is unable to sit on her left buttock cheek very well at all. She shifts her weight when sitting. She is unable to sit in one position. She has no sciatic nerve tension signs at all. Her strength is intact in her lower extremities. Her upper extremities also shows normal strength. She has negative Hoffman's signs although her reflexes are brisk at the biceps and triceps as well as at the knees and the ankles. Her Babinski's are down going and there is no sustained clonus.

I referred Joan to Dr. Fred Hess who is a spine surgeon who could see Joan with her current health insurance plan. I felt that Joan may need a work up by a Rheumatologist as well.

ORTHOPEDIC SURGEONS, LTD.

ADDRESS ALL CORRESPONDENCE TO: 875 POPLAR CHURCH ROAD, CAMP HILL, PA 17011

| CAMP HILL OFFICE | HARRISBURG OFFICE | CAMP HILL OFFICE | HERSHEY OFFICE | CAMP HILL OFFICE |
| 3916 TRINDLE RD. | 450 POWERS AVE. | 890 POPLAR CHURCH RD., STE. 106 | 10 WEST CHOCOLATE AVE., STE. 105 | 875 POPLAR CHURCH RD. |

Exhibit "D"

RE: TESCHE, JOAN D.
PAGE 2
December 22, 1999

At this point, I do not feel that Mrs. Tesche is employable including these positions; telemarketer, customer service representative, motel night auditor and an automobile rental agent.

Sincerely,

Steven B. Wolf MD

SBW/nyd

Sent via fax, original to follow

# **CNA** GROUP BENEFITS

E

P O Box 946710  Maitland  FL  32794-6710

**Laura Collins, HIA**
Disability Specialist
National Accounts Claims
Telephone    800-262-7997  x6239
Facsimile     407-919-6410

January 3, 2000

Steven C. Courtney
Metzger, Wickersham, Knauss & Erb, P.C.
3211 North Front Street
P. O. Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan D. Tesche
Claim No.: 94-34900P1702
Policy No.: 83089679
Continental Casualty Company

Dear Mr. Courtney:

Today we received your letter along with the letter from Steven B. Wolf, MD, dated December 22, 1999.

We have fully reviewed this information and find it provides us with no additional medical documentation that would alter our previous decision of October 7, 1999.

Therefore, at this time, we have forwarded this letter, along with Ms. Tesche's complete file to the Appeals Committee for their review.

The Appeals Committee will issue a ruling within 60 days of receipt of your appeal.  ERISA regulations allow the Committee an additional 60 days to reach a decision if necessary.  The Committee will notify you in writing if the additional time is required.

Should you have any questions, please contact our office.  Thank you.

Sincerely,

*Laura Collins*

Laura Collins, HIA

Exhibit "E"

**CNA GROUP BENEFITS**

F

Group Disability-Claim Administration
PO Box 946710  Maitland  FL  32794-6710

*Cheryl Sauerhoff*
Claims Consultant
Telephone 1-800-303-9744 x 6343

February 21, 2000

Steven Courtney
Metzger, Wickersham, Knauss & Erb, PC
3211 North Front St.
PO Box 5300
Harrisburg, PA  17110-0300

Claimant: Joan Tesche

Claim No: 94-34900P1702
Policy No: 0083089679

Dear Mr. Courtney:

The Long-Term Disability clam of the above-mentioned claimant has been referred to Appeals pursuant to the receipt of your letter. A comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits.

*The Long Term Disability Policy indicates that during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is:*

- *Continuously unable to perform the substantial and material duties of the regular occupation;*
- *Under the regular care of a licensed physician other than the Insured Employee; and*
- *Not gainfully employed in any occupation for which you are or become qualified by education, training or experience.*

*After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:*

- *Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience: and*
- *Under the regular care of a licensed physician other than himself.*

The date of loss was **5/3/97**. The attending physician statement was completed by Dr. Rubenstein dated 9/19/97 for a diagnosis of "chronic back pain". Ms. Tesche's occupation is noted as systems procedure analyst. The noted restrictions are cannot perform heavy lifting, climbing, bending and tolerates prolonged sitting poorly.

The claimant was found to be disabled from her occupation and paid benefits for the 24 month own occupation period commencing after the 180-day elimination period. Based on the claimant's age, experience, geographic location, salary, education and the medical restrictions given by the treating physician, it was determined that the claimant was not totally disabled from any occupation. Those occupations were detailed in the 10/7/99 letter and will not be revisited at this time.

Policy No: 0083089679                                    -2-

All information has been reviewed and indicated that the claimant is not less than sedentary in the physical demand level for occupational work. The medical documentation does not reflect this level of severity.

The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to one hour, sitting for one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman.

Dr. Wolf was requested to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the occupations described would not be options for the claimant but does not state why. There is no detail of any functional impairment or any information relating to the claimant's inabilities to perform her activities of daily living.

While we appreciate Dr. Wolf's opinion, the any occupation determination is a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education.

Therefore, based on the information contained within your claim file, we find that the decision to terminate benefits was correct and proper. You have exhausted your administrative remedies at this time and this decision is final and binding.

Sincerely,


Cheryl Sauerhoff
Appeals Committee Member

717 469-9277

rom: Joan D. Tesche    Fax: +1(717)469-9277    o: Brad Dorrance    Fax: +1(717)255-8050    e 2 of 6 Tuesday, January 30, 2001 11:01 AM

G

# Social Security Administration
# Retirement, Survivors and Disability Insurance
## Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: January 15, 2001
Claim Number: 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HA

JOAN D TESCHE
7737 FISHING CREEK
VALLEY RD
HARRISBURG, PA 17112

You are entitled to monthly disability benefits beginning October 1999.

**The Date You Became Disabled**

We found that you became disabled under our rules on May 1, 1999. This is different from the date given on the application.

