ORIGINAL

λ to Court

17

1-402
dc



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN D. TESCHÉ, | : | Civil Action No. 1:CV-01-0326 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| CNA INSURANCE COMPANIES, and | : | |
| CONTINENTAL CASUALTY COMPANY, | : | |
| | : | |
| Defendants | : | (Judge Caldwell) |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT**


**I.   PROCEDURAL HISTORY**

The above action involves an appeal of an insurance company's final decision, terminating long-term disability insurance benefits under an ERISA[1] Employee Welfare Benefit Plan. Pursuant to a court-approved stipulation, plaintiff, Joan Tesché ("Mrs. Tesché"), filed an amended complaint against the named defendants.[2] Count I alleges that defendants breached certain

---

[1]   The Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., as amended ("ERISA").

[2]   Plaintiff's initial complaint included state-law claims. Plaintiff filed the amended complaint in response to defendants' motion under Rule 12(b)(6), which sought to dismiss plaintiff's claim for breach of contract (Count I) and other relief under state law.

fiduciary duties under ERISA, including CNA's failure to advise Mrs. Tesché about the medical and vocational criteria governing her continued receipt of LTD benefits. Amended Complaint, ¶¶ 22, 25. In Count II, Mrs. Tesché seeks alternative relief, including the Court's review and reversal of CNA's final decision terminating Mrs. Tesché's LTD benefits as of October 30, 1999. In both Counts, Mrs. Tesché also requests attorneys' fees and costs under ERISA.

Defendants filed a timely answer to the amended complaint, raising certain affirmative defenses, including the allegation that Mrs. Tesché was not "totally disabled" as defined by the applicable plan/policy. Defendants' Answer, Third Affirmative Defense.

## II.  STATEMENT OF FACTS

The complete factual background is set forth in plaintiff's accompanying Statement of Material Facts, supporting affidavit, and other documents which are incorporated by reference herein. However, the following facts should be emphasized:

From May 2, 1988 to approximately May 1997, Mrs. Tesché was an employee of AMP Incorporated ("AMP") of Harrisburg, Pennsylvania. Plaintiff's Statement of Material Facts, ¶ 7. As an AMP employee, Mrs. Tesché was eligible for long-term disability benefits through CNA and its affiliate/underwriter, Continental Casualty Company ("CCC"). Id at ¶ 8.

On or about May 3, 1997, CNA determined that Mrs. Tesché was disabled from her occupation as a System Procedure Analyst; and CCC paid LTD benefits to Mrs. Tesché for the 24-month "own occupation" period, commencing after the 180-day waiting period. Plaintiff's Statement, ¶ 12. Mrs. Tesché was terminated by AMP in May of 1997. Id.

On May 21, 1999, one of Mrs. Tesché's treating physicians, Dr. Steven Wolf, provided her permanent restrictions at that time, noting that Mrs. Tesché "seem[ed] to be worsening..." and that her prognosis was "poor." CNA Certified Record at CCC000183, CCC000184. From May 21, 1999 through February 21, 2000 (the date of CNA's final decision), CNA never contacted Mrs. Tesché's treating physicians, Drs. Rubenstein and

3

Wolf, to obtain an update on her worsening condition, including her permanent medical restrictions and limitations.

By letter dated October 7, 1999, CNA determined that Mrs. Tesché did not fall within the "any occupation" definition of total disability, and that she was not entitled to benefits beyond October 30, 1999, i.e., the end of the 24-month period of benefits. Id. at ¶ 15. Mrs. Tesché's attorneys timely appealed CNA's initial determination. Id. at ¶ 17.

Although CNA never provided her with the governing medical and vocational criteria, Mrs. Tesché submitted a December 22, 1999 medical report from her treating physician, Dr. Wolf, in support of her appeal. In his report, Dr. Wolf opined that Mrs. Tesché was not employable based on her current medical condition, including her inability to perform the purported job opportunities used by DNA in terminating benefits. Id. at ¶ 21.

