IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN D. TESCHÉ, | : |
| | : Civil Action No. 1:CV-01-0326 |
| Plaintiff | : |
| v. | : |
| | : |
| CNA INSURANCE COMPANIES, and | : |
| CONTINENTAL CASUALTY COMPANY, | : |
| | : |
| Defendants | : (Judge Caldwell) |



**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
UNDER LOCAL RULE 56.1**

     1.    Plaintiff, Joan D. Tesché ("Mrs. Tesché"), is an adult individual domiciled and residing at 7737 Fishing Creek Valley Road, Harrisburg, Dauphin County, Pennsylvania 17112. Amended Complaint, ¶ 1.

     2.    Defendant, CNA Insurance Company t/a CNA Insurance Companies ("CNA"), is an Illinois corporation engaged in the business of writing and/or administering various types of insurance. CNA serves as claim or plan administrator and trustee/plan fiduciary in administering certain employers' group disability plans. CNA has its principal place of business at CNA

Plaza, Chicago, Illinois; is qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents. Amended Complaint, ¶ 2; Defendant's Answer, ¶ 2.

    3. Defendant, Continental Casualty Company ("CCC"), a CNA affiliate, is a corporation engaged in the business of writing and underwriting various types of insurance, including acting as insurer/underwriter of certain employers' disability plans. CCC has its principal place of business at CNA Plaza, Chicago, Illinois; is qualified to do business in Pennsylvania; and maintains offices in Dauphin County through certain licensed insurance agents. Id. at ¶ 3. Sauerhoff Dep. Tr. at 28.

    4. This is a civil action involving alleged claims in excess of $75,000.00, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1332 (diversity of citizenship) in that every issue of fact and law is between citizens of different states. Jurisdiction is also based on 28 U.S.C. §1331 (federal question jurisdiction) in that some or all of Mrs. Tesché's claims arise under the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq., as amended. Id.

5. Pursuant to Section 502(a), (f) of ERISA, 29 U.S.C. §1132(a), (f), the United States District Courts have jurisdiction over actions by beneficiaries of ERISA-regulated plans to recover benefits due under such plans. Id.

6. Venue over this action rests with the United States District Court for the Middle District of Pennsylvania. Id.

7. From approximately May 2, 1988 to approximately May 1997, Mrs. Tesché was an employee of AMP Incorporated ("AMP") of Harrisburg, Pennsylvania. Tesché Dep. Tr. at 12; Certified CNA Record at CCC00085, CCC000141.

8. As an AMP employee, Mrs. Tesché was eligible for long-term disability benefits through CNA and its affiliate/underwriter, CCC.

9. Attached to the amended complaint as Exhibit "A" is a copy of the CNA/CCC long-term disability ("LTD") policy, under which Mrs. Tesché qualified as an "Insured Employee" and/or

a beneficiary or participant of the plan. Amended Complaint, ¶ 9.

10. The LTD policy was and is an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. §1002(1), and related provisions. Id.

11. Mrs. Tesché paid all premiums due under the attached policy, which was "noncontributory," i.e., her employer, AMP, did not contribute to the monthly premium. Id. Sauerhoff Dep. Tr. at 52.

12. On or about May 3, 1997, CNA determined that Mrs. Tesché was disabled from her occupation as a System Procedure Analyst; and CCC paid LTD benefits to Mrs. Tesché for the 24-month "own occupation" period, commencing after the 180-day waiting period. AMP terminated Mrs. Tesché's employment in approximately May 1997. Tesché Dep. Tr. at 12. See CNA Certified Record at CCC000111 et seq.

13. By letter dated July 26, 1999, CNA's Disability Specialist, Laura Collins, advised Mrs. Tesché that her LTD benefits would terminate on or about October 30, 1999, because she was not totally disabled from any occupation for which she

4

was qualified based on education, training, or experience.  Id. at CCC000182.

15. By letter dated September 14, 1999, Mrs. Tesché's attorney, Clark DeVere, asked Ms. Collins to provide various information including:  CNA's entire disability file; all medical records; the LTD policy; the vocational specialist's report referenced in Ms. Collins's July 26, 1999 letter; and the complete descriptions of the job opportunities identified by the vocational expert and referenced in Ms. Collins's letter.  Id. at CCC000178.

15. By letter dated October 7, 1999, CNA determined that Mrs. Tesché did not fall within the definition of "total disability" under the policy, and that she was not entitled to benefits beyond October 30, 1999, i.e., the end of the 24-month period of benefits.  Id. at CCC000164, CCC000176.

