2 to Court

⑲
1-4-02
SC

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                    :
                                   :    Civil Action No. 1:CV-01-0326
                    Plaintiff      :
     v.                            :
                                   :
CNA INSURANCE COMPANIES, and       :
CONTINENTAL CASUALTY COMPANY,      :
                                   :
                    Defendants     :    (Judge Caldwell)

FILED
JAN 0 3 2002
PER_____ MA
HARRISBURG, PA  DEPUTY CLERK

**BRADFORD DORRANCE'S AFFIDAVIT IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, the undersigned, hereby swear and affirm as follows:

1.   At all material times, I have served as counsel for plaintiff, Joan D. Tesché.

2.   During the litigation, I contacted Tyco Electronics (successor in interest to Mrs. Tesché's former employer, AMP).  I requested a copy of any summary plan description or plan document governing Mrs. Tesché's long-term disability benefits.

3.   The appropriate Tyco representative, Charlie Post, informed me that he was unable to locate any summary plan

description or plan document.  Mr. Post did provide me with a

1997 AMP Employee Handbook.  Attached as Exhibit "A" is a true

and correct copy of printed emails exchanged between Tyco

employees on December 20, 2001, together with an excerpt from the

1997 AMP Employee Handbook.

4.    Attached as Exhibit "B" is a copy of an excerpt

from the transcript of Joan Tesché's October 4, 2001 deposition.

5.    The facts set forth herein are based on my

personal knowledge and the documents attached hereto are true and

correct.


_____
Bradford Dorrance


Sworn to and subscribed before me
this 3co day of January, 2002.

_____
Notary


NOTARIAL SEAL
PAMELA S. WOLFE, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires Dec. 22, 2003

A

**Quigley, Natalie A**

| | |
|---|---|
| **From:** | Faigin, Steven F. |
| **Sent:** | Thursday, December 20, 2001 7:21 PM |
| **To:** | Quigley, Natalie A |
| **Cc:** | Post, Charles C. |
| **Subject:** | FW: 1997 AMP LTD SPD |

Natalie,

Please see note below. Do you have something you can give to Charlie?

-----Original Message-----
| | |
|---|---|
| **From:** | Post, Charles C. |
| **Sent:** | Thursday, December 20, 2001 1:39 PM |
| **To:** | Faigin, Steven F. |
| **Subject:** | 1997 AMP LTD SPD |

Got a call from an attorney, Brad Dorrance 255-8014, representing former AMP employee Joan Tesche in a suit against CNA over LTD. He would like a copy of the relevant SPD. She was deemed disabled 5/3/97 and denied total disability 10/30/99. Can we locate an SPD from that timeframe? Thanks.

*Attached is from the 1997 AMP Handbook.*

*Natalie*

1

# ERISA

## INFORMATION

This section contains important information about each of the plans described in this Employee Handbook, including administrative information; where to call with questions; how to appeal a denied claim; your legal rights under the Employee Retirement Income Security Act (ERISA) and other pertinent information.

The explanations of the plans included in this handbook are only intended to highlight the major provisions to assist you in understanding your benefits. Complete details of the programs are contained in the Plan documents and/or contracts. The specific provisions of these documents will control and determine what is provided in each case. You have a right to inspect and/or copy any of the Plan documents. If you wish to review them, you may contact the Plan administrator at the address listed in this section.

## PLAN SPONSOR AND ADMINISTRATOR

The sponsor and Plan Administrator for all your benefit plans is:

AMP Incorporated
Benefits Compliance M.S. 176-049
470 Friendship Road
Harrisburg, PA 17111

The Plan Administrator has authority to control and manage the operation and administration of the plans and is the agent for service of legal process.

## HOW TO APPEAL A DENIED CLAIM

If any claim for benefits under an AMP plan is denied, in whole or in part, you or your spouse or beneficiary will receive a written explanation of the denial within 60 days (90 days for the Pension Plan and Employee Savings and Thrift Plan) from either AMP or the appropriate claims administrator. If more time is needed, you will be notified within this initial period. The explanation will include:

The specific reason for the denial.

Specific reference to the provisions of the plan in which the decision was based.

