

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ORIGINAL

FILED
HARRISBURG, PA

JAN 0 7 2002

MARY E. D'ANDREA CLERK
Per _____
Deputy Clerk

| | | |
|---|---|---|
| JOAN D. TESCHÉ | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| CNA INSURANCE COMPANIES and | : | NO. 1:CV-01-0326 |
| CONTINENTAL CASUALTY COMPANY | : | **(William W. Caldwell, J.)** |

### DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

For the reasons more fully set forth in the accompanying Memorandum of

Law and as documented in the exhibits thereto, Defendants CNA Insurance

Companies and  Continental Casualty Company ("Continental") respectfully request

that this Court grant their Motion for Summary Judgment by finding that, under

ERISA, Continental's decision to terminate plaintiff's long term disability benefits

was correct because plaintiff was not disabled from pursuing any occupation as

defined in the applicable ERISA plan document.

Respectfully submitted,

**CHRISTIE, PABARUE, MORTENSEN & YOUNG**
**A Professional Corporation**

DATE: 1/3/02        BY: _____

Michael J. Burns, ESQUIRE
Attorney Identification #: 62088
1880 JFK Blvd., 10th Floor
Philadelphia, PA  19103
215-587-1600

Attorneys for Defendants CNA Insurance
Companies and Continental Casualty
Company

365654-1

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN D. TESCHÉ | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| CNA INSURANCE COMPANIES and | : | NO. 1:CV-01-0326 |
| CONTINENTAL CASUALTY COMPANY | : | **(William W. Caldwell, J.)** |

**DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL
CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

I.    **STATEMENT OF QUESTION INVOLVED**

This action involves a claim for reinstatement of long term disability

benefits under an ERISA plan.  Defendants CNA Insurance Companies and

Continental Casualty Company ("Continental") move herein for summary

judgment in their favor on the basis that Continental correctly determined that

plaintiff was not totally disabled from pursuing any occupation and thus, was not

entitled to further benefits under the group long term disability insurance policy

that funded the ERISA plan.

The foundation for Continental's claim decision was that the medical

evidence as to plaintiff's physical restrictions and limitations combined with her

age, geographic location, past experience, and education demonstrated that

plaintiff could indeed pursue several occupations.  In particular, a vocational

evaluation conducted by Continental found that plaintiff could pursue sedentary

jobs that gave her the flexibility to intermittently sit and stand, including working

as a telemarketer, customer service representative, automobile agent, and/or

motel night auditor.  Since there were jobs that plaintiff could pursue, even given

her permanent physical impairments, she was not totally disabled from any

occupation, the applicable standard for receipt of benefits under the ERISA plan.

Under ERISA, Continental is bound to enforce the terms of the plan and, since

plaintiff no longer met the criteria necessary to receive benefits, Continental

correctly terminated plaintiff's long term benefits as of October 30, 1999.

Moreover, because plaintiff has failed to rebut the vocational evaluation and,

also, has not proffered an expert who has opined that plaintiff is disabled from

performing any occupation, there are no genuine issues of material fact to

prevent entry of judgment in Continental's favor.  In light of the undisputed facts

as documented in the administrative record (which record is incorporated by

reference herein and attached hereto as Exhibit A), summary judgment should

be granted in Continental's favor.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

It is undisputed that plaintiff's former employer, AMP Incorporated funded

the long term disability component of its employee welfare benefit plan through

the purchase of a group long term disability insurance policy from Continental

Casualty Company (not CNA Insurance Companies).  A true and correct copy of

the group long term disability policy is attached hereto as Exhibit B.  This ERISA

plan defined Total Disability in pertinent part as follows:

> After the Monthly Benefit has been payable for the Insured Employee
> Occupation period of 24 months, "Total Disability" means that, because of
> Injury or Sickness, the Insured Employee is:

- Continuously unable to engaged in any occupation of which he is or becomes qualified by education, training or experience; and
- Under the regular care of a licensed physician other than himself.

