ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

JAN 0 7 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

| | | |
|---|---|---|
| JOAN D. TESCHE | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| CNA INSURANCE COMPANIES and | : | NO. 1:CV-01-0326 |
| CONTINENTAL CASUALTY COMPANY | : | (William W. Caldwell, J.) |

**STATEMENT OF MATERIAL FACTS PURSUANT TO
LOCAL RULE OF CIVIL PROCEDURE 56.1**

1.      Plaintiff's former employer, AMP Incorporated funded the long term disability component of its employee welfare benefits plan through the purchase of a group long term disability insurance policy (hereinafter "plan") from Continental Casualty Company (not CNA Insurance Companies)(hereinafter "Continental"). See Exhibit B.

2.      The plan defined "Total Disability" as follows: …during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is: Continuously unable to perform the substantial and material duties of the regular occupation; Under the regular care of a licensed physician other than the insured Employee; and Not gainfully employed in any occupation for which you are or become qualified by education, training or experience.  After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is: Continuously unable to engaged in any occupation of which he is or becomes qualified

by education, training or experience; and Under the regular care of a licensed physician other than himself. Exhibit B at Definitions section, p. 3.

3.      Continental found plaintiff to be Totally Disabled from performing the duties of her own occupation as an S&P Analyst and paid her benefits for two (2) years in accordance with the express terms of the plan. See e.g., Exhibit A CCC000118 and CCC000262.[1]

4.      Plaintiff's claim for long term disability benefits is predicated upon a chronic low back problem.  Exhibit A CCC000270

5.      In order to assess plaintiff's disability status, Continental periodically sought and obtained information from plaintiff's treating physicians as to her medical condition and, in particular, her physical limitations and restrictions.  See, Exhibit A at CCC000130-1 and CCC000142-151.

6.      In March 1999, Continental contacted plaintiff's family physician Morton J. Rubenstein, M.D. to secure his opinion as to plaintiff's physical restrictions and limitations. Exhibit A CCC000144 (3/10/1999 entry).

7.      Dr. Rubenstein provided the following opinions:
What are the current limitations that prevent return to the patient's own job?
Standing: ½ - 1 consecutively hr/day
Walking: 3 hr/day

Sitting:½ consecutively hr/day

Lifting:        10-20 pounds

Carrying:       10-20 pounds

Is Ms. Tesche at MMI?  Are the limits temporary or Permanent?  <u>Not Known</u>

***Objective findings MUST BE PROVIDED to support any limitations given.

<u>The above are the patients self-described limitations.  If confirmation is required,</u>

<u>suggest independent medical examination by physiatrist or orthopedic surgeon.</u>

Exhibit A CCC000185.


8.      Plaintiff also advised Continental to secure medical information from her treating

orthopedic surgeon, Steven Wolf, M.D.  Exhibit A CCC000195.


9.      In May 1999, Continental after several requests received an updated report from

plaintiff's treating orthopedic surgeon, Steven B. Wolf, M.D., which report included an

assessment of plaintiff's limitations and restrictions.  See Exhibit A CCC000183-184 and

CCC000189-190.


10.     Dr. Wolf responded to questions posed by Continental's Nurse Case Manager

Holly Henry, R.N. as follows:

What are Ms. Tesche's current restrictions and limitations in regards to:

Sitting:  ½ hour at a time;    Standing:  ½ hour at a time;

Lifting:  5-10 pounds;        Walking:  15 minutes;

Bending/Squatting/Crawling:  0

Are these restrictions permanent or temporary?  If temporary, when do you expect

them to change?  Permanent

What objective findings support these limitations?

FABER on left, groin pain, and SI joint pain at shot gun maneuver.

Is Ms. Tesche medically stable at this time?  If not, when do you expect this to

occur and what is the treatment plan.

She seems to be worsening.

What is the prognosis for a return to her occupation?

Poor.

Exhibit A CCC000184.


11.    The information provided by Dr. Wolf was reviewed and evaluated by a Nurse

Holly Henry.  Exhibit A CCC000143 (5/26/99 entry).


12.    On June 2, 1999, Nurse Henry and the disability specialist assigned to the file,

Laura Collins, conferred and reviewed the information on the file to evaluate plaintiff's

disability status.  Exhibit A CCC000130 [6/2/99 entry – "received permanent restrictions

from AP (attending physician). Conf. (conference) with NCM (nurse case manager).   Will

send file for Voc. (vocational) asses. (assessment)."].


13.    Nurse Henry concluded that the medical information established that plaintiff was

disabled from her own occupation.  Exhibit A CCC000142.

14.    A vocational evaluation was conducted by Continental to examine plaintiff's

disability status. Exhibit A CCC000130 and CCC000142.


15.    On June 9, 1999, Tony Gulledge conducted a vocational evaluation as to plaintiff's

claim for benefits.  Exhibit A CCC000141.


16.    Mr. Gulledge contacted plaintiff and noted as follows in the administrative record:

> Claimant Contact: 717-469-1151.  I spoke with Ms. Teshe today and discussed the
> requirement of her Own OCC as S&P Analyst.  Because Ms. Teshe did not have
> flexibility to stand as needed she was unable to return work in that occupation.  We
> discussed other sedentary job which offer a sit/stand variety which Ms. Teshe
> should be capable of with her currently limitations.  These would include
> Telemarketer, Customer Service Rep., Motel Night Auditor, and Automobile Rental
> Agent.  Ms. Teshe noted that she had considered returning to work in other home
> business.

Id.


