IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOAN D. TESCHÉ,                     :   Civil Action No. 1:CV-01-0326
                                    :
          Plaintiff                 :
                                    :
     v.                             :
                                    :
CNA INSURANCE COMPANIES, and        :
CONTINENTAL CASUALTY COMPANY,       :
                                    :
          Defendants                :   (Judge Caldwell)


**PLAINTIFF'S REPLY BRIEF IN OPPOSITION
TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**


**I.   INTRODUCTORY STATEMENT**


     In their brief, defendants, CNA Insurance Companies and Continental Casualty Company (collectively "CNA"), assert the following arguments in support of their Claims Administrator's decision terminating plaintiff's LTD benefits:

     A.   Plaintiff, Joan Tesché ("Mrs. Tesché"), did not satisfy the definition of total disability under CNA's policy;

B.  Mrs. Tesché's treating physicians failed to specify that she was disabled from any occupation and failed to state why she was disabled from the four sedentary jobs identified by CNA's vocational consultant; and

C.  Mrs. Tesché failed to rebut the vocational consultant's report, which opined that she was capable of performing four sedentary jobs.

Defendants' specious arguments mischaracterize the treating physicians' medical reports and conveniently overlook CNA's fundamentally flawed appeal process.[1] As the following discussion confirms, CNA withheld ERISA-mandated information from Mrs. Tesché; failed to clarify Dr. Wolf's finding that she was "unemployable"; and ultimately terminated Mrs. Tesché's benefits based on dated medical evidence and its paid employee's undisclosed report.

---

[1] Mrs. Tesché incorporates by reference herein Plaintiff's Brief in Support of her Motion for Summary Judgment.

### II. ARGUMENT

A.  Contrary to CNA's assertions, Mrs. Tesché established that she was totally disabled and was entitled to continuing LTD benefits.

Under the Social Security regulations and under CNA's policy, the determination of total disability is based on certain vocational and medical criteria including: the claimant's permanent medical restrictions; and the claimant's ability to do any occupation, taking into account her age, education, and work experience. The Social Security Administration's regulations are virtually identical to the medical and vocational criteria used by CNA in terminating Mrs. Tesché's LTD benefits. Sauerhoff Dep. Tr. at 41-42. Compare Amended Complaint, Exhibit F and 20 C.F.R. §§404.1563, 416.963 (age), §§404.1564, 416.964 (education), §§404.1565, 416.965 (work experience), and §§404.1567(a), 416.967(a) (sedentary limitations).

The Social Security Administration awarded disability benefits to Mrs. Tesché without any need for a hearing; CNA summarily terminated those benefits based on inconsistent and

3

undisclosed criteria.  See Plaintiff's Brief in Support of her Motion for Summary Judgment.  The Social Security Administration's award of benefits is compelling (and potentially determinative) evidence that Mrs. Tesché satisfied the definition of total disability under the LTD policy.  Compare Ladd v. ITT, 148 F.3d 753, 756 (7th Cir. 1998); see also Mitchell v. Eastman Kodak Company, 113 F.3d 433, 440-441 (3d Cir. 1997).

Despite Mrs. Tesché's compelling medical and vocational evidence of disability, CNA now attempts to argue that her treating physician, Dr. Wolf, did not satisfy the definition of total disability because:

(a)  he failed to specify that Mrs. Tesché was disabled from any occupation; and

(b)  he failed to state why Mrs. Tesché was incapable of performing the four sedentary jobs identified by CNA's paid employee.

These arguments mischaracterize Dr. Wolf's opinion and disregard governing law, which impose special fiduciary duties on CNA as claim administrator.  See Plaintiff's Brief.

In his December 22, 1999 report, Dr. Wolf addressed the determinative issue raised in CNA's initial decision dated October 7, 1999: Was Mrs. Tesché able to perform any occupation, including the four sedentary jobs identified by CNA's vocational specialist? Defendants' Exhibit A at CCC000176. With respect to this issue, Dr. Wolf specifically opined as follows:

> At this point, I do not feel that Mrs. Tesche is <u>employable</u> including these positions; telemarketer, customer service representative, motel night auditor and an automobile rental agent.

