IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHE,                          :

        Plaintiff                :

                                :

        vs.                      :          CIVIL ACTION NO. 1:CV-01-0326

                                :

CNA INSURANCE COMPANIES, and             :
CONTINENTAL CASUALTY COMPANY,
        Defendants                :



M E M O R A N D U M

I.        Introduction

      This is an action by Plaintiff Joan D. Tesché under the

Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461

(1999) ("ERISA"), seeking to recover long-term disability benefits

pursuant to 29 U.S.C. § 1132(a)(1)(B), (a)(3) and claiming

Defendants[1] breached fiduciary duties (29 U.S.C. § 1132(a)(2)).

---

[1]The parties dispute whether CNA Insurance Companies ("CNA")
is a proper defendant in this case, but have failed to provide
support for their respective positions.  We note, according to the
defendants, CNA is a trade name, and Continental Casualty Company
("Continental") is engaged in the business of writing and
underwriting long-term disability insurance plans.  (Defs'
Response to Plaintiff's Statement of Material Facts, ¶ 3).  They
further allege that Continental, not CNA, concluded that Plaintiff
was not totally disabled.  According to the Plaintiff, CNA made
her disability determinations, but her benefits were paid by
Continental.  (Pl's Supp. Br., at p. 3).  She claims CNA is both a
plan or claims administrator and a fiduciary.  Because we will
dismiss count I, we need not determine whether either defendant
acted as a fiduciary.  As to whether it is proper to allege count
II against CNA, the parties have failed to meet their respective
summary-judgment burdens on that issue.

Plaintiff is seeking a monetary award in the form of long-term disability benefits, or alternatively, a retroactive reinstatement of benefits or a remand to the plan administrator.  She is also seeking attorneys' fees and costs.

Plaintiff has exhausted all administrative remedies, and we have jurisdiction pursuant to 29 U.S.C. § 1132.  We are considering the parties' cross-motions for summary judgment. Because we will find that Plaintiff's claim for breach of fiduciary duties is not cognizable, we will grant summary judgment in favor of Defendants on that count.  However, we will deny summary judgment to both parties on count II because neither party has met its summary-judgment burden on the issue of whether Plaintiff was totally disabled under the terms of the policy.  The parties specifically dispute whether Plaintiff was able to perform any occupation for which she was qualified given her education, training, or experience.

II.      Background

Plaintiff was employed by AMP, Inc., ("AMP"), from May 2, 1988 to May 1997.  (Pl's Statement of Material Facts, ¶ 7). AMP funded long-term disability benefits for its employees by purchasing a group long-term disability insurance policy from Defendant Continental Casualty Company ("Continental").  (Defs' Response to Pl's Statement of Material Facts, ¶ 8).  AMP's

2

employee handbook (1997) names it as the plan administrator. (See Dorrance's Aff. Ex. A).

The policy provides that an employee is entitled to benefits for the first twenty-four months (after the 180-day elimination period), if she is totally disabled from performing her "own occupation." (Defs' Ex. B). During the first twenty-four months, total disability, as defined under the policy, occurs when

> the Insured Employee, because of Injury or Sickness, is:
>
> (1) continuously unable to perform the substantial and material duties of his regular occupation;
>
> (2) under the regular care of a licensed physician other than himself; and
>
> (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

(Defs' Ex. B).

While insured under this policy, Plaintiff suffered from chronic back pain for which she underwent three separate surgeries. (Pl's Aff., at p. 2). On May 3, 1997, it was determined that Plaintiff was disabled from her "own occupation" as a system procedure analyst. (See Plaintiff's Statement of Undisputed Facts, at ¶ 12 and Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶ 12). Plaintiff received short-term disability benefits through November 5, 1997. (See

3

Defs' Ex. A at CCC000262). On January 19, 1998, Laura Collins, a
CNA disability specialist, notified Plaintiff of the approval for
payment of her disability claim. (Id.). Plaintiff was paid
benefits, for a period commencing after the 180-day elimination
period (May 3, 1997, through October 29, 1997), for the 24-month
"own occupation" period (October 30, 1997, to October, 30, 1999).