Also, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is October 1999.

**What We Will Pay And When**

- You will receive $10,851.00 around January 21, 2001.

- This is the money you are due for October 1999 through December 2000.

- Your next payment of $749.00, which is for January 2001, will be received on or about the second Wednesday of February 2001.

- After that you will receive $749.00 on or about the second Wednesday of each month.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153

C

See Next Page

Exhibit "G"

717  469-9277

·om: Joan D. Tesche     Fax: +1(717)469-9277     o: Brad Dorrance     Fax:  +1(717)255-8050     3  of  6  Tuesday, January 30, 2001 11:01 AM



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HA                                        Page  2 of  5

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| October | 1999 | $707.30 | Entitlement began |
| December | 1999 | $724.20 | Cost-of-living adjustment |
| December | 2000 | $749.50 | Cost-of-living adjustment |

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability Benefits...What You Need To Know." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A state or other public or private vocational rehabilitation provider may contact you to talk about their services. The rehabilitation provider may offer you counseling, training, and other services that may help you go to work. To keep getting disability benefits, you have to accept the services offered unless we decide you have a good reason for not accepting.

You do not have to wait to be contacted about vocational rehabilitation services. You can contact the nearest state vocational rehabilitation office directly and let them know that you are interested in receiving services.

717 469-9277

om: Joan D. Tesche    Fax: +1(717)469-9277    o: Brad Dorrance    Fax: +1(717)255-8050    e 4 of 6 Tuesday, January 30, 2001 11:01 AM

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HA

If you go to work, special rules can allow us to continue your cash payments and health insurance coverage. For more information about how work and earnings may affect disability benefits, you may call or visit any Social Security office. You may wish to ask for any of the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication No. 05-10052).

- How Social Security Can Help With Vocational Rehabilitation (SSA Publication No. 05-10050).

**If You Disagree With The Decisions**

If you disagree with the decisions, you have the right to appeal. A person who did not make the first decision will decide your case. We will review those parts of the decisions you disagree with and will look at any new facts you have. We may also review those parts of the case that you believe are correct and may make them unfavorable or less favorable to you.

**About The Appeals**

If you disagree with the nonmedical decisions we made on your case, the appeal is called a reconsideration. Some examples of nonmedical decisions are the amount of your payment, and the month your payment starts. You will not meet with the person who decides your case.

If you disagree with the disability (medical) decision made by the state, the appeal is called a hearing. Some examples of medical decisions are the date your disability started or whether you are still disabled.

**If You Want To Appeal**

- You have 60 days to ask for an appeal.

- The 60 days start the day after you receive this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason if you wait more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a form SSA-561-U2, called "Request for Reconsideration," or a form HA-501, called "Request for Hearing." Contact one of our offices if you want help.

**If You Ask For A Reconsideration And A Hearing**

If you ask for both a reconsideration and a hearing, we will process the hearing first, even if you made the reconsideration request first. When we make our decisions, we will send you letters explaining our decisions on both the reconsideration and the hearing.

om: Joan D. Tesche    Fax: +1(717)469-9277

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HA

## How The Hearing Process Works

After we send your case for a hearing, an Administrative Law Judge (ALJ) will mail you a letter at least 20 days before the hearing to tell you its date, time and place. The letter will explain the law in your case and tell you what has to be decided. Since the ALJ will review all the facts in your case, it is important that you give us any new facts as soon as you can.

The hearing is your chance to tell the ALJ why you disagree with the decisions in your case. You can give the ALJ new evidence and bring people to testify for you. The ALJ also can require people to bring important papers to your hearing and give facts about your case. You can question these people at your hearing.

## It Is Important To Go To The Hearing

It is very important that you go to the hearing. If for any reason you can't go, contact the ALJ as soon as possible before the hearing and explain why. The ALJ will reschedule the hearing if you have a good reason.

If you don't go to the hearing and don't have a good reason for not going, the ALJ may dismiss your request for a hearing.

## Things To Remember For The Future

We decided that you are disabled under our rules. But, this decision must be reviewed once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

## If You Have Any Questions

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-717-782-3400. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
555 WALNUT STREET
HARRISBURG, PA 17101

717 469-9277

om: Joan D. Tesche    Fax: +1(717)469-9277    To: Brad Dorrance    Fax: +1(717)255-8050    Page 6 of 6  Tuesday, January 30, 2001 11:01 AM

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HA

Page 5 of 5

If you do call or visit an office, please have this letter with you.  It will help us
answer your questions.  Also, if you plan to visit an office, you may call ahead to
make an appointment.  This will help us serve you more quickly when you arrive
at the office.

Carolyn W. Colvin
Deputy Commissioner
for Operations

## NOTICE OF LAWSUIT
### AND
### REQUEST FOR WAIVER OF SERVICE OF SUMMONS

TO: _____

    Name of individual defendant (or name of officer or agent of coprorate defendant)

AS: _____ OF _____

    (Title, or other relationship of individual     (Name of corporate defendant)
    to corporate defendant)

      A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Middle District of Pennsylvania. The assigned docket number for this case is _____ .

      This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within _____ days (at least 30 days, 60 days if located in a foreign country) after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

      If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

      If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of summons, which is set forth in this packet captioned, "Duty to Avoid Unnecessary Costs of Service of Summons."

      I affirm that this request is being sent to you on behalf of the plaintiff, this _9th_ day of _March_ , 19 _2001_ .

_Bradford Dorrance_
Signature of Plaintiff's Attorney or Pro Se Plaintiff

## INSTRUCTIONS FOR SERVICE

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**NOTICE TO COUNSEL**: The following items have been provided to you for service on the defendant(s); Original Summons; Copies of Summonses for service on defendant(s); Return of Service form; Notice of Right to Consent before a Magistrate Judge form; Notice of Lawsuit and Request for Waiver of Service of Summons form; and Waiver of Service of Summons form.