By letter dated February 21, 2000, CNA's Appeals Committee rendered a final decision on Mrs. Tesché's appeal. Although the Committee consisted of several members, only one CNA employee, Cheryl Sauerhoff, reviewed Mrs. Tesché's appeal and made the final decision. Sauerhoff Dep. Tr. at 36-37.

Ms. Sauerhoff made her decision based solely on <u>dated</u> medical and vocational records. She did not bother to interview the claimant or her treating physicians, did not seek a medical or vocational opinion, and did not obtain an IME. This approach was not consistent with her customary practice. <u>See generally</u> Sauerhoff Dep. Tr.

As required by the LTD policy, Mrs. Tesché applied for social security disability benefits, alleging that she was unable to perform any substantial gainful employment. <u>See generally</u> 20 C.F.R. §§404.1569, 416.969; <u>Id</u>. at Subpart P, Appendix II. By letter dated January 15, 2001, the Social Security Administration awarded social security benefits to Mrs. Tesché, retroactive to October 1, 1999. Plaintiff's Statement, ¶ 40.

### III.   STATEMENT OF QUESTIONS INVOLVED

A.   Should the Court enter summary judgment in favor of Mrs. Tesché based on CNA's alleged breach of its fiduciary duties (Count I of the amended complaint) where, as here:

(1)   CNA failed to provide Mrs. Tesché with certain requested (and ERISA-mandated) information, including the medical and vocational criteria used in deciding her LTD appeal;

   (2) CNA failed to act in Mrs. Tesché's best interest by neglecting to investigate, update, and clarify the medical and vocational information used in making its decision; and

   (3) CNA failed to provide Mrs. Tesché with a fair and impartial tribunal, because its Appeals Committee used arbitrary procedures and had a conflict of interest?

  (The suggested answer is in the affirmative.)

  B. Whether the Court should enter summary judgment in favor of Mrs. Tesché concerning her claim for continuing LTD benefits (Count II) where, as here:

   (1) based on a *de novo* standard, Mrs. Tesché provided uncontradicted proof of total disability, as defined by the governing policy;

   (2) alternatively, based on the somewhat deferential standard, CNA acted arbitrarily and capriciously in failing to provide ERISA-mandated vocational reports while requiring Mrs. Tesché to provide objective medical and vocational evidence of disability; and

   (3) the Social Security Administration awarded disability benefits to Mrs. Tesché using criteria similar to those used by CNA under the policy?

  (The suggested answer is in the affirmative.)

  C. Whether Mrs. Tesché is entitled to an award of retroactive benefits, accrued interest, attorneys' fees, and costs based on defendants' violations of ERISA?

  (The suggested answer is in the affirmative.)

### IV.  ARGUMENT

**A.   CNA breached its fiduciary duties to Mrs. Tesché and had a fundamentally flawed appeal process.**

CNA had a fiduciary duty to assist Mrs. Tesché and to advise her about all medical and vocational criteria used in deciding her LTD claim.  Section 404(a) of ERISA codifies the common-law duty of care imposed on trustees:  ERISA plan fiduciaries must act prudently and solely in the best interest of plan participants.  See <u>Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc</u>. 472 U.S. 559, 570 (1985).  <u>See also</u> Bradford Dorrance's Supporting Affidavit (attaching AMP Employee Handbook).

Based on this undisputed standard, CNA breached various fiduciary duties owed to Mrs. Tesché.  For example, CNA failed to provide Mrs. Tesché with certain requested (and ERISA-mandated) information which was necessary for her appeal including:  the disability claim file; the vocational expert's report; and the job descriptions used by the vocational expert in terminating LTD benefits.  Additionally, CNA never bothered to contact either the

7

claimant or her treating physician to clarify any remaining medical or vocational issues; to update Mrs. Tesché's her medical restrictions, limitations, and activities of daily living; and to determine whether she met the definition of total disability. Compare Varity Corp. v. Howe, 516 U.S. 489, 502 (1996). (An employer acted in a fiduciary capacity when it failed to accurately communicate plan-related information.)