16. By letter dated and telecopied on October 12, 1999, Mrs. Tesché's attorney, Clark DeVere, once again requested the complete job descriptions used by CNA's vocational expert. Mr. DeVere noted that he wanted to submit the job descriptions to Mrs. Tesché's treating physician, Dr. Steven Wolf to obtain his

5

opinion about whether Mrs. Tesché was disabled from those occupations.  Id. at CCC000175.

17.  By letters dated October 22, 1999 and December 3, 1999, Mrs. Tesché, through her attorney, Steven Courtney, timely appealed CNA's initial determination.  Id. at CCC000173, CCC000159.

18.  By letter dated October 25, 1999, CNA's Disability Specialist, Laura Collins, declined to provide Mrs. Tesché's attorneys with the requested job descriptions, noting that the information was available at their local library.  Id. at CCC000172.

19.  By letter dated November 8, 1999, Mrs. Tesché's attorney, Steven Courtney, asked Ms. Collins to provide information from the Employee Handbook governing appeal procedures.  Id. at CCC000166.

20.  CNA never provided Mrs. Tesché and her attorneys with certain requested (and ERISA-mandated) information including:  the complete disability file; the job descriptions used by CNA's vocational expert in denying continuing LTD benefits to Mrs. Tesché; and the vocational expert's report.

21. In further support of her appeal, Mrs. Tesché submitted a December 22, 1999 medical report from her treating physician, Steven B. Wolf, M.D. In his report, Dr. Wolf opined that Mrs. Tesché was not employable based on her current medical condition, including her inability to perform the purported job opportunities identified by CNA. Id. at CCC000154, et seq.

22. By letter dated January 3, 2000, CNA confirmed that the final decision would be determined by the CNA Appeals Committee within the time period required by ERISA. Id. at CCC000152.

23. By letter dated February 21, 2000, CNA's Appeals Committee rendered a final decision on Mrs. Tesché's appeal. Attached as Exhibit "A" is a copy of CNA's February 21, 2000 decision, authored by Cheryl Sauerhoff, a member of the Appeals Committee. Id. at CCC000133.

24. CNA's final decision was not timely in that:

(a) the decision was not rendered within 60 days after the date of Mrs. Tesché's initial appeal; see paragraphs 14 through 20 above;

(b) on February 21, 2000, Ms. Sauerhoff noted in her records "letter drafted," but there was no certified mail receipt or other document confirming that her February 21, 2000 decision was mailed and received by Ms. Tesché's attorney within the required 60-day appeal period; Sauerhoff Dep. Tr. at 97-104;

(c) Mrs. Tesché's attorney, Steven Courtney, did not receive CNA's decision until April 6, 2000 (or sometime thereafter). See CNA's Certified Record, CCC000115 through CCC000128.

25. Mrs. Tesché, through her attorneys, has asked defendants to provide copies of certain documents relating to the LTD policy, including plan documents; the summary plan description; and the AMP/Tyco Employee Handbook.

26. Despite requests by Mrs. Tesché's attorney, Bradford Dorrance, defendants, CNA and CCC, and Mrs. Tesché's employer, AMP/Tyco, have been unable to retrieve and produce any document indicating whether discretion is vested in the claim administrator to make benefit determinations.

27. The parties in the above litigation have stipulated to the authenticity and admission of the CNA

disability claim file ("CNA Certified Record"), which has been Bates Numbered and which is incorporated by reference herein.

28.  Mrs. Tesché satisfied all criteria for continuing receipt of her LTD benefits after October 30, 1999, with the exception of CNA's determination that she had failed to meet the definition of "Total Disability," as defined in the LTD policy. See generally Sauerhoff Dep. Tr.

29.  The definition of Total Disability is set forth in Cheryl Sauerhoff's February 21, 2001 letter.  Id. at CCC000133.

30.  In denying Mrs. Tesché continuing LTD benefits, Ms. Sauerhoff used expanded criteria and an expanded definition of the term Total Disability, including consideration of the following additional factors:  Mrs. Tesché's age; geographic location; salary; and the medical restrictions given by her treating physician.  Id.

31.  On February 11, 1999, one of Mrs. Tesché's treating physicians, Dr. Rubenstein recommended that CNA obtain an independent medical examination by a physiatrist or orthopedic surgeon to confirm the nature and extent of her restrictions. CNA's Certified Record at CCC000185.

32. CNA and its Appeals Committee never obtained any IME of Mrs. Tesché, even though it had the right under the LTD policy to obtain an IME at any time before or during the appeals process. Sauerhoff Dep. Tr. at 63-64.

33. On May 11, 1999, one of Mrs. Tesché's treating physicians, Dr. Wolf, provided her restrictions at that time, noting that Mrs. Tesché "seems to be worsening..." and that her prognosis was "poor." Id. at CCC000183, CCC000184.