191

A description of any additional material or information required to substantiate your claim and an explanation of why it is necessary.

A complete description of the appeal procedure.

If you disagree with the decision, you may file a written request for a review with the Plan Administrator or claims administrator. Your appeal should be filed within 60 days of the date of the denial notice. Within this time period, you or your representative may review any official documentation relating to the plan.

Normally, within 60 days of your written appeal, the Plan Administrator or claims administrator will review your claim and inform you in writing of its decision.

Under any of the plans, AMP or the appropriate claims administrator may request additional information to clarify any matters that they deem appropriate. You or your beneficiary will receive a written explanation of the final decision as well. All interpretations, determinations and decisions of the Plan Administration will be final and binding on all parties involved.

## PLAN DOCUMENTS

Complete details of each benefit are provided in the official plan documents, trust agreements and insurance contracts. These documents legally govern the operations of the plans. The actual text of the documents, including amendments, shall be controlling in all instances, including any instance in which there may be an inconsistency between the contents of this Handbook and the contents in the legal documents.

These documents, as well as the annual report of plan operations, and other reports filed with the Department of Labor and Internal Revenue Service, are available for your review during normal working hours at the address indicated previously. Copies of all documents pertaining to the Plan are available, for a reasonable charge, upon written request.

## NON-ALIENATION OF BENEFITS

Except as described in the following sections concerning Qualified Medical Child Support Orders (QMSCOs) and Qualified Domestic Relations Orders (QDROs), no benefit payable under a plan may be assigned, alienated, encumbered, or in any manner made payable other than to the employee, joint annuitant, or beneficiary entitled to such payment under the terms of the plan. Any attempt to so assign, alienate, encumber or transfer a plan benefit shall be void and have no effect.

Notwithstanding the foregoing, however, in certain cases under the AMP Health Care Benefit Plan, payments may be made directly to a health care provider for the benefit of a covered individual rather than to the Plan participant.

192

## QUALIFIED MEDICAL CHILD SUPPORT ORDER (QMCSO)

A qualified medical child support order (QMCSO) is a judgement or order by a court with jurisdiction that requires a group health plan to provide health care coverage to children who would not normally meet the group plan's definition of a dependent. The law authorizing the issuance of QMCSOs also places requirements on the group regarding the coverage of children placed for adoption during the adoption proceedings. Most of our health insurance contracts currently allow for the inclusion of children placed for adoption.

There are specific requirements the QMCSO must meet to be a qualified order. The Plan Administrator will notify you if you are affected by such an order.

## QUALIFIED DOMESTIC RELATIONS ORDER (QDRO)

A qualified domestic relations order (QDRO) is a legal judgement or court order with respect to child or other dependent support, alimony or marital property rights which recognizes the rights of an alternate payee under your Pension Plan or Employee Savings and Thrift Plan. If you become legally separated or divorced, a portion of your benefits under the Pension Plan or Employee Savings and Thrift Plan may be assigned to a spouse, former spouse, child or other dependent pursuant to a QDRO.

There are specific requirements the QDRO must meet to be recognized by the Plan Administrator and specific procedures regarding the amount and timing of payments. If you are affected by such an order, you will be notified by the Plan Administrator.

## NOT A CONTRACT OF EMPLOYMENT

No provision of any of your benefit plans is to be considered a contract of employment between you and AMP. The Company's rights as an employer are in no manner changed by any provision of any plan.

## CHANGING OR ENDING THE PLANS

The AMP benefit plans have been adopted with the intent of being maintained for an indefinite period of time. However, AMP reserves the right to change or end a plan at any time. AMP's decision to change or end a plan may result from changes in federal or state laws, the requirements of the Internal Revenue Code, the provisions of a contract with an insurance company, or any other reason. A plan change may transfer plan assets and debts to another plan, or split the plan into two or more parts. If AMP does make a change or decides to end a plan, it may or may not decide to set up a different plan.

193



If a plan is ended or if there is a transfer of assets and debts or a plan split-up, you will only be vested in the payment of covered expenses or benefits that were due you before the plan ended. The amount and form of any final benefit will depend on plan assets, the contracts and insurance provisions of the plan, and Company decisions. Contributions to the plan will stop on the date a plan ends. After all benefits are paid and the legal requirements have been met, a plan to the extent permitted by the law, will turn over any remaining plan money to AMP.