Exhibit B at Definitions section, p. 3. Continental found plaintiff to be "Totally Disabled" from performing the duties of her own occupation and paid her benefits for two (2) years in accordance with the express terms of the plan. See e.g., Exhibit A CCC000118 and CCC000262.[1] The issue in this case is whether plaintiff was disabled from any occupation or, as defined in the plan, "continuously unable to engage in any occupation to which he is or becomes qualified by education, training or experience" as of October 30, 1999.

Plaintiff's claim for long term disability benefits is predicated upon a chronic low back problem. In order to assess plaintiff's disability status, Continental periodically sought and obtained information from plaintiff's treating physicians as to her medical condition and, in particular, her physical limitations and restrictions. See, Exhibit A at CCC000130-1 and CCC000142-151. In March 1999, Continental contacted plaintiff's family physician, Morton J. Rubenstein, M.D. to identify plaintiff's physical (or medical) restrictions and limitations. Exhibit A CCC000144 (3/10/1999 entry). Dr. Rubenstein provided the following opinion:

> What are the current limitations that prevent return to the patient's own job?
>
> Standing: ½ - 1 consecutively hr/day
> Walking: 3 hr/day

---

[1] Exhibit A, which is bates numbered CCC000111 to CCC000276, is Continental's claim file for the Mrs. Tesche's continued claim for benefits under the any occupation standard. While documents CCC001 to CCC000110 were produced in discovery, those documents involve the own occupation claim and therefore are not included in this motion for summary judgment given that this disability standard is not at issue herein.

365654-1                                                3

| Sitting: | ½ consecutively hr/day |
|---|---|
| Lifting: | 10-20 pounds |
| Carrying: | 10-20 pounds |

Is Ms. Tesche at MMI?  Are the limits temporary or Permanent?  <u>Not Known</u>

***Objective findings MUST BE PROVIDED to support any limitations given.

<u>The above are the patients self-described limitations.  If confirmation is required, suggest independent medical examination by physiatrist or orthopedic surgeon.</u>

Exhibit A CCC000185.

Plaintiff also asked Continental to secure information from her treating orthopedic surgeon, Steven Wolf, M.D.  Exhibit A CCC000195.  In May 1999, Continental after several requests received an updated report from plaintiff's treating orthopedic surgeon, Steven B. Wolf, M.D., which report included an assessment of plaintiff's limitations and restrictions.  See Exhibit A CCC000183-184 and CCC000189-190.  Dr. Wolf responded to questions posed by Continental's Nurse Case Manager Holly Henry, R.N. as follows, in relevant part:

1.    What are Ms. Tesche's current restrictions and limitations in regards to:

Sitting:  ½ hour at a time;   Standing:  ½ hour at a time;

Lifting:  5-10 pounds;        Walking:  15 minutes;

Bending/Squatting/Crawling:  0

Are these restrictions permanent or temporary?  If temporary, when do you expect them to change?  Permanent

Exhibit A CCC000184.  The information provided by Dr. Wolf was reviewed and evaluated by a Nurse Henry.  Exhibit A CCC000143 (5/26/99 entry).

On June 2, 1999, Nurse Henry and the disability specialist assigned to the file, Laura Collins, conferred and reviewed the information on the file to evaluate plaintiff's disability status. Exhibit A CCC000130 [6/2/99 entry – "received permanent restrictions from AP (attending physician). Conf. (conference) with NCM (nurse case manager). Will send file for Voc. (vocational) asses. (assessment)."]. Nurse Henry concluded that the medical information established that plaintiff was disabled from her own occupation. Exhibit A CCC000142. A decision was made to secure a vocational review to examine plaintiff's disability status. Exhibit A CCC000130 and CCC000142.