17.    Based upon his review of the file, his discussion with plaintiff, and his experience

as a vocational specialist, Mr. Gulledge concluded that plaintiff had the ability to perform

sedentary work of the "sit/stand variety" with her current limitations. Id.


18.    Mr. Gulledge documented his impression/recommendation in the record as

follows:

> Given Ms. Tesche's age, educational level, work experience, geographical
> location, and current functional capabilities the entry level trainable job options
> described above would appear appropriate.  File plan:  DBS will pay through the
> Own Occ period and close file.  If you have any questions concerning this file plan,
> please give me a call at ext. 5391.

Id.

19.    Based upon the vocational review and the information contained in the claim file, Continental concluded that plaintiff was disabled from performing her own occupation but was not totally disabled from performing any occupation. Exhibit A CCC000130 (6/9/99 entry).

20.    By letter dated July 26, 1999, Continental advised plaintiff that it found her to be disabled from her own occupation and that it would pay benefits for the twenty four (24) month own occupation period under the plan. Exhibit A CCC000182.

21.    Continental also advised plaintiff by letter dated July 26, 1999 that it did not find her to be disabled from pursuing other occupations stating:

> Based on your limitations and restrictions, you continue to remain disabled from your regular occupation.  However, with consideration of your education, training and experience, you are not disabled from other occupations and are not entitled to benefits beyond 24 months (10/30/1999.)  We had your claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Id.

22.    Continental further delineated its position in a letter dated October 7, 1999 that responded to a letter from counsel retained by plaintiff.  Exhibit A CCC000176-7.

23.    Continental's disability specialist Laura Collins explained in the October 7, 1999 letter as follows:

> Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S&P Analyst Assistant which required her to sit 7 hours per day.  Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit

for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 pounds, walk 15 minutes at a t time.  He notes these are permanent restrictions.  With consideration of her education, training and experience, she is not dibbled from other occupations and is not entitled to benefits beyond  24 months (10/30/1999).  We had her claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.  Id.  In this same letter, Continental advised plaintiff of her right to appeal the claim determination under ERISA.

Id.

24.     Plaintiff, through counsel, appealed Continental's decision. Exhibit A CCC000135; see also, Exhibit A CCC000129.

25.     In the interim, plaintiff through her counsel submitted an updated report from Dr. Wolf dated December 22, 1999, which was the only document submitted by plaintiff to support her appeal.  Exhibit A CCC000138-40.

26.     The opinions expressed in Dr. Wolf's December 22, 1991 report were based upon his exam in May 1999 as he had not seen or evaluated the plaintiff since that time. Exhibit A CCC000139-40.

27.     While Dr. Wolf opined that plaintiff could not perform her prior occupation in his December 22, 1999, he did not opine that plaintiff was disabled from performing any occupation. Id.

28.     Indeed, he did not render any opinion as to plaintiff's ability to pursue any occupation but only limited his comments to a statement that plaintiff was not "employable" at the jobs identified in the vocational evaluation. Id.

29.     After Ms. Collins evaluated the new medical information from Dr. Wolf and concluded that "no change in decision" was warranted, this matter was assigned to Cheryl Sauerhoff, a member of Continental's Appeal Committee, for an independent review and evaluation. Exhibit A CCC000129 (1/3/2000 entries).

30.     In a letter dated February 21, 2000, Ms. Sauerhoff informed plaintiff's counsel that "[A] comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits." Exhibit A CCC000118-9.

31.     In her letter affirming the benefit termination, Ms. Sauerhoff outlined the significant medical evidence and explained the foundation for her conclusion to uphold the benefit termination at the any occupation standard. Id.

32.     In particular, Ms. Sauerhoff found that the medical restrictions and limitations imposed by plaintiff's treating physicians was consistent with a "not less than sedentary" physical demand level. Id.

33.    Ms Sauerhoff explained the foundation for the affirmance of the benefit termination

as follows:

> The information submitted by Dr. Rubenstein does not support a less than
> sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's
> records, in particular, dated 1997 and 4/17/98 state that the claimant is actively
> searching for work within her physical limitations. His rendition of the claimant's
> physical capacity to perform shows standing up to new hour, sitting or one half
> hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He
> claims that these limitations are "the patient's self-prescribed limitations". In
> 8/1997, the claimant was considered able to perform at a modified light medium
> physical capacity level by a physical therapist and Dr. Hartman. Dr. Wolf was
> requested to give permanent restrictions for the claimant and on 5/11/99 he states
> that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds,
> walk for 15 minutes and no bending, crawling, squatting. The claimant states that
> she could not perform her own occupation due to the prolonged sitting and after
> discussing this with the claimant, the vocational experts detailed occupations that
> would give the claimant the versatility to move about freely as she needs and are
> within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she
> could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf
> states that he feels that the occupations described would not be options for the
> claimant but does not state why. There is no detail of any functional impairment or
> any information relating to the claimant's inability's to perform her activities of daily
> living. While we appreciate Dr. Wolf's opinion, the any occupation determination is
> a vocational determination based on the claimant's permanent medical restrictions,
> geographic location, economic parity, age, experience, and education.

Id.

34.    Plaintiff did not provide a report from a vocational expert to Continental at anytime

to support her claim that she was disabled from any occupation as defined in the plan.

See Exhibit A.

Christie, Pabarue, Mortensen & Young
A Professional Corporation

BY: _____
Michael J. Burns, Esquire
1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
215-587-1600

Dated: 1/8/02

365687_1                                    9