Defendants' Exhibit A at CCC000156. (emphasis added).

CNA makes a semantic argument in its brief: Dr. Wolf opined that Mrs. Tesché was "unemployable," but he failed to specify that she was "disabled." CNA's tortured word smithing strains common sense and misapplies governing law. <u>See</u>, <u>e.g.</u>, <u>Mitchell</u> at 441-443.

Similarly, in its final decision and in its brief, CNA asserts that Dr. Wolf failed to detail why Mrs. Tesché was incapable of performing the four sedentary occupations identified

5

by its paid employee[2].  This argument exemplifies CNA's fundamentally flawed appeal process, which was totally lacking in procedural due process.  See Plaintiff's Brief at 7-9.  If CNA had any questions about Dr. Wolf's opinion, it had both the contractual right and the fiduciary obligation to ask for clarification.  Sauerhoff Dep. Tr. at 48-49, 68.  Plaintiff's Statement, ¶¶ 14-21, 25-37.  Instead, using a duplicitous approach, CNA withheld requested (and ERISA-mandated) vocational information from Mrs. Tesché; relied on Dr. Wolf's work restrictions; and later claimed that his opinion did not establish disability.  This apparent medical requirement was first disclosed in CNA's final decision dated February 21, 2000.  Id.  Compare Varity Corp. v. Howe, 516 U.S. 489, 502 (1996).  (An

---

[2] In addition to having an inherent conflict of interest as a paid employee, CNA's so-called vocational specialist, Tony Gulledge, never established his qualifications to render vocational opinions and determinations.  CNA's appeals process was administered by insurance company employees who had no proven expertise on the medical and vocational issues.  Sauerhoff Dep. Tr. at 36-37.  Compare Luby v. Teamsters Health, Welfare, and Pension Trust Funds, 944 F.2d 1176, 1183 (3d Cir. 1991).  By contrast, the Social Security Administration requires vocational experts to be qualified and to testify at Social Security hearings.

employer acted in a fiduciary capacity when it failed to accurately communicate plan-related information.)  See also Mitchell at 437-438; Bradford Dorrance's Affidavit (AMP Employee Handbook).  CNA acted arbitrarily in withholding essential information while requiring Mrs. Tesché to provide objective medical and vocational evidence of disability.  Id.  This Court should reverse CNA's final decision, which was based on undisclosed and inconsistent criteria.

      B.   **CNA's undisclosed vocational determination should be disregarded, because it was based on dated medical opinions and unreliable and incomplete vocational information.**

In their brief, defendants argue that CNA's vocational determination should be sustained on appeal in that:

    (a)  it was based on Mrs. Tesché's restrictions as documented by her treating physicians;

    (b)  it was based on consideration of all relevant vocational criteria, including Mrs. Tesché's age, education, and work experience; and

(c) it was not rebutted by any vocational report submitted by Mrs. Tesché.

These arguments are yet another example of CNA's efforts to shape the outcome of this appeal.

CNA tries to persuade the Court that its vocational employee was relying on updated and appropriate medical information from Mrs. Tesché's treating physicians. In truth, the vocational specialist relied on an inapplicable CNA questionnaire used in the unrelated context of an "own occ" determination.[3] The CNA questionnaire, completed by Dr. Wolf in May of 1999, confirmed his opinion that Mrs. Tesché's restrictions were "permanent" and seemed to be "worsening." Defendants' Exhibit A at CCC000184. However, the form inappropriately and unfairly shaped Dr. Wolf's opinion by

---

[3] CNA's "own occ" determination is directly analogous to the Social Security Administration's determination of a claimant's "past relevant work." Compare Defendants' Exhibit A at CCC000164; and Bradford Dorrance's Supplemental Affidavit (Social Security Ruling 96-8p). The "total disability" determination under the CNA policy is akin to the Social Security Administration's determination of a claimant's inability to perform "substantial gainful activity." Id. Both standards consider the claimant's age, education, and work experience. Id.

confining his prognosis to a consideration of whether Mrs. Tesché was capable of "return[ing] to her occupation?" Id.