After the twenty-four months, the insured employee is
entitled to benefits only if she is totally disabled from
performing "any occupation." (Defs' Ex. B). The policy then
defines total disability as follows:

> because of Injury or sickness, the Insured
> Employee is:
>
> (1) continuously unable to engage in any
> occupation to which he is or becomes qualified
> by education, training or experience; and
>
> (2) under the regular care of a licensed
> physician other than himself.

Id.

In efforts to update Plaintiff's disability status,
employees of CNA periodically sought medical information from
Plaintiff's physicians. After repeated attempts to obtain a
medical update from Dr. Morton J. Rubenstein (Plaintiff's family
physician), on February 9, 1999, CNA sent a form letter to
Plaintiff indicating that they had been trying to obtain updated
information from her doctor, without success, and requesting that
she contact CNA. (Defs' Ex. A at CCC000196). According to the
record, Plaintiff notified Laura Collins, a disability specialist,

4

that Dr. Steven B. Wolf would provide a more accurate assessment of her limitations as opposed to Dr. Rubenstein. (Defs' Ex. A at CCC000195). Accordingly, on March 9, 1999, CNA requested current restriction and limitation information from Dr. Wolf. (Defs' Ex. A at CCC000190).

On March 10, 1999, CNA received the following restriction and limitation information from Dr. Rubenstein. Plaintiff may stand for one-half hour to one hour/day consecutively; spend three hours/day walking; sit for one-half hour/day consecutively; lift 10-20 pounds; carry 10-20 pounds; and perform no pulling or pushing. (See Defs' Ex. A at CCC000185). He did not know whether these restrictions and limitations were temporary or permanent. In addition, he noted that the limitations were those of Plaintiff's self-described limitations, and that if confirmation were required, an independent medical examination by a physiatrist or orthopedic surgeon may be appropriate. Id.

In response to the March 9th request, Dr. Wolf supplied the following restrictions/limitations on May 21, 1999, to Holly E. Henry, nurse case manager. He indicated Plaintiff could sit for one-half hour at a time, stand for one-half hour at a time; lift 5-10 pounds; walk for fifteen minutes; and was restricted from bending, squatting, and crawling. (See Defs' Ex. A at CCC000184). Dr. Wolf indicated these were permanent restrictions, and noted the objective findings. He also indicated that

5

Plaintiff's condition seemed to have been worsening and that her prognosis was poor.

After receiving this information, the nurse case manager noted that Plaintiff may be able to return to her own occupation if allowed to take a break from sitting every half hour, (Defs' Ex. A at CCC000143), but after a conference with the disability specialist, the nurse case manager noted, on June 2, 1999, that Plaintiff was totally disabled from her own occupation. Her notes indicate that the file was then sent to a vocational specialist. (Id. at CCC000142).

Tony Gulledge, a vocational specialist, conducted an "any occ assessment," (Defs' Ex. A at CCC000141), which the record indicates he based on a telephone conversation with Plaintiff. He noted that they discussed other sedentary jobs that she could perform with her current limitations: telemarketer, customer service representative, motel night auditor, and automobile rental agent. (Defs' Ex. A at CCC000141). His recommendation was as follows:

> Given Ms Teshe's [sic] age, educational level, work experience, geographical location, and current functional capabilities the entry level trainable job options described above would appear appropriate. File plan: DBS will pay through the Own Occ period and close file.

Id.

By letter dated July 26, 1999, CNA informed Plaintiff, that effective October 30, 1999, she would no longer receive

6

disability benefits because, although they considered her to be disabled from her own occupation, they did not consider her to be totally disabled from any occupation.  In the letter, CNA listed the potential positions which it thought Plaintiff could perform with her limitations/restrictions--the occupations noted by the vocational specialist.

Plaintiff secured counsel, and, by letter dated September 14, 1999, requested (1) Plaintiff's disability file, (2) all medical and disability reports completed by medical providers or physicians; (3) the policy; (4) the vocational specialist's report referenced in the July 26, 1999 letter; (5) the job descriptions for the jobs referenced in the July 26, 1999 letter; (6) a payment printout listing disability payments paid to Plaintiff to date; and (7) a copy of all appeal or review procedures for the discontinuance of long-term disability benefits.  (Defs' Ex. A at CCC000178-179).