FRCP 4 addresses service of process. Counsel are advised to review this rule. Briefly, FRCP 4 provides for four types of service of the summons:

1. Personal service;
2. Domiciliary service;
3. Substituted service;
4. Service in the manner prescribed by the law of the state in which the case is filed or the service is made. See Pa.R.C.P. No. 400 et seq.

### SERVICE BY CERTIFIED MAIL

This type of service is only authorized by the law of the state in which service is made or in the state the case is filed. If authorized, counsel shall file the original receipt cards (green cards) with the attached Return of Service Process form and the original summons. Counsel will need to make copies of the Return of Service Process form for each defendant served.

### SERVICE BY FIRST CLASS MAIL

This type of service is only authorized by the law of the state in which service is made or in the state the case is filed. (Pennsylvania law does not authorize first class mail.) The Notice of Acknowledgment form previously used by the U.S. District Court, Middle District of Pennsylvania has been eliminated by the revisions to FRCP 4 effective December 1, 1993.

### WAIVER OF SERVICE

FRCP 4 (d) effective December 1, 1993 provides, in fact strongly encourages, the waiver of service for individuals, corporations or associations. Please review this rule in detail before effecting service.

The Notice of Lawsuit and Request for Waiver of Service of Summons form which the plaintiff is required to send, (first class mail, facsimile transmissions allowed) to each defendant is included in this packet.

The Waiver of Service of Summons which the defendant(s) would sign and return to plaintiff for filing are in this packet.

Counsel will need to make copies of these forms for each defendant served.

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

### RETURN OF SERVICE OF PROCESS

PLAINTIFF _____ COURT CASE NUMBER _____
DEFENDANT _____ TYPE OF PROCESS _____

SERVE _____
        (Name individual, company; corporation, etc. to be served)

AT _____
             (Show Address)

SPECIAL INSTRUCTIONS OR OTHER INFORMATION REGARDING SERVICE _____ .
_____
_____

### CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT:

_____ I have personally served individual, company or corporation above.
_____ I have made service by mail as authorized by state law to the individual, company or
      corporation above. Appropriate state law authorizing this type of service is
      _____ . If certified mail was authorized, attach green cards to this
      form.
_____ I have legal evidence of service, described under Remarks and attached hereto.
      (Domiciliary service, Substituted service.)
_____ I am unable to serve the process. (See Remarks)
NAME OF PERSON SERVED: _____
TITLE (IF ANY) OF PERSON SERVED: _____
ADDRESS WHERE SERVED: _____
                      _____
DATE AND TIME OF PERSONAL SERVICE: _____
REMARKS: _____
_____

_____               _____
    Date                       Signature of Process Server

RETURN THE ORIGINAL OF THIS FORM WITH THE ORIGINAL SUMMONS FORM TO:
OFFICE OF THE CLERK OF COURT, U.S. DISTRICT COURT
(Clerk's address in which the assigned judge is located. Refer to the
Notice of Judicial Assignment form.)

# DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of a summons, fails to do so will be required to bear the costs of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver was received.

## WAIVER OF SERVICE OF SUMMONS

TO: _____

(Name of plaintiff's attorney or pro se plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of _____ vs. _____, which is case number _____ in the United States District Court for the Middle District of Pennsylvania. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for the objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____ (date request was sent), or within 90 days after that date if the request was sent outside the United States.

_____        _____
Date                            Signature

Printed/Typed Name: _____

Title if any: _____

Address: _____

_____

_____

For Corporation, if any: _____

Representing defendant(s) if any: _____

AO 85 (Rev. 8/97) Notice, Consent, and Order of Reference – Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

———————————— District of ————————————

|  |  |
|---|---|
| Plaintiff | NOTICE, CONSENT, AND ORDER OF REFERENCE – EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE |
| v. |  |
| Defendant | Case Number: |

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. 636(c), and Fed.R.Civ.P. 73, you are hereby notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case hereby voluntarily consent to have a United States magistrate judge conduct any and all further proceedings in the case, including the trial, order the entry of a final judgment, and conduct all post–judgment proceedings.

| Signatures | Party Represented | Date |
|---|---|---|
| ——————————— | ——————————— | ——————— |
| ——————————— | ——————————— | ——————— |
| ——————————— | ——————————— | ——————— |
| ——————————— | ——————————— | ——————— |

## ORDER OF REFERENCE

IT IS HEREBY ORDERED that this case be referred to ————————————————— United States Magistrate Judge, for all further proceedings and the entry of judgment in accordance with 28 U.S.C. 636( Fed.R.Civ.P. 73 and the foregoing consent of the parties.

————————————    ————————————————————
Date                              United States District Judge

NOTE:  RETURN THIS FORM TO THE CLERK OF THE COURT ONLY IF ALL PARTIES HAVE CONSENT ON THIS FORM TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDG

2

1 of 2 DOCUMENTS

**LINDA BOOZ v. UNUM LIFE INSURANCE, CO. OF AMERICA and SANCHEZ COMPUTER ASSOCIATES, INC.**

Civil Action No. 93-2326

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1993 U.S. Dist. LEXIS 13143*

July 28, 1993, Decided

July 29, 1993, Filed

COUNSEL:
[*1]  For LINDA BOOZ, PLAINTIFF: BERNARD V. DI GIACOMO, LAWRENCE A. RUTH, DI GIACOMO AND RUTH, CONSHOHOCKEN, PA.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, SANCHEZ COMPUTER ASSOCIATES, INC., DEFENDANTS: MICHAEL J. GLASHEEN, CLARK, LADNER, FORTENBAUGH & YOUNG, PHILA, PA.