Not only did CNA breach its fiduciary duties to Ms. Tesché, it also had a fundamentally flawed appeal process. As confirmed by Ms. Sauerhoff's testimony, the Appeals Committee consisted of insurance company employees who had little or no expertise on the medical and vocational issues. Sauerhoff Dep. Tr. at 36-37. Compare Luby v. Teamsters Health, Welfare, and Pension Trust Funds, 944 F.2d 1176, 1183 (3rd Civ. 1991). Committee members were appointed by Cindy Mansuy, who was an officer or director of the company. Id. Based on CNA's conflict of interest (and arbitrary procedures), the Appeals Committee was not a fair and impartial tribunal. CNA's appeal process violated fundamental constitutional guarantees including due process. See, e.g., Rudolph v. Pennsylvania Blue Shield, 717 A.2d 508 (Pa.

1998). In view of these ERISA and constitutional violations, summary judgment should be entered in plaintiff's favor on Count I of the amended complaint.

> **B. CNA's decision should be reversed, because Mrs. Tesché provided uncontradicted evidence of total disability and because CNA acted arbitrarily and capriciously throughout the review process.**

In reviewing CNA's final decision, this Court's scope of review is determined by the governing ERISA plan document. A <u>de novo</u> review of CNA's factual determinations is appropriate if the plan does not grant the administrator discretion to make her determinations. <u>Mitchell v. Eastman Kodak Company</u>, 113 F.3d 433 (3d Cir. 1997). However, if the plan document vests such discretion in the administrator, this Court must apply the arbitrary and capricious standard. Under this narrower (and somewhat deferential) scope of review, the district court cannot substitute its own judgment for that of the administrator in determining the claimant's eligibility for continuing LTD benefits. <u>Id</u>. Rather, the court may reverse CNA's decision if

it is without reason, unsupported by the evidence, or erroneous as a matter of law. Id.

Unfortunately, although these standards are well-defined, defendants' plan documents are not. In response to plaintiff's discovery request, defendants were unable to provide any document vesting discretion in the claim administrator.

Plaintiff's undersigned counsel thereafter contacted Mrs. Tesché's former employer, Tyco Electronics (successor in interest to AMP Incorporated). The employer was only able to locate an employee handbook describing certain features of the LTD plan, including the following appeal procedures:

> **HOW TO APPEAL A DENIED CLAIM**
>
> * * *
>
> The explanation [of the initial termination of LTD benefits] will include:
>
> * * *
>
> **A description of any additional material or information required to substantiate your claim and an explanation of why it is necessary.**
>
> * * *

10

> Under any of the plans, AMP or the
> appropriate claims administrator may request
> additional information to **clarify** any matters
> that they deem appropriate.... All
> interpretations, determinations and decisions
> of the Plan Administration (sic) will be
> final and binding on all parties involved.

Bradford Dorrance's Supporting Affidavit, Exhibit A. (emphasis added).[3]

Regardless of whether the plan document vests discretion in the plan administrator, the Court should use a heightened (and critical) review of CNA's final decision, taking into account its fiduciary breaches, its conflict of interest, and its arbitrary and unfair review process. <u>Mitchell</u> at 437, footnote 4. Using this expanded review, Ms. Sauerhoff's final decision should be reversed, because it was based on inconsistent and undisclosed criteria and because Mrs. Tesché satisfied the definition of total disability under the policy. <u>Compare</u> Bradford Dorrance's Affidavit (Employee Handbook).

---

[3] Based on this handbook and other information which is part of the record, it appears that the plan document may be the LTD policy underwritten by defendant, CCC, and administered by defendant, CNA. That document contains no provision vesting discretion in CNA's claim administrator. <u>See</u> Amended Complaint, Exhibit A.