34. CNA received Dr. Wolf's statement of restrictions and limitations on or about May 21, 1999. Id.

35. From May 21, 1999 through February 21, 2000 (the date of CNA's final decision), CNA never contacted Mrs. Tesché's treating physicians, Drs. Rubenstein and Wolf, to obtain an update on her condition and permanent medical restrictions and limitations. Id. Sauerhoff Dep. Tr. at 48-49, 68.

36. As an Appeals Committee of one, Ms. Sauerhoff did not ask Dr. Wolf to clarify his December 29, 1999 report, including her failure to ask for "detail of any functional impairment or any information relating to the claimant's

inabilities to perform her activities of daily living." See attached Exhibit A, p. 2. Id.

37.  As an Appeals Committee of one, Ms. Sauerhoff rendered her final decision without consulting with or interviewing any other individuals including:  the disability specialist; the nurse case manager; the vocational case manager; other members of the Appeals Committee; Mrs. Tesché; Mrs. Tesché's treating physicians; and CNA's panel of medical consultants. Id.

38.  There is no plan document or summary plan description vesting discretion in the plan/claim administrator to make eligibility and LTD benefit determinations. See generally Sauerhoff Dep. Tr.

39.  Mrs. Tesché has exhausted all CNA appeals of its February 21, 2000 decision denying her continued receipt of LTD benefits. Id.

40.  As required by the LTD policy, Mrs. Tesché applied for social security disability benefits, alleging that she was unable to perform any substantial gainful employment. Amended Complaint, Exhibit G.

41. By letter dated January 15, 2001, the Social Security Administration awarded social security benefits to Mrs. Tesché retroactive to October 1, 1999. <u>Id</u>.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 1/3/02

Bradford Dorrance
I. D. No. 32147
210 Walnut Street
P. O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

(Attorneys for Plaintiff)

A

 **CNA GROUP BENEFITS**

Group Disability-Claim Administration
PO Box 946710 Maitland FL 32794-6710

**Cheryl Sauerhoff**
Claims Consultant
Telephone 1-800-303-9744 x 6343

February 21, 2000

Steven Courtney
Metzger, Wickersham, Knauss & Erb, PC
3211 North Front St.
PO Box 5300
Harrisburg, PA 17110-0300

Claimant: Joan Tesche

Claim No: 94-34900P1702
Policy No: 0083089679

Dear Mr. Courtney:

The Long-Term Disability clam of the above-mentioned claimant has been referred to Appeals pursuant to the receipt of your letter. A comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits.

*The Long Term Disability Policy indicates that during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is:*

- *Continuously unable to perform the substantial and material duties of the regular occupation;*
- *Under the regular care of a licensed physician other than the Insured Employee; and*
- *Not gainfully employed in any occupation for which you are or become qualified by education, training or experience.*

*After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:*

- *Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience: and*
- *Under the regular care of a licensed physician other than himself.*

The date of loss was **5/3/97**. The attending physician statement was completed by Dr. Rubenstein dated 9/19/97 for a diagnosis of "chronic back pain". Ms. Tesche's occupation is noted as systems procedure analyst. The noted restrictions are cannot perform heavy lifting, climbing, bending and tolerates prolonged sitting poorly.

The claimant was found to be disabled from her occupation and paid benefits for the 24 month own occupation period commencing after the 180-day elimination period. Based on the claimant's age, experience, geographic location, salary, education and the medical restrictions given by the treating physician, it was determined that the claimant was not totally disabled from any occupation. Those occupations were detailed in the 10/7/99 letter and will not be revisited at this time.

Exhibit "A"

Policy No: 0083089679                     -2-

All information has been reviewed and indicated that the claimant is not less than sedentary in the physical demand level for occupational work. The medical documentation does not reflect this level of severity.

The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to one hour, sitting for one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman.

Dr. Wolf was requested to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the occupations described would not be options for the claimant but does not state why. There is no detail of any functional impairment or any information relating to the claimant's inabilities to perform her activities of daily living.

While we appreciate Dr. Wolf's opinion, the any occupation determination is a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education.

Therefore, based on the information contained within your claim file, we find that the decision to terminate benefits was correct and proper. You have exhausted your administrative remedies at this time and this decision is final and binding.

Sincerely,


Cheryl Sauerhoff
Appeals Committee Member

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:

<u>First-Class Mail, Postage Prepaid</u>
<u>Addressed as Follows:</u>

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103-7424

(Attorneys for Defendants)


Dated: 1/3/02                                   _____
                                                        Bradford Dorrance