AMP's right to change or end a plan as described above also pertains to any retiree benefits provided under the plan such as under the Medical, Dental and Life Insurance Plans.

## YOUR RIGHTS UNDER ERISA

As a participant in the benefit plans explained in this Employee Handbook, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA was designed to protect employee's rights under their benefit plans. This Act provides that:

1. You are entitled to review all plan documents, including insurance contracts and copies of all documents filed by each plan with the U.S. Department of Labor, such as annual reports. You may contact the Plan Administrator to review these documents during normal working hours.

2. You are entitled to obtain copies of all plan documents and other plan information upon written request to the Plan Administrator, AMP Incorporated, P.O. Box 3608, M.S. 176-49, Harrisburg, PA 17105-3608. A reasonable copying fee may be charged.

   If you do not receive requested materials within 30 days of the request, you may file suit in a federal court. The court may require the Plan Administrator to pay the participant up to $100 for each day there's a delay until the materials are received, unless the materials were not sent because of matters beyond the control of the Plan Administrator.

3. You are entitled to receive, without charge, a summary of each plan's annual financial report. The Summary Annual Reports that AMP sends you each year contain this information.

4. You are entitled to obtain, once a year, a statement of your accrued and vested benefits under the AMP Incorporated Pension Plan and the date on which benefits will become vested. The Personal Benefits Statement that AMP sends you each year contains this information.

   If your claim for any benefit is denied in whole or in part, you will receive a written explanation of the reason for the denial, as explained under the "How to Appeal a Denied Claim" earlier in this section. After following the claims appeal procedure, if you still feel that your claim for benefits has been ignored or improperly denied, you have the right to file suit in a state or federal court.

194

ERISA requires that "fiduciaries", who are those responsible for the operation of employee benefit plans, act in the interest of plan participants and exercise prudence in the performance of their plan duties. If you believe a fiduciary has not acted properly, or that you have been discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. If you win the case, the court may order the person you have sued to pay the costs and fees. If you lose the case, the court may order you to pay the costs and fees, if, for example, the court finds your claim is frivolous.

For the above reason, AMP encourages you to bring any problems you may encounter with regard to your benefits to its immediate attention. AMP is committed to assuring proper treatment and full disclosure of all pertinent information to our employees. You need not fear any discrimination as a result of efforts on your part to receive benefits or exercise your rights.

If you have any questions about this statement or about your rights under ERISA, you should contact the Plan Administrator or the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

ERISA

195

ERISA 

| Official Plan and ID Numbers | Type of Plan | Plan Administrator | Plan Documents | How Plan Is Administered | How Plan is Funded and Benefits Paid | Plan Year | Agent for Services of Legal Process |
|---|---|---|---|---|---|---|---|
| Life Insurance Plan EIN: 23-0332575 Plan #501 | Life Insurance | AMP Incorporated 470 Friendship Rd. Harrisburg, PA 17111 | The Travelers Insurance Company Hartford, CT 06115 Group Policy- 032532 | By the Plan Administrator under the terms of the group contract between AMP and the Travelers Insurance Company. | Premiums paid to insurance company by AMP; rates determined by insurance company; benefit paid directly to beneficiary(ies) by insurance company. | January 1 through December 31 | AMP Incorporated 470 Friendship Rd. M.S. 176-049 Harrisburg, PA 17111 Services of legal process may also be made on Plan Trustee (if any) or the Plan Administrator |
| Business Travel Accident EIN: 23-0332575 Plan #502 | Travel Accident Insurance | Same as above | The Federal Insurance Co. New York, NY Group Policy- 6404-03-54 | By the Plan Administrator under the terms of the group contract between AMP and Federal Insurance Co. | Premiums paid to insurance company by AMP; rates determined by insurance company; benefit paid directly to beneficiary(ies) by insurance company. | January 1 through December 31 | Same as above |
| AMP Incorporated Pension Plan EIN: 23-0332575 Plan #001 | Defined benefit pension plan | Same as above | The AMP Incorporated Pension Plan Document; Master Trust Agreement with Mellon Bank, N.A. Pittsburg, PA 15258-0001 | By the Plan Administrator under the terms of the official plan document and Trust Agreement. | Contributions, as required, made by AMP to Trust Fund in an amount sufficient to meet current and projected Plan obligations; benefits paid directly to retiree or beneficiary by Trustee or Paying agent from Trust Fund. | January 1 through December 31 | Same as above |