On June 9, 1999, Tony Gulledge conducted a vocational evaluation to determine if plaintiff was disabled from performing any occupation. Exhibit A CCC000141. Mr. Gulledge contacted plaintiff to discuss her condition and work experience:

> Claimant Contact: 717-469-1151. I spoke with Ms. Tesche today and discussed the requirement of her Own OCC as S&P Analyst. Because Ms. Tesche did not have flexibility to stand as needed she was unable to return work in that occupation. We discussed other sedentary job which offer a sit/stand variety which Ms. Tesche should be capable of with her current limitations. These would include Telemarketer, Customer Service Rep., Motel Night Auditor, and Automobile Rental Agent. Ms. Tesche noted that she had considered returning to work in other home business.

Id. Based upon his review of the file, his discussion with plaintiff, and his experience as a vocational specialist, Mr. Gulledge concluded that plaintiff had the ability to perform sedentary work of the "sit/stand variety" with her current limitations. Id. His impression/recommendation was:

> Given Ms. Tesche's age, educational level, work experience, geographical location, and current functional capabilities the entry level trainable job options described above would appear appropriate. Id.

Based upon the vocational review and the information contained in the claim file, Continental concluded that plaintiff was disabled from performing her own occupation but was not totally disabled from performing any occupation. Exhibit A CCC000130 (6/9/99 entry).  By letter dated July 26, 1999, Continental advised plaintiff that it found her to be disabled from her own occupation and that it would only pay benefits for the twenty four (24) month own occupation period under the plan. Exhibit A CCC000182.  Continental also advised plaintiff that it did not find her to be disabled from pursuing other occupations:

> Based on your limitations and restrictions, you continue to remain disabled from your regular occupation.  However, with consideration of your education, training and experience, you are not diable from other occupations and are not entitled to benefits beyond 24 months (10/30/1999.)  We had your claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Id.  Continental further delineated its position in a letter dated October 7, 1999 that responded to a letter from counsel retained by plaintiff.  Exhibit A CCC000176-7.  Continental's disability specialist Laura Collins explained as follows:

> Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S&P Analyst Assistant which required her to sit 7 hours per day.  Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 pounds, walk 15 minutes at a t time.  He notes these are permanent restrictions.  With consideration of her education, training and experience, she is not dibbled from other occupations and is not entitled to benefits beyond  24 months (10/30/1999).  We had her claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Id. In this same letter, Continental advised plaintiff of her right to appeal the claim determination under ERISA. Id.

Plaintiff, through counsel, appealed Continental's decision. Exhibit A CCC000135; see also, Exhibit A CCC000129. In the interim, plaintiff through counsel submitted an updated report from Dr. Wolf. Exhibit A CCC000138-40. Dr. Wolf's report was based upon his exam in May 1999. Exhibit A CCC000139-40. While Dr. Wolf opined that plaintiff could not perform her prior occupation, he did not opine that plaintiff was disabled from performing any occupation. Id. Indeed, he did not render any opinion as to plaintiff's ability to pursue any occupation but only limited his comments to a statement that plaintiff was not "employable" at the jobs identified in the vocational review. Id.

After Ms. Collins evaluated the new medical information from Dr. Wolf and concluded that "no change in decision" was warranted, this matter was assigned to Cheryl Sauerhoff, a member of Continental's Appeal Committee, for an independent review and evaluation. Exhibit A CCC000129 (1/3/2000 entries). In a letter dated February 21, 2000, Ms. Sauerhoff informed plaintiff's counsel that "[A] comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits." Exhibit A CCC000118-9. In her letter, Ms. Sauerhoff outlined the significant medical evidence and explained the foundation for her conclusion to uphold the benefit termination at the any occupation standard. Id. In particular, Ms. Sauerhoff found that the medical restrictions and limitations imposed by plaintiff's treating physicians was consistent with a "not less than sedentary" physical demand

level. Id. Further, Ms. Sauerhoff noted that Dr. Wolf had provided no details to substantiate his opinion as well as the fact that the occupational decision was for a vocational expert. Id.