Although Dr. Wolf's December 22, 1999 report ultimately addressed the determinative question of total disability, CNA never bothered to ask Dr. Wolf whether Mrs. Tesché was capable of performing any occupation. CNA had a fiduciary obligation to investigate and clarify any outstanding medical and vocational issues. Plaintiff's Brief at 7-9. Since CNA's vocational report relied on skewed and dated medical evidence of disability, CNA's decision was fundamentally flawed and should be reversed. Plaintiff's Brief at 7-9; compare Mitchell at 440, n7.

CNA's vocational evaluation also failed to consider the threshold test for determining whether a claimant is disabled: Whether the claimant is able to perform "...sustained work activities in an ordinary work setting on a regular and continuing basis...." Bradford Dorrance's Supplemental Affidavit, Exhibit A at 149 (Social Security Ruling 96-8p). A "regular and continuing basis" means eight hours per day during a five-day work week (or an equivalent work schedule). Id. at 143-144.

CNA's vocational specialist opined that Mrs. Tesché was capable of performing four sedentary positions which allowed her to intermittently sit or stand.  See Defendant's Memorandum of Law.  Even assuming Mrs. Tesché was capable of performing certain isolated activities, she was not capable of doing them over a prolonged period of time, i.e., a "regular and continuing basis." Compare Mitchell at 440, n7; and Dorrance's Supplemental Affidavit, Exhibit A at 149.  Although Dr. Wolf deemed Mrs. Tesché to be "unemployable" due to her inability to sustain work, the vocational specialist never bothered to consider that:

 (a) Mrs. Tesché was disqualified from employment due to her need to lie down for prolonged periods during waking hours; and

 (b) she had additional nonexertional limitations which could preclude employment including:  chronic pain; problems concentrating; memory loss; lack of mental sharpness; tremors; and fatigue.  Compare Defendants' Exhibit A at CCC000141; Tesché Affidavit; and Dorrance Affidavit and Supplemental Affidavit, Exhibit A at 148-149.

Under the Social Security Administration's and CNA's virtually identical criteria, Mrs. Tesché is totally disabled, in part because she would be unable to meet minimum productivity levels at any job.[4] Since Mrs. Tesché was and is required to rest at frequent intervals during each day, she must be deemed unemployable under any definition of disability. Cf. Defendants' Memorandum of Law at 13, citing cases; compare Mitchell. CNA's arbitrary and erroneous decision should be reversed.

---

[4] Vocational experts customarily opine that a claimant is precluded from gainful employment if, for example:

    (a)  her medical condition requires her to take breaks more frequently than the maximum amount permitted in the U.S. work force, i.e., one-hour lunch break and two 15-minute breaks in the morning and afternoon; and/or

    (b)  her condition forces her to be absent from work more than three days per month. Compare Tesché Affidavit.

11

### III. CONCLUSION

For the foregoing reasons, plaintiff, Joan D. Tesché, respectfully requests that the Court:

    A.   Deny defendants' motion for summary judgment; and

    B.   Enter summary judgment in her favor on Counts I and II of the amended complaint, reverse defendants' decision, and award retroactive benefits, accrued interest, attorneys' fees, and costs; or

    C.   Alternatively, if the Court believes additional medical and vocational information is necessary, remand the case to the Claims Administrator for further proceedings.

    Respectfully submitted,

    KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 1/28/02

Bradford Dorrance
I. D. No. 32147
210 Walnut Street
P. O. Box 11963
Harrisburg, PA  17108-1963
(717) 255-8014

(Attorneys for Plaintiff)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:

<u>First-Class Mail, Postage Prepaid
Addressed as Follows:</u>

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA   19103-7424

(Attorneys for Defendants)

Dated: 1/28/02

Bradford Dorrance