The disability specialist, Laura Collins, responded by way of a letter dated October 7, 1999, and explained:

> Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S & P Analyst Assistant which required her to sit 7 hours per day. Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 lbs., walk 15 minutes at a time.  He notes these are permanent restrictions.  With consideration of her education, training and experience, she is not disabled from other occupations and is not entitled to benefits beyond 24 months (10/30/99).  We had her claim

7

> reviewed by a vocational specialist who
> identified the jobs of Telemarketer, Customer
> Service Representative, Motel Night Auditor,
> and Automobile Rental Agent as potential
> employment opportunities.

(Defs' Ex. A at CCC000176). The letter further notified Plaintiff

that she could appeal pursuant to ERISA and that she could submit

additional medical information for reconsideration. (Id. at

CCC0001777). It also explained that upon receiving new

information, her claim would be reconsidered, and that if there

were no change in the decision to terminate benefits, the claim

would be forwarded to the Appeals Committee who would issue a

ruling within sixty days of the receipt of the appeal. (Id.).

Activity notes signed by Laura Collins indicate that on

October 7, 1999, she sent counsel a copy of the policy, of the

medical and initial claim forms, correspondence, the vocational

assessment, and the own occupation termination letter. (Defs' Ex.

A at CCC000129).

Plaintiff's counsel sent a second letter to CNA on

October 12, 1999, requesting the job descriptions he asked for in

his September 14th letter. He indicated the reason for this

information was so that Dr. Wolf could review the job descriptions

and submit additional medical information to be considered in

CNA's reconsideration of Plaintiff's claim. (Defs' Ex. A at

CCC000175). In response, Laura Collins notified counsel that the

job descriptions from the Dictionary of Occupational Titles which

8

he requested were available at any library. (Defs' Ex. A at CCC000172).

Plaintiff's counsel sent yet a third letter on October 22, 1999, requesting information regarding the appeal procedure referenced in the AMP Employee Handbook and a copy of the procedure to be followed when terminating an employee's long-term disability benefits. (Defs' Ex. A at CCC000168). In response, CNA indicated that the appeal procedure for benefit termination and for filing an appeal were described in their October 7, 1999 letter. (Defs' Ex. A at CCC000167). Plaintiff's counsel sent a follow-up letter on November 8, 1999, again requesting this information. (Defs' Ex. A at CCC000166).

On December 3, 1999, Plaintiff's counsel notified CNA that it was requesting reconsideration of Plaintiff's terminated benefits. He also indicated that he intended to submit additional medical information from Dr. Wolf, which he requested on October 27, 1999, but which he had not yet received. (Defs' Ex. A at CCC000159). In a letter dated December 29, 1999, Plaintiff provided CNA with Dr. Wolf's report, dated December 22, 1999.

Dr. Wolf's report was based on a May 1999 appointment with Plaintiff (his last appointment with her). His report was as follows:

> At this point, I certainly cannot see her returning to her previous job at all. Her condition seems to be worsening and I think her prognosis is poor for returning to her

occupation. She is currently going to the
Hershey Pain Clinic for treatment.

Her physical exam, when I saw her, showed
that she had a markedly positive FABER test on
the left side and she has increased pain in
her left SI joint with a shock on her nerve
root. She is unable to sit on her left
buttock cheek very well at all. She shifts
her weight when sitting. She is unable to sit
in one position. She has no sciatic nerve
tension signs at all. Her strength is intact
in her lower extremities. Her upper
extremities also shows [sic] normal strength.
She has negative Hoffman's signs although her
reflexes are brisk at the biceps and triceps
as well as at the knees and the ankles. Her
Babinski's are down going and there is no
sustained clonus.

I referred Joan to Dr. Fred Hess who is a
spine surgeon who could see Joan with her
current health insurance plan. I felt that
Joan may need a work up by a Rheumatologist as
well.

At this point, I do not feel that Mrs.
Tesche is employable including these
positions; telemarketer, customer service
representative, motel night auditor and an
automobile rental agent.

(Defs' Ex. A at CCC000154, CCC000156).

Thereafter, Collins notified Plaintiff, on January 3,
2000, that Dr. Wolf's report did not alter the October 7, 1999
decision, and that the file was being forwarded to the Appeals
Committee for review. (See Defs' Ex. A at CCC000152).