JUDGES:
Newcomer

OPINIONBY:
CLARENCE C. NEWCOMER

OPINION:

MEMORANDUM

Newcomer, J.

July 28, 1993.

Presently before the court are defendants Unum Life Insurance, Co.'s ("Unum") and Sanchez Computer Associates, Inc.'s ("Sanchez") Motions to Dismiss this case for failure to state a claim upon which relief can be granted. Alternatively, Unum has moved the court to dismiss for defective service of process, and Sanchez has moved for dismissal on the merits. For the reasons set forth below, the court will Grant the motions to dismiss for failure to state a claim upon which relief can be granted, with leave to amend.

I. Factual Background:

Plaintiff was an employee of defendant Sanchez when she became disabled. Sanchez paid plaintiff $ 2,275.00 per month pursuant to an insurance policy issued by Unum to Sanchez, covering Sanchez's employees. In November, 1992, plaintiff stopped receiving her insurance money. Thereafter she commenced this suit [*2] in the Court of Common Pleas of Montgomery County, alleging breach of contract in Count I and bad faith in Count II. Defendants removed the case to this court because the plaintiff's claims are governed by the Employee Retirement Insurance Security Act ("ERISA"), a federal law.

II. Discussion.

A. Preemption.

Both Unum and Sanchez have moved for dismissal on the grounds that ERISA preempts all state laws "relating to" retirement pension plans. *29 U.S.C. § 1144* (a). They claim that because plaintiff has brought this case under a contract claim and under 42 Pa. Cons. Stat. § 8371 rather than ERISA, the case must be dismissed.

The Supreme Court has found that ERISA's supersedure clause, *29 U.S.C. § 1143* (a), is very expansive. *Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549* . ERISA automatically preempts state law where the state law is "related to" ERISA and does not fall under ERISA's savings clause, § 1144 (b)(2)(A). *Id. at 45.* The savings clause eliminates

1993 U.S. Dist. LEXIS 13143, *

the preemption of any state law which "regulates insurance, banking, or securities."

Count [*3] I of plaintiff's claim in the instant case alleges breach of contract under Pennsylvania law. In its Answer to Unum's Motion to Dismiss at p. 4, plaintiff admits that ERISA should govern her case. As ERISA "relates to" this claim and because Pennsylvania's breach of contract law does not regulate the insurance industry, ERISA supersedes the state law. Therefore, Count I must be dismissed for failure to state a claim upon which relief can be granted.

In Count II, plaintiff alleges that the defendant acted in bad faith. Two district courts have recently considered whether ERISA preempts 42 Pa. Cons. Stat. § 8371, Pennsylvania's statute for a cause of action against insurance companies acting in bad faith. See *Gelzinis v. John Hancock Mutual Life Ins. Co.*, 1993 WL 131566 (E.D. Pa. 1993) (Hutton, J.); *Northwestern Institute of Psychiatry v. Travelers Ins. Co.*, 1992 WL 331521 (E.D. Pa. 1992) (Yohn, J.). Since these courts needed to determine whether § 8371 "regulates" the insurance industry, they tested § 8371 under the McCarren-Ferguson Act, *15 U.S.C. § 1011*-1015, which defines the phrase "business of insurance". n1 Both concluded that § 8371 [*4] does not "regulate" the insurance industry, and therefore is preempted by ERISA. This court adopts the interpretation in Gelzinis and Northwestern Institute. Therefore, plaintiff's Count II is preempted and must be dismissed.

n1 The test has three parts: (1) whether the statute has the effect of spreading a policyholder's risk; (2) whether the statute is an integral part of the policy relationship between the insurer and the insured; and (3) whether the statute is limited to entities within the insurance industry. The two courts to consider § 8371 under this test held that § 8371 meets the third requirement but fails the other two. *Northwestern Institute of Psychiatry*, 1992 WL at 3-4.

Plaintiff claims that her Complaint "clearly" pleads a sufficient claim under ERISA even though it is set forth as a state law breach of contract claim. Plaintiff's Answer to Unum's Motion to Dismiss at p. 4. Defendant, however, argues that while plaintiff's action is preempted by ERISA, her complaint has not sufficiently [*5] stated such a claim under applicable laws. Upon reading the complaint on its face, the court concludes that plaintiff has failed to adequately state a cause of action under ERISA. The court, however, will allow plaintiff leave to amend the pleadings to remedy this problem, as there will be no prejudice to the defendant. See Fed. R. Civ. P. 15(a).

B. Service of Process.

Unum has also asked for dismissal on the grounds that plaintiff served its complaint on Sanchez but not Unum. Plaintiff alleges that it served both copies of the Complaint on Sanchez because Sanchez is Unum's agent for service. Plaintiff's assertion seems to be based on a misreading of the Plan description, which plaintiff provides as Exhibit to its Response A. n2 Because the court is dismissing this case with leave to amend based on the ERISA preemption, it need not assess this technicality. Instead, I will simply order the Amended Complaint to be served properly on both defendants.

n2 Plaintiff claims that Sanchez is Unum's agent. However, Exhibit A shows that Sanchez is the agent for the Plan itself, which is separate entity. Sanchez is not Unum's personal agent.

[*6]

C. Dismissal on the Merits.

Sanchez alleges that it is not liable to plaintiff at all, and urges the court to dismiss the claims against it. Since the ERISA claim has not yet even been brought in an Amended Complaint by the plaintiff, the court will not rule on Sanchez's claim at this time.

An appropriate order follows.

Clarence C. Newcomer, J.

ORDER

AND NOW, on this 28th day of July, 1993, upon consideration of the defendants Unum Life Insurance, Co.'s ("Unum") and Sanchez Computer Associates, Inc.'s (Sanchez) Motion to Dismiss for Failure to State a Claim Under ERISA, and the plaintiff's response thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that said Motions are GRANTED. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff is Directed to file an Amended Complaint within seven (7) days from the date of this opinion.