CNA's Appeals Committee tried to control the outcome of the appeal by limiting its decision to a purely <u>vocational</u> determination. Sauerhoff Dep. Tr. at 21, 65. Using a duplicitous approach, CNA withheld ERISA-mandated information from Mrs. Tesché and ultimately relied on its own vocational counselor's undisclosed report.

CNA's reliance on its vocational determination is not only unfair to the unsuspecting claimant; it also deviates from the governing definition of total disability and contradicts the criteria identified in Ms. Sauerhoff's written decision. As confirmed by Ms. Sauerhoff's decision, the determination of total disability is based on various vocational <u>and</u> medical criteria, including the claimant's permanent medical restrictions and activities of daily living.

Ms. Sauerhoff's sworn testimony was inconsistent with the rationale which supposedly supported her February 21, 2000 decision. Ms. Sauerhoff testified that her decision was based solely on <u>vocational</u> criteria; however, her written decision expressly relied on vocational <u>and</u> medical findings (neither of which she investigated or updated). <u>Id</u>. <u>Compare</u> Amended

Complaint, Exhibit F; Employee Handbook. Ms. Sauerhoff's superficial review of dated file material was contrary to her customary practice. Sauerhoff Dep. Tr. at 12, 21-27, 38, 47-49, 63-68, 86-87.

In her decision, Ms. Sauerhoff blames Dr. Wolf for not detailing why Ms. Tesché was incapable of performing the listed occupations. However, following a familiar pattern, Ms. Sauerhoff did not ask Dr. Wolf to clarify his opinion. Likewise, Ms. Sauerhoff did not advise Ms. Tesché and her attorney of this apparent <u>medical</u> issue, which was first disclosed in the February 21, 2000 decision. <u>Compare</u> <u>Varity Corp</u>. at 502; <u>Mitchell</u> at 437-438; Bradford Dorrance's Affidavit (Employee Handbook). CNA acted arbitrarily in withholding important information while requiring Mrs. Tesché to provide objective medical and vocational evidence of disability. <u>Id</u>.

Ms. Sauerhoff conceded that the Social Security Administration's regulations are similar to the medical and vocational criteria used by CNA in deciding LTD claims. <u>Id</u>. at 41-42. <u>Compare</u> Amended Complaint, Exhibit F and 20 C.F.R. §§404.1563, 416.963 (age), §§404.1564, 416.964 (education),

13

§§404.1565, 416.965 (work experience), and §§404.1567(a), 416.967(a) (sedentary limitations). The Social Security Administration awarded disability benefits to Ms. Tesché without any need for a hearing; CNA summarily terminated those benefits based on inconsistent and undisclosed criteria.

The Social Security Administration's award of benefits is compelling (and potentially determinative) evidence that Mrs. Tesché satisfied the definition of total disability under the LTD policy. Compare Ladd v. ITT, 148 F.3d 753 (7th Cir. 1998). Summary judgment should be granted in plaintiff's favor on Count II of the amended complaint.

> C. Mrs. Tesché is entitled to an award of retroactive benefits, accrued interest, attorneys' fees, and costs.

Based on CNA's wrongful actions and other considerations, Mrs. Tesché is entitled to retroactive benefits, accrued interest, attorneys' fees, and costs. Anthuis v. Colt Industries Operating Corp., 971 F.2d 999 (3rd Cir. 1992); 29 U.S.C. §1132(g)(1).

14

### V. CONCLUSION

For the foregoing reasons, plaintiff, Joan D. Tesché, respectfully requests that the Court enter summary judgment in her favor on Counts I and II of the amended complaint and award retroactive benefits, accrued interest, attorneys' fees, and costs.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 1/3/02

Bradford Dorrance
I. D. No. 32147
210 Walnut Street
P. O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

(Attorneys for Plaintiff)

15

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:

<u>First-Class Mail, Postage Prepaid
Addressed as Follows:</u>

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103-7424

(Attorneys for Defendants)

Dated: 1/3/02

Bradford Dorrance