| Official Plan and ID Numbers | Type of Plan | Plan Administrator | Plan Documents | How Plan Is Administered | How Plan is Funded and Benefits Paid | Plan Year | Agent for Services of Legal Process |
|---|---|---|---|---|---|---|---|
| AMP Incorporated Health Care Benefits Plan EIN: 23-0332575 Plan #505 | Health Insurance | AMP Incorporated 470 Friendship Rd. Harrisburg, PA 17111 | The AMP Incorporated Health Care Benefits Plan contracts with Capital Blue Cross, PA Blue Shield, applicable Health Maintenance Organizations, Vision Service Plan and NCAS; Trust Agreement with Wachovia Bank of North Carolina, N.A. Winston-Salem, NC 27102. | By Capital Blue Cross/PA Blue Shield or applicable HMO, Vision Service Plan, and NCAS under the terms of the contracts. | Self-funded, with Capital Blue Cross and PA Blue Shield providing claims services, or a pre-paid premium with the HMO. AMP pays insurance company for administrative services; AMP's contributions and employee contributions paid into Trust; benefits paid to employee, insurance company, or provider of services directly from Trust. | January 1 through December 31 | AMP Incorporated 470 Friendship Rd. M.S. 176-049 Harrisburg, PA 17111 Services of legal process may also be made on Plan Trustee (if any) or the Plan Administrator |
| Long-Term Disability Plan EIN: 23-0332575 Plan #503 | Disability Insurance | Same as above | CNA Insurance Company Chicago, IL 60685 Policy-SR 83085014; For disabilities prior to 6-1-92, The Travelers Insurance Company Hartford, CT 06115 Group Insurance Policy-835715 | By the Plan Administrator under the terms of the group contracts between AMP and the Insurance Company. | Premiums paid to insurance company by AMP, rates determined by insurance company; benefit paid directly to employee by insurance company. | January 1 through December 31 | Same as above |



ERISA

| Official Plan and ID Numbers | Type of Plan | Plan Administrator | Plan Documents | How Plan Is Administered | How Plan Is Funded and Benefits Paid | Plan Year | Agent for Services of Legal Process |
|---|---|---|---|---|---|---|---|
| AMP Incorporated Employee Savings and Thrift Plan EIN: 23-0332575 Plan #003 | Defined contribution pension plan | AMP Incorporated 470 Friendship Rd. Harrisburg, PA 17111 | The AMP Incorporated Employee Savings & Thrift Plan document and Trust Agreement with Vanguard Fiduciary Trust Company, Valley Forge, PA 19482. | By the Plan Administrator under the terms of the official plan document and trust agreement. Management of Plan assets is delegated to the Plan Trustee; Vanguard Fiduciary Trust Company. | Employee contributions and AMP matching contributions deposited with Plan Trustee; account values paid directly to employee or beneficiary(ies) by Plan Trustee at direction of the Plan Administrator. | January 1 through December 31 | AMP Incorporated 470 Friendship Rd. M.S. 176-049 Harrisburg, PA 17111 Services of legal process may also be made on Plan Trustee (if any) or the Plan Administrator |
| AMP Incorporated Educational Assistance Plan. EIN: 23-0332575 Plan #510 | Tuition Reimbursement | Same as above | The AMP Incorporated Educational Assistance Plan | By the Company under the terms of published educational assistance corporate policies. | Tuition reimbursement payments made directly to employees by the Company. | January 1 through December 31 | Same as above |
| AMP Incorporated Dependent Care Assistance Plan. EIN: 23-0332575 Plan #502 | Dependent Care Reimbursement Account | Same as above | The AMP Incorporated Dependent Care Assistance Plan | By the Plan Administrator under the terms of the claims administration agreement between AMP and NCAS, Harrisburg, PA. | Employee salary reduction amounts are used by Company to reimburse dependent care expenses. | January 1 through December 31 | Same as above |