Thereafter, plaintiff instituted this lawsuit in this Court and is seeking to have this Court overturn Continental's termination of benefits. Continental has denied all of plaintiff's claims. Discovery has closed and the matter is now ripe for a summary judgment determination in Continental's favor.

## III.    APPLICABLE STANDARDS OF REVIEW

### A.    The Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis supplied).

The standard for summary judgment mirrors the standard for a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While summary judgment should not be granted without

sufficient examination, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex Corp. v. Catrett, 417 U.S. 317, 324, 106 S.Ct. 2548, 2553.

Finally, cross-motions for summary judgment do not constitute a concession that by the parties that summary adjudication is appropriate such that the Court must still examine the record to determine if no genuine issue of material fact. Davies v. Paul Revere Life Ins. Co, 147 F.Supp. 2d 347, 354 (M.D. Pa 2001).

### B.    The ERISA Standard of Review

"ERISA mandates that [the reviewing Court] apply a deferential 'arbitrary and capricious' standard of review to benefits decisions when plan administrators are given discretionary authority to interpret the terms of the plan." Reinert v. Giorgio Foods, Inc., 15 F.Supp. 2d 589, 596 (E.D.Pa. 1998) (citing Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 44-45 (3d Cir. 1993); see also Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 103 L.Ed. 2d 80, 109 S. Ct. 948 (1989). Conversely, when the plan does not grant discretion to the plan fiduciary, the appropriate standard of review to be followed by the court is *de novo*. Mitchell v. Eastman Kodak Company, 113 F.3d 433, 437-8 (3rd Cir. 1997). In this instance, the applicable plan document does not contain a grant of discretionary authority to Continental and, accordingly, the *de novo* standard of review governs this Court's examination of the issue in this matter.

## IV.    LEGAL ARGUMENT

### A. Continental Correctly Determined That Plaintiff Was Not Totally Disabled From Pursuing Any Occupation Based Upon The Medical and Vocational Evidence Of Record

Continental correctly determined that there were occupations that plaintiff, formerly a computer database analyst (S&P Analyst), could pursue even given her permanent physical limitations and restrictions.   Appropriately and conclusively, Continental performed a vocational evaluation which assessment included not only a review of the medical information of record and other occupational data in the claim file but also a telephonic interview of the plaintiff. The vocational evaluation identified several occupations that plaintiff could pursue which not only would allow her to intermittently sit or stand to address her physical limitations and restrictions as imposed by her treating physicians but also comported with her age, educational level, work experience, and geographical location.  Since there were occupations that plaintiff could pursue, Continental was required to enforce the express terms of the ERISA plan and terminate her long term disability benefits at the commencement of the any occupation period at the end of October 1999.  Under any ERISA standard of review, Continental's decision was correct and must be upheld by this Court.

The evaluation of ERISA disability claim necessarily entails a review of the pertinent medical evidence.  In this case, Continental procured records and other information from plaintiff's treating physicians in order to identify the plaintiff's physical capabilities to work in light of her back injury.  See Exhibit A and, in particular, Exhibit A at CCC000129-31 and CCC000141-151. Continental

specifically asked plaintiff's two primary physicians handling her back injury to provide their opinion on plaintiff's physical capabilities, that is to identify what physical impairments existed and their severity.  Dr. Rubinstein, plaintiff's family physician, to complete a Job Activity Sheet. Exhibit A CCC000185.  Dr. Rubenstein advised Continental that plaintiff could stand ½-1 hour consecutively, that she could sit ½ hour consecutively, and that her lifting and carrying restrictions were 10-20 pounds. Id.  Dr. Rubenstein classified the "current limitations noted above as "the patients' self described limitations." Id.