The matter was then assigned to Cheryl Sauerhoff, a
member of the Appeals Committee. In a letter dated February 21,
2000, Sauerhoff informed Plaintiff's counsel that the decision to
terminate benefits would stand. In pertinent part, the letter
stated:

AO 72A

The claimant was found to be disabled from her occupation and paid benefits for the 24 month own occupation period commencing after the 180-day elimination period. Based on the claimant's age, experience, geographic location, salary, education and the medical restrictions given by the treating physician, it was determined that the claimant was not totally disabled from any occupation. Those occupations were detailed in the 10/7/99 letter and will not be revisited at this time.

All information has been reviewed and indicated that the claimant is not less than sedentary in the physical demand level for occupational work. The medical documentation does not reflect this level of severity.

The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to one hour, sitting for one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". [sic] In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman.

Dr. Wolf was required to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the

11

occupations described would not be options for
the claimant but does not state why.  There is
no detail of any functional impairment or any
information relating to the claimant's
inabilities to perform her activities of daily
living.

While we appreciate Dr. Wolf's opinion,
the any occupation determination is a
vocational determination based on the
claimant's permanent medical restrictions,
geographic location, economic parity, age,
experience, and education.

Therefore, based on the information
contained within your claim file, we find that
the decision to terminate benefits was correct
and proper.  You have exhausted your
administrative remedies at this time and this
decision is final and binding.

(Defs' Ex. A at CCC000133-34).  Plaintiff's attorney did not

receive notification of the decision until April 2000. (Defs' Ex.

at CCC000115).

On February 20, 2001, Plaintiff instituted this action

against CNA and Continental.  In Count I, Plaintiff maintains that

Defendants breached their fiduciary duties under ERISA

§ 1132(a)(2) by (1) failing to disclose information about the

appeal process; (2) failing to retrieve pertinent information from

her treating doctor("a vocation determination based on the

claimant's permanent medical restrictions, geographic location,

economic parity, age, experience, and education"); (3) failing to

explain the difference between "own" occupation and "any"

occupation; (4) failing to advise of all necessary requirements

for her continued receipt of long-term disability benefits; (5)

failing to provide an opportunity to submit additional medical

12

AO 72A

evidence addressing the disability criteria; and (6) issuing an untimely decision.  Under count II, Plaintiff seeks to recover long-term disability benefits.

Plaintiff has submitted deposition testimony that outlines her claimed disability.  Although she did not point us to this deposition directly, it does help to provide a background of Plaintiff's medical history.

In March 1992, Plaintiff had a bone screw implementation and a fusion at L5-S1 level, due to spondylolisthesis.  In 1995, she had an anterior fusion of the lumbar spine in the area between L5-S1.  In May 1996, the bone screw was removed because the spine had not fused properly.

In her deposition, she maintains that she cannot work due to scar damage from the initial fusion because of the chronic pain which has resulted.  It is a constant pain that radiates through her spine, to her neck and heels. (Dorrance Supplemental Aff., Ex. B, at pp. 18-19).  In addition, she has fibromyalgia, and she has a drop foot from the nerve damage (which impedes her mobility).  (Id. at pp. 17-18).  She gets a tight, cramp-like pain due to the fibromyalgia.  (Id. at p. 20).

To alleviate the pain from these conditions, she takes triamterene, neurontin, oxycontin, celebrex, and amitriptyline. (Id. at pp. 20-21).  She also performs home exercises and ice pack therapy.  It is expected that every six months, she will need a

13

AO 72A

spinal injection, and Dr. Wolf has recommended a fusion of the SI joints because of nerve damage.  (Id. at pp. 21-23).

In a typical day, Plaintiff wakes in the morning at 7:00 a.m.  (Pl's Aff., at p. 4).  She immediately takes her medication. Id.  About an hour later, she can begin limited physical activities.  Id.  She then must lie down for one-half hour.  She will again lie down between 2:00 p.m. and 4:00 p.m. and around 7:00 p.m.  She retires for the night around 9:00 p.m.  Id.  During the day, she performs light housework, hobbies (cross-stitch, oil painting, and stained glass), and cooking.  (Dorrance Supplemental Aff., Ex. B, at p. 35).  She drives about once or twice a week. Id. at p. 36.