Unum's Motion to Dismiss for Failure to Adequately Serve with Process is DENIED WITHOUT PREJUDICE.

Sanchez's Motion to Dismiss on the Merits is DENIED WITHOUT PREJUDICE.

AND IT IS SO ORDERED.

1993 U.S. Dist. LEXIS 13143, *

Clarence C. Newcomer, J.

1 of 1 DOCUMENT

**CINDY L. RUTH v. UNUM LIFE INSURANCE COMPANY OF AMERICA**

**CIVIL ACTION No. 94-3969**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1994 U.S. Dist. LEXIS 12501; 18 E.B.C. 2088*

**September 2, 1994, Decided**
**September 6, 1994, Filed, Entered**

**COUNSEL:**
[*1]  For CINDY L. RUTH, Plaintiff: JOHN R. O'ROURKE, JR., MCTIGHE, WEISS, BACINE & O'ROURKE, NORRISTOWN, PA.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant: MICHAEL J. GLASHEEN, JANEEN OLSEN DOUGHERTY, CLARK, LADNER, FORTENBAUGH & YOUNG, PHILA, PA.

**JUDGES:**
GILES

**OPINIONBY:**
JAMES T. GILES

**OPINION:**

MEMORANDUM

GILES, J.

September 2, 1994

Defendant moves to dismiss the Complaint, arguing that plaintiff's claims are pre-empted by the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1001* et seq. For the reasons stated below, the motion to dismiss will be granted, with plaintiff given leave to file an amended complaint.

**I. FACTUAL BACKGROUND n1**

n1 For the purpose of deciding this motion to dismiss, we must assume that the Complaint's factual allegations are true. See, e.g., *Jenkins v.*

*McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969); D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984).*

[*2]

Plaintiff Cindy L. Ruth ("Ruth") was employed at Union National Bank & Trust Company ("the Bank"). During her employment, the Bank and defendant UNUM Life Insurance Company of America ("UNUM") were parties to a contract for group long-term disability insurance ("the Policy"). Pursuant to the Policy, UNUM agreed to pay long-term disability benefits to Ruth for two years if, due to injury or sickness, she was unable to perform each of the material duties of her regular occupation. After a two year period, UNUM agreed to continue to pay benefits if Ruth was then unable to perform each of the material duties of any gainful occupation for which she is reasonably fitted by training, education or experience. Complaint P 5.

In October of 1987, while the Policy was in effect, Ruth became totally disabled. She was diagnosed with Chronic Fatigue Syndrome, also known as Epstein-Barr virus, and a number of related symptoms, complicated by prior thyroid abnormalities, depression, peptic ulcer disease, irritable bowel syndrome, and liver function abnormalities. Complaint P 6. Pursuant to the Policy, UNUM paid disability benefits of approximately $ 810 per month to Ruth from January 1988 through  [*3]  November 1992. In November 1992, however, UNUM terminated Ruth's benefits. Complaint PP 9-10.

Ruth commenced this action in June of 1994. The Complaint alleges that UNUM's termination of Ruth's benefits was done in bad faith and in total disregard of

1994 U.S. Dist. LEXIS 12501, *; 18 E.B.C. 2088

her rights under the Policy, and brings claim for Breach of Contract (Counts 1 & 8); Breach of Fiduciary Duties (Count 2); Common Law Fraud and Deceit (Count 3); Bad Faith Tort, 42 Pa.C.S.A. § 8371 (Count 4); Breach of Uniform Commercial Code (Count 5); Violation of the Unfair Trade Practices and Consumer Protection Law (Count 6); and Estoppel (Count 7).

As the above recitation shows, the Complaint is comprised exclusively of claims under Pennsylvania common law, see Counts 1-3, 7-8, and statutes, see Counts 4-6. Jurisdiction is alleged to be based on diversity of citizenship. Complaint P 1. UNUM argues that all such claims are pre-empted by ERISA, and moves to dismiss the Complaint.

II. DISCUSSION

When it passed ERISA, Congress set out to

protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information [*4] with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b); accord Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 44, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987). "ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide ... benefits in the event of sickness ... [or] disability." Pilot Life, 481 U.S. at 44 (quoting 29 U.S.C. § 1002(1)). It is undisputed that the Policy is part of a "plan" subject to ERISA. See id., 481 U.S. at 43 (long-term disability employee benefit plan obtained by purchasing a group insurance policy is an ERISA "plan").

A. ERISA's Pre-emption Clause

ERISA has several provisions relating to the pre-emption of state law claims. [*5] In particular, ERISA's pre-emption clause provides:

Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ....

29 U.S.C. § 1144(a).

The United States Supreme Court has repeatedly "noted the expansive sweep of [ERISA's] pre-emption clause." Pilot Life, 481 U.S. at 47 (citing Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S. Ct. 2380, 85 L. Ed. 2d 728; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983)). As the Supreme Court has explained, the phrase "relate to," as used in the pre-emption clause, has always been

given its broad common-sense meaning, such that a state law "relates to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." Metropolitan Life, supra, 471 U.S. at 739, 105 S. Ct. at 2389, [*6] quoting Shaw v. Delta Air Lines, supra, 463 U.S. at 97, 103 S. Ct. at 2900. In particular we have emphasized that the pre-emption clause is not limited to "state laws specifically designed to affect employee benefit plans." Shaw v. Delta Air Lines, supra, at 98, 103 S. Ct. at 2900.

Pilot Life, 481 U.S. at 47-48. Under this broad definition of "relate to," we have no trouble in concluding that all of Ruth's claims, "each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption" under § 1141(a). Id., 481 U.S. at 48. Thus, all of Ruth's claims are pre-empted unless they fall within the ambit of the saving clause referred to in the pre-emption clause.