| Official Plan and ID Numbers | Type of Plan | Plan Administrator | Plan Documents | How Plan Is Administered | How Plan Is Funded and Benefits Paid | Plan Year | Agent for Services of Legal Process |
|---|---|---|---|---|---|---|---|
| AMP Incorporated Severance Pay Plan. EIN: 23-0332575 Plan #511 | Severance Pay | AMP Incorporated 470 Friendship Rd. Harrisburg, PA 17111 | The AMP Incorporated Severance Pay Plan | By the Company under the terms of the Severence Pay Plan. | Severence payments made directly to employee by the Company. | January 1 through December 31 | AMP Incorporated 470 Friendship Rd. M.S. 176-049 Harrisburg, PA 17111 Services of legal process may also be made on Plan Trustee (if any) or the Plan Administrator |
| AMP Incorporated Long Term Care Plan EIN: 23-0332575 Plan #513 | Group Long Term Care Benefits | Same as above | UNUM Life Insurance Company of America and the Select Group Insurance Trust Portland, ME Policy 220735 | By the Plan Administrator under the terms of the group contracts between AMP and the insurance company. | Premiums paid to insurance company by AMP from employee payroll deductions; rates determined by insurance company; benefit paid directly to employee by insurance company. | January 1 through December 31 | Same as above |

189

B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHE,                     :
                Plaintiff           :
                                    : Civil Action No.
    v.                              : 1:CV-01-0326
                                    :
CNA INSURANCE COMPANIES, and        :
CONTINENTAL CASUALTY COMPANY,       :
                Defendant           : (Judge Caldwell)

_____

Oral Deposition of

JOAN D. TESCHE

_____

DATE:   Thursday, October 4, 2001

TIME:   10 a.m.

PLACE:  Offices of Keefer, Wood, Allen
        and Rahal
        210 Walnut Street
        Harrisburg, Pennsylvania

TAKEN BY:  Plaintiff

APEX REPORTING SERVICE
By:  Sharon L. Dougherty, RPR
        P. O. Box 6265
   Harrisburg, PA  17112-0265
        717-545-3553


COPY

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3         BRADLEY DORRANCE, ESQUIRE
           KEEFER, WOOD, ALLEN & RAHAL
 4         210 Walnut Street
           Harrisburg, PA  17108-1963
 5


 6
     For the Defendant:
 7
           MICHAEL J. BURNS, ESQUIRE
 8         CHRISTIE, PABARUE, MORTENSEN & YOUNG
           1880 JFK Boulevard, Tenth Floor
 9         Philadelphia, PA  19103

10

11

12

13

14

15

16

17

18

19                      I N D E X

20   Witness                   Page No.
     JOAN DALTON TESCHE
21   Examination by:
     Mr. Burns                      3
22

23   Exhibits
     (None)
24

25
```

1    to the best of your abilities, i.e., it effects your

2    ability to think, to speak, to talk, to hear, anything

3    like that?

4        A    I am on medication, but I don't think it

5    would affect my ability to understand.

6        Q    Great.

7            Would you do me a favor and tell me your

8    full name for the record?

9        A    Joan Dalton Tesche.

10       Q    Your date of birth, ma'am?

11       A    2/1/55.

12       Q    Your current address?

13       A    7737 Fishing Creek Valley Road.

14       Q    That is the same address you have had for

15   a number of years, correct?

16       A    Yes, ten years.

17       Q    Your social number, please?

18       A    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.

19       Q    Have you ever given a deposition before?

20       A    Yes.

21       Q    When was that?

22       A    In 1997.

23       Q    Where was that?

24       A    Philadelphia.

25       Q    Was this related to a lawsuit of a bone

1  though.

2      A      Correct.

3      Q      Now, before you filed your claim for

4  disability benefits you worked for AMP, Incorporated;

5  is that correct?

6      A      Yes.

7      Q      Has your employment with AMP, Incorporated

8  been terminated since you went out on disability?

9      A      Yes.

10      Q      When did that happen?

11      A      I'm not sure of the exact date.

12      Q      Is there an event or letter or something

13  in your mind which you can pinpoint as being the

14  statement from AMP that you were no longer employed by

15  them?

16      A      Yes.

17      Q      Could you describe that for me?

18      A      I received a letter from AMP notifying me

19  that I was terminated to long-term disability.

20      Q      Do you have a general time frame when that

21  letter came?

22      A      May '97 is sticking in my mind, but I am

23  not sure.

24      Q      Since May of 1997, have you tried to

25  return to AMP at all?