At plaintiff's behest, Continental also asked Dr. Wolf, plaintiff's orthopedic surgeon to comment on plaintiff's medical impairments.  Exhibit A CCC000195.  Dr. Wolf identified plaintiff's restrictions and limitations as follows: sitting ½ hour at a time, standing ½ hour at a time, lifting 5-10 pounds, and walking 15 minutes.  Exhibit A CCC000184.  He classified her physical restrictions as permanent and noted that she seemed to be worsening with a poor prognosis for a return to her prior occupation. Id.

The medical records that were collected and the above-noted physical capability evaluations, as well as the other information contained in the claim file, was reviewed by a disability specialist, Ms. Collins, and a registered nurse, Nurse Henry. Exhibit A CCC000143 and CCC000130 (6/2/99 entry).  The decision was made to forward the file for a vocational review, which was done. Exhibit A CCC000130 (6/2/99 and 6/9/99 entries).

The vocational evaluation, which is unrebutted, is at the heart of Continental's claim determination.  What is significant about the vocational

evaluation and the claim determination rendered thereon is that the medical

evidence on record, in particular the physical capabilities opinions provided by

Doctors Rubenstein and Wolf was adopted and accepted by Continental.  The

restrictions and limitations imposed by plaintiff's treating physicians established

that she was capable of sedentary work (and even modified light medium

physical capacity), see Exhibit A CCC000119, but that she needed to

intermittently sit and stand to deal with her chronic back problems.  Indeed, this is

exactly what plaintiff told the vocational evaluator Mr. Gulledge:

> Because Ms. Teshe (sic) did not have the flexibility to stand as needed
> she was unable to return to work in that occupation. We discussed other
> sedentary jobs which offer a sit/stand variety which Ms. Teshe (sic) should
> be capable of with her current limitations.

Exhibit A CCC000141.  In short, an independent medical examination was not

required because Continental had already incorporated and adopted plaintiff's

treating physician's statement as to plaintiff's physical capability into its claim

review and determination.

The second prong of the vocational review, the identification of jobs that

fall within the parameters of the above physical standards and were compatible

with Mrs. Tesche's education, work experience, age and geographic locations

has also not been rebutted by plaintiff, either during the pendency of the claim or

herein.  Plaintiff did not produce a report from a vocational expert during any

aspect of the claim and this lawsuit.  Plaintiff presumably will argue that Dr. Wolf

effectively rebuts the conclusions of the vocational review and Continental's

claim determination via his December 22, 1999 report at Exhibit A CCC000139-

40.  There are two reasons why this response is not appropriate and does not serve to rebut the existing, and only, vocational evaluation on record.

First, as noted by Ms. Sauerhoff, Dr. Wolf's blanket opinion that the plaintiff is not "employable" at the occupations identified in the vocational exam is not credible as he does not state "why" and, also, because the "any occupation determination is a vocational determination."  Secondly and more significantly. Dr. Wolf never opined that plaintiff was disabled from pursuing any occupation. In his December 22, 1999 report, which by the way was based on his May 1999 exam only, Dr. Wolf clearly opines that plaintiff cannot return to her "previous job at all."  Id.  However, he does not anywhere in this report state that she was disabled from pursuing any occupation but instead uses the more narrow statement that she is not "employable" including the positions identified in the vocational review. Id.  In sum, Dr. Wolf never opined on record that plaintiff was disabled from pursuing any occupation, which point conclusively defeats plaintiff's assertion in this lawsuit.

Though applying a different ERISA standard of review, the decisions in Rendulic v. Kaiser Aluminum & Chemical Corp., 166 F.Supp. 2d 326 (W.D.Pa. 2001) and Ernest v. Plan Adm'r of Textron Insured Ben. Plan, 124 F.Supp. 2d 884 (M.D. Pa. 2000) provide guidance to the Court in examining this matter.  In Rendulic, vocational evaluations established that the worker who was clearly disabled from her own occupation due to a back problem had transferable skills and physical capabilities to perform a more sedentary employment.  Given the vocational evidence and a comprehensive review of the medical records, as

occurred in Continental's review of plaintiff's claim herein, the <u>Rendulic</u> Court upheld the plan's determination that Ms. Rendulic was not disabled from performing any occupation. <u>Rendulic</u>, at 338-40.