III.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).  Summary judgment must be entered in favor of the

14

AO (2A

moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. at 586-87, 106 S. Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When considering cross motions for summary judgment, we must still determine whether there is a dispute as to any genuine issue of material fact, which would preclude summary judgment. Davies v. Paul Revere Life Ins. Co., 147 F.Supp.2d 347, 354 (M.D. Pa. 2001). Each party bears the burden of establishing a lack of a genuine issue of material fact. Reinert v. Giorgio Foods, Inc., 15 F.Supp.2d 589, 593-94 (E.D. Pa. 1998). If there is "no genuine dispute over material facts, then we will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998).

We review a denial of benefits governed by ERISA "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L.Ed.2d 80, 95 (1989); Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1183 (3d Cir. 1991). This standard applies to both the plan administrator's factual findings and plan interpretations. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438 (3d Cir. 1997) (citing Luby, 944 F.2d at 1183-84). Under

15

this standard, we are not limited to the evidence before the administrator.  Luby, 944 F.2d at 1184-85.

However, if the plan does grant the administrator or fiduciary discretion to determine eligibility benefits, either implicitly or explicitly, Luby, 944 F.2d at 1180, we would employ an arbitrary and capricious standard of review.  Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

To determine which standard applies, we look to the terms of the plan to determine whether it affords any discretion to the plan administrator or fiduciary.  Luby, 944 F.2d at 1180. If the plan is unclear as to where discretion lies, then de novo review is the appropriate standard.  Sussex Auto Ctr., Inc. v. Optimum Choice, Inc., No. 99-376-GMS, 2001 WL 822329, at *2 (D. Del. July 20, 2001).

Although this standard of review is well-defined, its application is not necessarily simple.  Defendants have not produced evidence that the plan here grants discretion in the plan administrator and admit that the heightened standard of de novo review is appropriate.  Plaintiff also argues for the de novo standard of review.  Because on our review of the record before us, we find no explicit or clearly implicit discretion granted to the plan administrator, and because the parties are willing for us to review this case through the higher-threshold standard, de novo, we will do so.

16

IV.        <u>Discussion</u>

ERISA protects the interests of employee beneficiaries, ensuring that employee benefit plans inform participants of the terms and benefits of the plan.  <u>In re Unisys Corp. Retiree Med. Benefit ERISA Litig.</u>, 58 F.3d 896, 902 (3d Cir. 1995).  Employee welfare benefit plans, like the one involved here, are covered by ERISA.  <u>See</u> 29 U.S.C. § 1002(1),(3) (1999).

A. <u>Breach of Fiduciary Duties</u>

Plaintiff's breach of fiduciary duty claim is based upon 29 U.S.C. § 1132(a)(2).  (<u>See</u> Complaint at ¶¶ 21 & 23).  That section, in pertinent part, allows a cause of action to be brought by a participant or beneficiary against a fiduciary[2] for a breach of fiduciary duty under section 1109.  The United States Supreme Court has held that section 1109 provides relief for the entire plan, not for an individual participant.  <u>Massachusetts Mut. Life</u>

_____

[2]ERISA requires that at least one fiduciary be named in the plan.  29 U.S.C. § 1102(a)(1) (1999).  A fiduciary is defined as follows:

Except as provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 405(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

AO 72A

Ins. Co. v. Russell, 473 U.S. 134, 140-44, 105 S. Ct. 3085, 3089-91, 87 L.Ed.2d 96, 102-105(1985); see also McMahon v. McDowell, 794 F.2d 100, 109 (3d Cir. 1986).

In her complaint, Plaintiff seeks individualized relief in the form of "unliquidated damages and losses in excess of $75,000.00, representing past and ongoing LTD benefits, plus interest, attorneys' fees, and costs." (Amended Comp. at ¶ 23). Because Plaintiff is seeking relief individualized to her and not on behalf of the entire plan, she cannot succeed on this claim under § 1132(a)(2). Accordingly, we will grant summary judgment in favor of Defendants on this count.

### B. Termination of Plaintiff's Long-Term Disability Benefits

Plaintiff's second count is based upon 29 U.S.C. § 1132(a)(1)(B)[3] and section 1132(a)(3).[4] Section 1132(a)(1)(B) allows for a private cause of action to recover benefits due under a plan or to clarify rights to future benefits. Section

---

[3]Section 1132(a)(1)(B) provides:
A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

[4]Section 1132(a)(3) provides:
A civil action may be brought . . . by a participant, beneficiary or fiduciary . . . to obtain other appropriate equitable relief (i) to redress such violations [an act or practice in violation of the subchapter or the plan] (ii) to enforce any provisions of this subchapter or the terms of the plan.