B. ERISA's Saving Clause

Certain types of state laws are exempted from ERISA's broad pre-emption by its "saving clause," which provides, inter alia, that "nothing in this subchapter shall be construed to exempt [*7] or relieve any person from any law of any State which regulates insurance ...." 29 U.S.C. § 1144(b)(2)(A). Ruth argues that her Bad Faith Tort claim, brought pursuant to 42 Pa.C.S.A. § 8371 (Count 4), is saved from pre-emption by this clause. Section 8371, which creates a cause of action against an insurer when the insurer acts in bad faith, provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured ....

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

1994 U.S. Dist. LEXIS 12501, *; 18 E.B.C. 2088

42 Pa.C.S.A. § 8371.

Section 8371 is saved from pre-emption only if it "regulates insurance" within the meaning of ERISA's saving clause. Neither the United States Supreme Court nor our court of appeals has decided if § 8371 "regulates insurance." In Pilot Life, the Supreme Court held that a similar Mississippi common law claim for bad faith breach of an insurance contract is pre-empted by [*8] ERISA, and that the cause of action is not rescued by the saving clause's "regulates insurance" exception. The "bad faith" tort at issue in Pilot Life was described by the Mississippi Supreme Court, which stated that it had "come to term an insurance carrier which refuses to pay a claim when there is no reasonably arguable basis to deny it as acting in 'bad faith,' and a lawsuit based upon such an arbitrary refusal as a 'bad faith' cause of action." *Pilot Life, 481 U.S. at 50* (quoting *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell, 466 So.2d 833, 842 (Miss. 1984)).* Under the Mississippi law, punitive damages are available to an insured who can make out a bad faith claim against her insurer. *Pilot Life, 481 U.S. at 49-50* (citing Mississippi cases).

The elements of Mississippi's common law "bad faith" tort are identical to those of Pennsylvania's 42 Pa.C.S.A. § 8371. In each case, the insured must show that the insurer breached the insurance contract, and that the breach was made in bad faith. Punitive damages are available [*9] under both laws. However, while Ruth's bad faith claim is very similar to the Mississippi common law claim found to be pre-empted in Pilot Life, there are distinctions between the two claims that require further analysis.

The United States Supreme Court has described the considerations that should guide us in deciding whether ERISA's savings clause encompasses a state law. First, we must take "what guidance [is] available from a 'common-sense view' of the language of the saving clause itself." *Pilot Life, 481 U.S. at 48* (citing *Metropolitan Life, 471 U.S. at 740, 105 S. Ct. at 2389).* In addition, we should consider

the case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq.... Three criteria have been used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran-Ferguson Act:

"First, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice [*10] is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the

insurance industry." *Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S. Ct. 3002, 3009, 73 L. Ed. 2d 647 (1982)* (emphasis in original).

*Pilot Life, 481 U.S. at 48-49* (footnote omitted). None of the three criteria borrowed from the McCarran-Ferguson Act context is necessarily determinative. *Union Labor, 458 U.S. at 129.*

With regard to the "common-sense view" of the saving clause's language, the Pilot Life Court found that

a common-sense understanding of the phrase "regulates insurance" does not support the argument that the Mississippi law of bad faith falls under the saving clause. A common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Even though the Mississippi [*11] Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law.

*Pilot Life, 481 U.S. at 50.*

In contrast, Pennsylvania's bad faith tort, 42 Pa.C.S.A. § 8371 is "specifically directed toward" the insurance industry. It is entitled "Actions on insurance policies." It provides a cause of action only when an insured sues her insurer in "an action arising under an insurance policy." Id. Indeed, Pennsylvania does not recognize a tort action for bad faith breach of contract outside the insurance context. See *AM/PM Franchise Ass'n v. Atlantic Richfield Co., 526 Pa. 110, 584 A.2d 915, 926-27 (1990); Chrysler Credit Corp. v. B.J.M., Jr., Inc., 834 F. Supp. 813, 841-42 (E.D. Pa. 1993); Creeger Brick & Building Supply, Inc. v. Mid-State Bank & Trust Co., 385 Pa.Super. 30, 560 A.2d 151, 153 (1989).* [*12] Thus, the "common-sense" meaning of "regulates insurance," arguably encompasses § 8371. Accord, *Rallis v. Travis World Music Corp., Civ. A. No. 93-6100, 1994 WL 96264* at * 4 (E.D. Pa. March 25, 1994); *Northwestern Institute of Psychiatry v. The Travelers Insurance Co., Civ. A. No. 92-1520, 1992 WL 331521* at * 3 (E.D. Pa. Nov. 3, 1992).

With regard to the three criteria borrowed from interpretation of the McCarran-Ferguson Act, § 8371 does not satisfy the first criterion, since it does not have the effect of transferring or spreading a policyholder's risk. See *Pilot Life, 481 U.S. at 50; Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 211-213, 59 L.*

1994 U.S. Dist. LEXIS 12501, *; 18 E.B.C. 2088

*Ed. 2d 261, 99 S. Ct. 1067 (1979).* n2 Accord, *Gelzinis v. John Hancock Mutual Life Insurance Co., Civ. A. No. 93-569, 1993 WL 131566* at * 4-5 (E.D. Pa. April 27, 1993); *Northwestern Institute, supra,* at * 3. Section 8371 does satisfy the third McCarran-Ferguson criterion, since its express language limits its application to suits against insurers. Accord, *Gelzinis, supra,* at * 4-5; [*13] *Northwestern Institute, supra,* at * 3. With regard to the second McCarran-Ferguson criterion, the Supreme Court found that the Mississippi bad faith cause of action at issue in Pilot Life was not an integral part of the policy relationship between the insurer and the insured. As the Court explained:

> n2 Transferring or spreading the risk of carrying a policy holder is an indispensable characteristic of insurance, in that a number of risks are accepted, some of which involve losses, and such losses are spread over all the risks so that the insurer can accept each risk at a slight fraction of its cost. *Royal Drug, 440 U.S. at 211;* see also *Union Labor, 458 U.S. at 127 & n.7* ("spreading" and "underwriting" of risk refer to transfer of risk characteristic of insurance). See, e.g., *Royal Drug, 440 U.S. at 212* (annuity bears no true underwriting of risk); *Union Labor, 458 U.S. at 130* (peer review practice does not spread risk because transfer of risk occurs when insurance contract is entered into by parties); compare *Metropolitan Life, 471 U.S. at 743* (mandated-benefit statute requiring health care insurers to include mental health coverage in all policies does regulate spreading of risk).

[*14]

the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is therefore no more "integral" to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State.

*Pilot Life, 481 U.S. at 51.* Because identical logic applies to § 8371, we conclude that it is not an integral part of the policy relationship between the insurer and insured. Accord, *Gelzinis, supra,* at * 4-5; *Northwestern Institute, supra,* at * 3.

Thus, unlike the situation in Pilot Life, where all of the above-described factors counseled against a conclusion that the Mississippi bad faith action was a law "regulating insurance," the results of a similar analysis applied to § 8371 are mixed. Pennsylvania's bad faith action arguably "regulates insurance" under the common-sense meaning of the phrase, and its application is expressly [*15] limited to insurers. On the other hand, § 8371 does not have the effect of transferring or spreading a policyholder's risk, nor is it an integral part of the policy relationship between insurer and insured.

Although the balance of "common-sense" and McCarran-Ferguson criteria is slightly different in this case than it was in Pilot Life, we believe that the conclusion to be reached is the same: section 8371 does not "regulate insurance" within the meaning of ERISA's saving clause, and is therefore pre-empted. n3 The only arguably material difference between § 8371 and the common law cause of action considered in Pilot Life is the fact that § 8371 is directed explicitly and solely against insurers, while Mississippi's common law claim is more general in its scope. To conclude that § 8371 "regulates insurance," while the common law claim considered in Pilot Life does not, would create a distinction that would strip the other McCarran-Ferguson factors of all significance. Such a distinction would also seriously undermine the uniformity that Congress sought to achieve through ERISA, see *Pilot Life, 481 U.S. at 55-57,* [*16] since it would allow a claim in Pennsylvania that is substantively identical to a claim that would be banned in Mississippi.

> n3 All the decisions that we have found have reached the same conclusion. See *Wileman v. Capital Blue Cross, Civ. A. No. 94-218, F. Supp. , 1994 WL 396521* (M.D. Pa. July 13, 1994); *Rallis, supra; Booz v. UNUM Life Ins. Co. of America, Civ. A. No. 93-2326, 1993 WL 313372* (E.D. Pa. Jul. 29, 1993) *Gelzinis, supra; Northwestern Institute, supra.* Judge Yohn of this court has surveyed the decisions in other jurisdictions with bad faith torts similar to Pennsylvania's and found that they are in accord with our result. See *Northwestern Institute, supra,* at * 3-4.

Even if we could not conclude from the above analysis that Ruth's bad-faith tort claim is pre-empted, we would so conclude from other considerations raised in Pilot Life. "The question whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate [*17] touchstone." *Pilot Life, 481 U.S. at 45* (quoting *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208, 105 S. Ct. 1904, 1909, 85 L. Ed. 2d 206 (1985); Malone v. White*

*Motor Corp., 435 U.S. 497, 504, 98 S. Ct. 1185, 1189, 55 L. Ed. 2d 443 (1978); Retail Clerks v. Schermerhorn, 375 U.S. 96, 103, 84 S. Ct. 219, 222, 11 L. Ed. 2d 179 (1963))* (internal quotation marks omitted). Accordingly, the Supreme Court stated that:

we are obliged in interpreting the saving clause to consider not only the [above-described "common-sense" and McCarran-Ferguson] factors ..., but also the role of the saving clause in ERISA as a whole. On numerous occasions we have noted that in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy. ... Because in this case, the state cause of action seeks remedies for the improper processing of a claim for benefits under [*18] an ERISA-regulated plan, our understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), *29 U.S.C. § 1132*(a).

*Pilot Life, 481 U.S. at 51-52* (internal quotation marks and citations omitted).

Upon considering both the overall structure of ERISA and its legislative history, the Supreme Court concluded that:

Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

*Pilot Life, 481 U.S. at 52.* Accordingly, we find that Ruth's bad faith tort claim is pre-empted by ERISA.

III. CONCLUSION

Because all of Ruth's claims are pre-empted by ERISA, the Complaint must be dismissed for failure to state a claim upon which relief [*19] can be granted. However, in the interest of justice, Ruth will be given leave to file an amended complaint bringing claims under ERISA. n4

n4 UNUM asks the court to strike Ruth's demands for a jury trial and for punitive damages. Because we have dismissed the Complaint, there are no such claims before us, and it would not be appropriate to address UNUM's arguments at this time.

ORDER

AND NOW, this 2nd day of September, 1994, upon consideration of defendant's motion to dismiss and plaintiff's response thereto, it is hereby ORDERED that:

1. The motion is GRANTED and the Complaint is dismissed.

2. Plaintiff shall have leave until Oct. 3, 1994 to file an amended complaint consistent with the accompanying Memorandum.

BY THE COURT:

James T. Giles, J.