```
 1        A       I can sit some in the morning and then I

 2   have to go lay down around 10:00.  I can resume doing

 3   light tasks around the house as far as it being mobile,

 4   walking around after that.  Then I lay down again, and

 5   get up and make dinner, and usually by 7:00 I have to

 6   lay down.

 7        Q       Do you walk anywhere?  In other words, is

 8   part of your program to go walk a mile a day, walk two

 9   miles a day, or walk around outside of the house?

10        A       I have been trying to walk approximately a

11   quarter of a mile each day.

12        Q       Tell me about -- you've been trying.  What

13   happens when you try to walk a quarter of a mile each

14   day?

15        A       My back literally freezes up and becomes

16   very painful and difficult to walk.

17        Q       Are there any appliances -- that is a bad

18   term.  It suggests having a stove or something like

19   that.  But are there any appliances or devices or

20   medical equipment that you use in order to facilitate

21   your movements during the day?

22        A       Yes.

23        Q       What do you use?

24        A       I use a back brace if I am going to be in

25   the car because it stabilizes my spine.  I use a
```

1    McKenzie pillow to give back support while sitting.

2    I have the foot brace, and I use a cane or a

3    wheelchair.

4         Q       Do you use the wheelchair inside of the

5    residence?

6         A       No.   That is only if I go out to say a --

7    such as going --

8         Q       To the mall?

9         A       To the mall or the fair or something like

10   that.

11        Q       So you use it if there is potential for

12   you to walk any sort of a long distance, and I am not

13   defining long here, but if you need to walk a decent

14   distance, then you tend to take the wheelchair with

15   you?

16        A       Correct.

17        Q       The cane, when do you find yourself using

18   a cane?

19        A       When I go grocery shopping.

20        Q       What about around the house, do you use

21   the cane around the house?

22        A       No.

23        Q       Are there certain tasks around the house

24   that you find that you need help with that you could

25   handle previously by yourself, for example, like a

1   washing machine or a dryer, you've got to bend down and

2   pull the stuff out on a regular basis.  Are those type

3   of tasks things that you still handle?

4        A      My husband helps me with doing wash.  I

5   can -- he takes it downstairs for me.  I put it in the

6   washer, and I can put it in the dryer.  I fold the

7   clothes and he carries them back up.

8               I can't do things such as scrubbing a

9   floor or vacuuming or washing floors.  I can do only

10  light housework such as dusting and cooking and maybe

11  wipe down some windows or something like that.

12       Q      What about in terms of yard work or things

13  like that, are there things that you do in the yard?

14       A      I love gardening, but I cannot do actual

15  gardening myself.  I will do watering, but we've gotten

16  a light hose so that I can do that.

17       Q      In terms of your restrictions, and I'm

18  talking about your physical capacity.  I know that in

19  these disability claims they constantly ask how long

20  can you walk, how long can you sit, and all that stuff.

21              As you sit here today, is there in your

22  mind or is there a daily practice -- what are your

23  limitations?  How long can you sit comfortably before

24  you need to stand up?  How long can you stand before

25  you need to walk or before you need to lay down?  Do

1   you have information on that?

2        A       I can sit comfortably for about 15

3   minutes; and as far as standing, I probably can stand

4   for about 10 minutes before the pain becomes bad.

5               Walking, as long as it's on a level smooth

6   area, I can probably do that for about 20 minutes

7   before pain sets in to a point where it's bothersome.

8        Q       So it seems to me that during the day,

9   based upon what you told me are your restrictions, that

10  you are constantly -- not constantly, but on a regular

11  basis you have to move.

12       A       Yes.

13       Q       So that after you sit for 15 minutes maybe

14  doing your stained glass you stand up to do the stained

15  glass; is that correct?

16       A       Yes.

17       Q       We talked about those devices, the back

18  brace and those type of things.  Are there things that

19  you use to accommodate this problem?  For example, your