In <u>Ernest</u>, Judge McClure of this Court was required to evaluate whether a lung condition, carpal tunnel syndrome, and low back pain precluded a machine worker from performing any "reasonably related occupation."   Judge McClure upheld the insurer's denial of benefits at the any occupation stage on the basis that plaintiff failed to provide "sufficient evidence of his preclusion from work in a reasonably related occupation of tool and gauge inspector." <u>Ernest</u>, at 895. The predicate for the ruling by Judge McClure was the lack of any documented medical evidence that plaintiff was disabled from any job outside of his prior job. <u>Id</u>. at 894-5.  Similarly, in the case at bar, plaintiff has not proffered a medical opinion that pronounces her disabled from any occupation.

In conclusion, Continental in examining whether plaintiff was "continuously unable to engage in any occupation for which he is or becomes qualified by education, training, and experience" procured the pertinent an appropriate medical evidence underlying plaintiff's low back problem; fully and closely evaluated and reviewed that medical evidence; adopted the physical limitations and restrictions imposed by plaintiff's own treating physicians that limited plaintiff's functional capacity to sedentary work with intermittent position changes to accommodate her low back problem; consulted with plaintiff as to her own take on her physical and occupational status; conducted a vocational evaluation that correctly determined that there were occupations that plaintiff could pursue given

her "age. educational level, work experience, geographical location, and current functional capabilities" (Exhibit A CCC000141); correctly determined that plaintiff was not disabled from pursuing her own occupation; and, accordingly, correctly enforced the express terms of the ERISA plan by terminating plaintiff's receipt of benefits at the commencement of the any occupation period.  Moreover, during the claim and in pursuing this litigation has failed to proffer any credible evidence to rebut the vocational evaluation conducted by Continental and has not proffered a medical or other expert to opine that plaintiff was disabled from performing any occupation.  Given plaintiff's failures in this respect, there is no genuine issue of material fact that summary judgment is properly granted in Continental's favor.

> **Respectfully submitted,**
>
> **CHRISTIE, PABARUE, MORTENSEN AND YOUNG, A Professional Corporation**
>
> BY: _____
>      Michael J. Burns, Esquire
>      Atty. Identification #: 62088
>      1880 JFK Boulevard, 10th Floor
>      Philadelphia, Pa 19103
>      (215) 587-1600
>      (215) 587-1699 (facsimile)
>      mjburns@cpmy.com
>
>      Attorney for Defendants,
>      CNA Insurance Companies and
>      Continental Casualty Company

Dated:  1/3/02

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I served a true and correct copy of Defendants CNA Insurance Companies and Continental Casualty Company's Motion for Summary Judgment and accompanying Memorandum of Law, Exhibits thereto, and Statement of Material facts upon all other parties to this action by depositing a copy, postage pre-paid in the United States mail, addressed as followed:

Bradford Dorrance, Esquire
**Keefer Wood Allen & Rahal, LLP**
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963

DATE: 1/3/02

MICHAEL J. BURNS, ESQUIRE

365654-1



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

JAN 07 2002

MARY E. D'ANDREA
Per _____ Deputy Clerk

| | | |
|---|---|---|
| JOAN D. TESCHE | : | CIVIL ACTION |
| vs. | : | |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : | NO. 1:CV-01-0326 (William W. Caldwell, J.) |

## CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE

I have spoken with plaintiff's counsel, Brad Dorrance, Esquire and he concurs/

(does not concur) with the filing of the foregoing Motion for Summary Judgment.

Christie, Pabarue, Mortensen & Young
A Professional Corporation

By: _____  1/3/02
Michael J. Burns, Esquire
1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
(215) 587-1600