18

1132(a)(3) allows, in pertinent part, a participant or beneficiary to obtain "other appropriate equitable relief."

Plaintiff argues for a reversal of the decision to terminate her disability benefits, contending that under the de novo standard of review, she has "provided uncontradicted proof of total disability," as defined by the policy. (Pl's Supp. Br., at p. 6). To the contrary, she has not submitted such proof to support her claim that she was totally disabled from performing any occupation, but neither have the defendants submitted proof that she was not totally disabled under the policy. Because neither party has met their summary-judgment burden in this respect, we will deny their motions.

The parties place great reliance on Dr. Wolf's report dated December 22, 1999, to support their respective arguments regarding Plaintiff's alleged disability. In fact, the report is essentially the only medical evidence upon which Plaintiff relies. While Plaintiff's claim was pending during reconsideration, she submitted the December 22, 1999 report which stated in pertinent part: "At this point, I do not feel that Mrs. Tesche is *employable* including these positions; telemarketer, customer service representative, motel night auditor and an automobile rental agent." (Def's Ex. A at CCC000156 (emphasis added)).

Plaintiff argues Dr. Wolf's statement equates to a conclusion that she was totally disabled, while the Defendants argue that Dr. Wolf meant that Plaintiff had the ability to return

19

to work with her restrictions/limitations but that in all likelihood no one would hire her.  Due to the conflicting interpretations of the report, without support on the record, we cannot grant summary judgment to either party as neither has met their burden of proof.[5]

Plaintiff further contends that although the written decision by Sauerhoff indicated that her decision was based on both vocational and medical findings, Sauerhoff testified at her deposition that her decision was solely based on vocational criteria.  We note that Plaintiff failed to submit the deposition testimony to which she refers.

Despite that failure, her argument would fail even if what she represents is true.  There is no dispute between the parties that Plaintiff suffered from some permanent restrictions and limitations.  What is in dispute, is whether those restrictions and limitations prevented her from performing an occupation for which she was qualified.  For this reason, the fact that Sauerhoff's decision may have turned on a vocational determination in no way necessitates a reversal of her decision.

To support her claim of total disability, Plaintiff also argues, unsuccessfully, that the Social Security Administration's award of disability benefits to her indicates that she was totally disabled for purposes of ERISA.  Social Security determinations

_____

[5] The parties did not depose Dr. Wolf.  This may have assisted in the resolution of this case.

20

are not binding on ERISA determinations, but may be used as a factor, among many. See, e.g., Dorsey v. Provident Life & Accident Ins. Co., 167 F.Supp.2d 846, 856 n.11 (E.D. Pa. 2001) (reviewed under the arbitrary and capricious standard); Pokol v. E.I. du Pont De Nemours & Co., Inc., 963 F.Supp. 1361, 1379 (D.N.J. 1997) (same) (quoting Burlison v. E.I. du Pont de Nemours & Co., No. 95-2076-D, slip op. at 15 (W.D. Tenn. May 14, 1996)). The mere fact that Plaintiff was awarded Social Security disability benefits alone does not necessitate a conclusion on our part that she is disabled under ERISA.

In her reply brief, Plaintiff states that the Social Security Administration's regulations "are virtually identical" to the criteria used by CNA to terminate benefits. (Pl's Reply Br., at p. 3). Based on the record before us, we disagree. See Mitchell v. Eastman Kodak Co., 910 F.Supp. 1044, 1054 (M.D. Pa. 1995) (noting that the disability standards under the ERISA plan before it and the Social Security Act differ). Under the de novo standard of review, we are required to make a determination based on our own interpretation of the terms of the plan. See Moore v. INA Ins. Co. of N.Y., 66 F.Supp.2d 378, 384 (E.D.N.Y. 1999).

In her brief, Plaintiff asserts that she is entitled to an award of retroactive benefits, plus interest, attorneys' fees, and costs. Because we are not granting summary judgment in her favor, she is not entitled to that relief at this time.

21

We will issue an appropriate order.

William W. Caldwell
United States District Judge

Date:  March 28, 2002

AO 72A
(Rev 8/82)