1 of 2 DOCUMENTS

**DIANE HALL v. HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

CIVIL ACTION NO. 94-2328

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1995 U.S. Dist. LEXIS 2097*

February 23, 1995, Decided
February 24, 1995, FILED, ENTERED

COUNSEL:
[*1] For DIANE HALL, PLAINTIFF: EDWIN P. SMITH, SMITH, MC ELDREW & LEVENBERG, PHILA, PA.

For ITT HARTFORD, DEFENDANT: STEVEN R. KELLY, PHILA, PA.

JUDGES:
Assigned to: JUDGE JAMES MCGIRR KELLY

OPINIONBY:
JAMES MCGIRR KELLY

OPINION:

**MEMORANDUM AND ORDER**

J. M. KELLY, J.

FEBRUARY 23, 1995

Defendant Hartford Life and Accident Insurance Company moves to dismiss Paragraphs 8 and 9 of Plaintiff Diane Hall's Complaint on the grounds that these Paragraphs fail to state a claim upon which relief can be granted. For the reasons discussed below, Defendant's motion will be granted in part and denied in part.

Defendant contends that Plaintiff's federal claim under the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1101* et seq. (Paragraph 8) and Plaintiff's state law claim under 42 Pa. C.S.A. § 8371 (Paragraph 9) should be dismissed in accordance with Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. See *Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).* [*2] A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested. See *Commonwealth ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).* In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. See *Wisniewski v. Johns-Manville Corp., 759 F.2d 271 (3d Cir. 1985).*

As to Paragraph 8, the ERISA claim, Defendant contends that Plaintiff has failed to allege the elements necessary to establish a claim for equitable estoppel and, therefore, this claim should be dismissed. However, it is not necessary for Plaintiff to have alleged such elements. Paragraph 8 states:

In violation of the Plan, defendant failed to review said claim and render a written decision thereon within sixty days of such appeal nor any decision whatsoever.

This allegation is sufficient to meet the requirements of notice pleading and to withstand [*3] a motion to dismiss. See *Barnhart v. Compugraphic Corp., 936 F.2d 131, 135 n.7 (3d Cir. 1991)* (Fed. R. Civ. P. 8 requires that a pleading provide sufficient notice of the type of litigation that is involved). Therefore, Defendant's motion to dismiss Paragraph 8 of Plaintiff's Complaint will be denied.

1995 U.S. Dist. LEXIS 2097, *

Defendant also contends that Paragraph 9 of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a valid claim upon which relief may be granted. Paragraph 9 states:

Defendant has acted in bad faith, as aforesaid, in violation of 42 Pa. C.S.A. § 8371, and had no reasonable basis for such denial.

Defendant contends that this Paragraph should be dismissed because a bad faith claim under Pennsylvania state law is pre-empted by ERISA. For the reasons which follow, Defendant's motion to dismiss Paragraph 9 will be granted.

ERISA's pre-emption clause provides:

Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [*4] ....

*29 U.S.C. § 1144*(a).

The Eastern District of Pennsylvania recently addressed the issue of pre-emption under ERISA in *Ruth v. UNUM Life Insurance Company of America, 1994 U.S. Dist. LEXIS 12501* (E.D. Pa. Sept. 6, 1994). In Ruth, the court discussed the "expansive sweep" of ERISA's pre-emption provision and found that all of Ruth's claims met the criteria for pre-emption. Ruth, 1994 U.S. Deist. LEXIS, 12501, at * 5-6. See also *Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985)* (noting broad sweep of ERISA's pre-emption clause). Similarly, Plaintiff Hall's bad faith claim also meets the criteria for pre-emption. Plaintiff's claim involves Defendant's alleged non-compliance with the terms of a Long-Term Disability Plan issued by Plaintiff's employer. Therefore, Plaintiff's claim "relates to" an employee benefit plan and is pre-empted, unless it can be established that this claim falls within ERISA's savings clause.

ERISA's savings clause provides:

... nothing [*5] in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ....

*29 U.S.C. § 1144*(b)(2)(A).

Plaintiff's bad faith claim is brought pursuant to 42 Pa. C.S.A. § 8371. Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

Section 8371 can be saved from pre-emption by ERISA's savings clause only if it actually "regulates insurance." This issue was specifically addressed in the *Ruth case. 1994 U.S. Dist. LEXIS 12501* (E.D. Pa. Sept. 6, 1994). In Ruth, the court held that section 8371 does not "regulate insurance" within the meaning of ERISA's savings clause, and is therefore pre-empted. Id. at * 15. In reaching its decision, the Ruth [*6] court analyzed the common sense interpretation of the statute and the three criteria borrowed from the McCarran-Ferguson Act. n1 Id. at * 9-15. More important, the Ruth court relied on the Supreme Court's conclusion that Congress intended ERISA to be the sole remedy for plaintiffs alleging improper processing of their ERISA plan claims. Id. at 17, citing *Pilot Life, 481 U.S. at 51-52.*

n1 The three McCarran-Ferguson criteria are: "First, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 73 L. Ed. 2d 647, 102 S. Ct. 3002 (1982)* (emphasis in original).

This court agrees with the analysis made by the Ruth court in reaching its determination that Section 8371 does not "regulate [*7] insurance" within the meaning of ERISA's savings clause. Since Plaintiff's bad faith claim is pre-empted by ERISA and not saved by the savings clause, Paragraph 9 of Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief can be granted.

Accordingly, in consideration of Defendant Hartford Life and Accident Insurance Company's Motion to Dismiss Paragraphs 8 and 9 of Plaintiff's Complaint and Plaintiff Diane Hall's Response, it is hereby ORDERED that Defendant's Motion to Dismiss Paragraph 8 is

Page 3

1995 U.S. Dist. LEXIS 2097, *

DENIED and Defendant's Motion to Dismiss Paragraph
9 is GRANTED.

BY THE COURT:

JAMES McGIRR KELLY, J.