20  telephone, do you have like a headset on your telephone

21  so that you don't have to stand all of the time?

22       A       Yes, I do.  I have a headset.  I have

23  items to help me pick up things, if I drop things.

24               I have a chair, lounge chair that is

25  electric that helps me stand up or will help me change

1   positions in the chair, and hopefully we plan to get a

2   bed that will move.

3                  (Discussion off the record.)

4   BY MR. BURNS:

5        Q       In addition to the -- this sort of

6   characterizes a physical disability, and I think that

7   is predominantly what it is.

8        A       Yes.

9        Q       Are there any other limitations that you

10  find in terms of, because you use the medications on a

11  daily basis, are there side effects from the

12  medications that either affect you physically or affect

13  you mentally on a daily basis?

14       A       Mentally, I'm not as sharp as I once was.

15  I have problems with memory and speech at times, and I

16  do get tremors.

17       Q       Where do you get the tremors at?

18       A       Head and hands.

19       Q       When do they occur?  Is there a certain

20  precipitator?

21       A       When my pain hits a certain threshold,

22  they will definitely begin.

23       Q       As part of your treatment regimen, have

24  you seen a psychologist or another person in a similar

25  field or working in a similar vein to try to help you

42

1    cope with the problems?

2        A       Yes.  Back in 1992 and 1993, I saw

3    Dr. Thomas Fink, a psychologist for pain management

4    therapy; and in '97 I saw Dr. Michael Schatman.  He is

5    another pain management psychologist for additional

6    counseling, pain management counseling.

7        Q       How long did that treatment with

8    Dr. Schatman last?

9        A       Six months.

10       Q       Is there anything else that you have done?

11       A       Through the pain management program at

12   Hershey Medical Center, I see Dr. Blackall.  I believe

13   the routine is once every two years we sit down and

14   talk with him.

15       Q       Are there any medications that you

16   currently take on a regular basis in order to help you

17   cope with your disability?  In other words, like an

18   anti-depressant, things like that?

19       A       The Celexa is for depression.

20       Q       Is there anything else that you have taken

21   over the years besides the Celexa that you have used

22   for your depression?

23       A       They have tried other anti-depressants

24   before Celexa.

25       Q       Any other psychological medication or

43

1   prescription therapy that you used besides the Celexa?

2       A       No.

3       Q       Now, in addition to receiving -- I'm

4   assuming you receive Social Security Disability

5   benefits; is that correct?

6       A       Correct.

7       Q       When did they start?

8       A       I'm not sure of the exact date.

9       Q       Do you continue to receive those on a

10  monthly basis?

11      A       Yes.

12      Q       How much do you receive from Social

13  Security Disability on a monthly basis?

14      A       $749 a month.

15      Q       Are there any other disability benefits

16  that you receive?

17      A       No.

18      Q       In terms of your problems with your back,

19  have you ever applied for any -- I guess for lack of a

20  better word, Workers' Compensation claims?  Have you

21  made any Workers' Compensation claims or anything like

22  that?

23      A       No.

24      Q       Have you had any other lawsuits besides

25  the bone screw lawsuit?

C E R T I F I C A T E

    I, Sharon L. Dougherty, a Notary Public for the Commonwealth of Pennsylvania, do hereby certify:

    That the witness named in the deposition, prior to being examined, was by me first duly sworn or affirmed;

    That said deposition was taken before me at the time and place herein set forth, and was taken down by me in stenotype and thereafter transcribed under my direction and supervision;

    That said deposition is a true record of the testimony given by the witness and of all objections made at the time of the examination.

    I further certify that I am neither counsel for nor related to any party to said action, nor in any way interested in the outcome thereof.

_____
Sharon L. Dougherty, RPR

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:


First-Class Mail, Postage Prepaid
Addressed as Follows:

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103-7424

(Attorneys for Defendants)


Dated: 1/3/02                    _____
                                           Bradford Dorrance