IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN D. TESCHÉ | : CIVIL ACTION |
| vs. | : |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : NO. 1:CV-01-0326<br>: **(William W. Caldwell, J.)** |

### DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL CASUALTY COMPANY'S PRETRIAL MEMORANDUM

Defendants CNA Insurance Companies and Continental Casualty Companies, by and through their counsel, Christie, Pabarue, Mortensen, and Young, A Professional Corporation herein submit and file their Pretrial Memorandum as follows:

**A.   Statement of Jurisdiction**

Since this matter involves a benefit claim under ERISA, jurisdiction is vested in this Court under and pursuant to 28 U.S.C. Section 1331 and 29 U.S.C. Section 1132(e)(1) (federal question), as well as under and pursuant to 28 U.S.C. Section 1332 (diversity of citizenship).

**B.   Summary of Facts and Liability Contentions**

This action involves a claim for the reinstatement of long term disability benefits under an ERISA plan. Plaintiff's former employer, AMP Incorporated, funded the long term disability component of its employee welfare benefit plan through the purchase of a group long term disability insurance policy from Continental Casualty Company. Defendants CNA Insurance Companies and

379268_1.DOC

Continental Casualty Company ("Continental") aver herein that Continental correctly determined that, after the expiration of the so-called own occupation period under the plan, plaintiff was not totally disabled from pursuing any occupation as defined in the plan and thus, was not entitled to further benefits under the plan.  The foundation for Continental's claim decision was that the medical evidence as to plaintiff's physical restrictions and limitations combined with her age, geographic location, past experience, and education demonstrated that plaintiff could indeed pursue several occupations.  In particular, a vocational evaluation conducted by Continental found that plaintiff could pursue sedentary jobs that gave her the flexibility to intermittently sit and stand, including working as a telemarketer, customer service representative, automobile agent, and/or motel night auditor.  Since there were jobs that plaintiff could pursue, even given her permanent physical impairments, she was not totally disabled from any occupation, the applicable standard for receipt of benefits under the ERISA plan.  Under ERISA, Continental is bound to enforce the terms of the plan and, since plaintiff no longer met the criteria necessary to receive benefits, Continental correctly terminated plaintiff's long term benefits as of October 30, 1999.

**C.     Statement of Undisputed Facts**

Continental adopts and incorporates herein its Motion for Summary Judgment and accompanying Memorandum of Law and Statement of Material Facts as though the same were set forth at length herein.

379268_1.DOC

D.   **Statement of Damages**

Assuming <u>arguendo</u> that plaintiff remains totally disabled and that no other income has been received by her for which Continental is entitled to an offset under the terms of the plan, plaintiff's monthly benefit would be $588.70. Theis monthly benefit amount, $588.70, represents $1,337.70, or 60 % of her salary prior to her disability, minus $749.00, which is the monthly benefit amount she receives from the Social Security Administration. Continental is entitled to offset this monthly benefit further by any retirement/pension benefit that has been received by plaintiff and for any monies received as lost earnings and wages as part of third party negligence lawsuit.

Continental reserves the right to file a petition for the payment of attorneys fees and costs incurred in defending this action as permitted under 29 U.S.C. Section 1132(g).

E.   **Witness List**

   1.   Cheryl Sauerhoff
        2599 Lucien Way
        Maitland, FL 32794

   2.   Laura Collins
        2599 Lucien Way
        Maitland, FL 32794

   3.   Tony Gulledge
        2599 Lucien Way
        Maitland, FL 32974

Ms. Sauerhoff, Ms. Collins, and Mr. Gulledge were involved in Continental's handling of plaintiff's claim for long term disability benefits and they

will testify, if called, as to their respective handling of this benefit claim as well as their training, education, and experience in handling disability claims in general.

Defendants reserve the right to call those witnesses listed by plaintiff on her Witness List, to supplement this list as required before trial, and to call rebuttal witnesses as required.

**F.    Summary of Expert Witness Testimony**

Continental will not present any expert witness at trial.

**G.    Special Comments about Pleadings and Discovery**

None.

**H.    Summary of Legal Issues Involved and Citation to Authority**

1.    Plaintiff bears the burden of proof in establishing that she is entitled to benefits under an ERISA plan.

2.    This Court's evaluation of Continental's claim determination is <u>de novo</u> since the plan does not grant discretion to Continental to make benefit determinations. <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437-8 (3rd Cir. 1997).

3.    Continental's claim determination, predicated on a vocational review and the medical records, was correct as this evidence of record established that plaintiff had the capability to perform several occupations as of October 30, 1999. See <u>Rendulic v. Kaiser Aluminum & Chemical Corp.</u>, 166 F. Supp. 2d 326 (W.D. Pa. 2001) and <u>Ernest v. Plan Adm'r. of Textron Insured Ben. Plan</u>, 124 F. Supp 2d 884 (M.D. Pa. 2000).

4. Plaintiff was not totally disabled, that is she was not "continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience" as of October 30, 1999 and, thus, she no longer met the express requirement of the plan for the receipt of long term disability benefits.

5. Continental, as an ERISA fiduciary, was required to enforce the express terms of the plan and terminate plaintiff's long term disability benefits at the any occupation period starting on October 30, 1999.

I. **Stipulations Desired**

The parties will stipulate as to the authentication and admission of the administrative record, that is Continental's claim file for plaintiff's long term disability claim. In addition, the parties will stipulate that the sole, proper defendant is Continental Casualty Company which company issued the long term disability policy at issue.

J. **Estimated Number of Trial Days**

1-2 days.

K. **Other Pertinent Matters**

Plaintiff has scheduled the deposition of a treating physician, Steven B. Wolf, M.D., for Thursday, August 8, 2002.

L. **Schedule of Exhibits**

    A. Continental's Claim File for Plaintiff's Claim for Long Term Disability Benefits, in relevant part, bates numbered CCC00011-000276;

    B. Continental's Group Long Term Disability Policy issued to AMP Incorporated, policy number SR8309679

Defendants reserve the right to revise utilize those exhibits listed by plaintiff in her Exhibit list to supplement this list as required before trial, and to use other documents in rebuttal as required.

**M.    Special Verdict Questions**

None, since this case does not involve a jury trial.

**N.    Defense Statement regarding Local Rule 16.2**

See attached at Tab A.

**O.    Certificate pursuant to Local Rule 30.10**

See plaintiff's Pretrial Memorandum.

**P.    Proposed Findings of Fact. Conclusion of Law, and Memorandum pursuant to Local Rule 48.2**

Continental adopts and incorporates herein its Motion for Summary Judgment and accompanying Memorandum of Law and Statement of Material Facts as though the same was set forth at length herein. As to proposed conclusions of law, see section H above. A combination of the Statement of Material Facts submitted with Continental's Motion for Summary Judgment and section H above is attached hereto at Tab B for the Court's convenience.

379268_1.DOC

Continental reserves the right to revise and/or supplement this Pretrial Memorandum as required before and at trial and, in particular, to address the deposition testimony of Steven B. Wolf, M.D.

**Respectfully submitted,**

**CHRISTIE, PABARUE, MORTENSEN AND YOUNG**
**A Professional Corporation**

BY: _____
Michael J. Burns, Esquire
Atty. Identification #: 62088
1880 JFK Boulevard, 10th Floor
Philadelphia, Pa 19103
(215) 587-1600
(215) 587-1699 (facsimile)
mjburns@cpmy.com
Attorney for Defendants
CNA Insurance Companies and
Continental Casualty Company

Dated: 5/15/02

379268_1.DOC

A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN D. TESCHÉ | : CIVIL ACTION |
| vs. | : |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : NO. 1:CV-01-0326<br>: **(William W. Caldwell, J.)** |

**LOCAL RULE 16.2 STATEMENT**

The undersigned counsel for the defendants herein certifies that Holly C. Fenlon, the representative of defendants with settlement authority, has been notified of the requirement of Local Rule 16.2 and possible sanctions thereunder.

CHRISTIE, PABARUE, MORTENSEN AND
YOUNG, A Professional Corporation

BY: _____
Michael J. Burns, Esquire
Atty. Identification #: 62088
1880 JFK Boulevard, 10th Floor
Philadelphia, Pa 19103
(215) 587-1600
(215) 587-1699 (facsimile)
mjburns@cpmy.com

Attorney for Defendants
CNA Insurance Companies and
Continental Casualty Company

Dated: 5/15/02

379268_1.DOC

B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN D. TESCHE | : | CIVIL ACTION |
| vs. | : | |
| CNA INSURANCE COMPANIES and<br>CONTINENTAL CASUALTY COMPANY | : | NO. 1:CV-01-0326<br>(William W. Caldwell, J.) |

**DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL CASUALTY COMPANY'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### A. PROPOSED FINDINGS OF FACT

1. Plaintiff's former employer, AMP Incorporated funded the long term disability component of its employee welfare benefits plan through the purchase of a group long term disability insurance policy (hereinafter "plan") from Continental Casualty Company (not CNA Insurance Companies)(hereinafter "Continental"). See Exhibit B.

2. The plan defined "Total Disability" as follows: ...during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is: Continuously unable to perform the substantial and material duties of the regular occupation; Under the regular care of a licensed physician other than the insured Employee; and Not gainfully employed in any occupation for which you are or become qualified by education, training or experience. After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is: Continuously unable to engaged in any occupation of which he is or becomes qualified

365687_1.DOC

1

by education, training or experience; and Under the regular care of a licensed physician other than himself. Exhibit B at Definitions section, p. 3.

3.  Continental found plaintiff to be Totally Disabled from performing the duties of her own occupation as an S&P Analyst and paid her benefits for two (2) years in accordance with the express terms of the plan. See e.g., Exhibit A CCC000118 and CCC000262.[1]

4.  Plaintiff's claim for long term disability benefits is predicated upon a chronic low back problem.  Exhibit A CCC000270

5.  In order to assess plaintiff's disability status, Continental periodically sought and obtained information from plaintiff's treating physicians as to her medical condition and, in particular, her physical limitations and restrictions.  See, Exhibit A at CCC000130-1 and CCC000142-151.

6.  In March 1999, Continental contacted plaintiff's family physician Morton J. Rubenstein, M.D. to secure his opinion as to plaintiff's physical restrictions and limitations. Exhibit A CCC000144 (3/10/1999 entry).

7.  Dr. Rubenstein provided the following opinions:
    What are the current limitations that prevent return to the patient's own job?
    Standing: ½ - 1 consecutively hr/day
    Walking: 3 hr/day

Sitting: ½ consecutively hr/day

Lifting:      10-20 pounds

Carrying:   10-20 pounds

Is Ms. Tesche at MMI? Are the limits temporary or Permanent? <u>Not Known</u>

***Objective findings MUST BE PROVIDED to support any limitations given. <u>The above are the patients self-described limitations. If confirmation is required, suggest independent medical examination by physiatrist or orthopedic surgeon.</u> Exhibit A CCC000185.

8.   Plaintiff also advised Continental to secure medical information from her treating orthopedic surgeon, Steven Wolf, M.D. Exhibit A CCC000195.

9.   In May 1999, Continental after several requests received an updated report from plaintiff's treating orthopedic surgeon, Steven B. Wolf, M.D., which report included an assessment of plaintiff's limitations and restrictions. See Exhibit A CCC000183-184 and CCC000189-190.

10.  Dr. Wolf responded to questions posed by Continental's Nurse Case Manager Holly Henry, R.N. as follows:

What are Ms. Tesche's current restrictions and limitations in regards to:

Sitting: ½ hour at a time;   Standing: ½ hour at a time;

Lifting: 5-10 pounds;   Walking: 15 minutes;

Bending/Squatting/Crawling: 0

Are these restrictions permanent or temporary? If temporary, when do you expect them to change? Permanent

What objective findings support these limitations?

FABER on left, groin pain, and SI joint pain at shot gun maneuver.

Is Ms. Tesche medically stable at this time? If not, when do you expect this to occur and what is the treatment plan.

She seems to be worsening.

What is the prognosis for a return to her occupation?

Poor.

Exhibit A CCC000184.


11. The information provided by Dr. Wolf was reviewed and evaluated by a Nurse Holly Henry. Exhibit A CCC000143 (5/26/99 entry).

12. On June 2, 1999, Nurse Henry and the disability specialist assigned to the file, Laura Collins, conferred and reviewed the information on the file to evaluate plaintiff's disability status. Exhibit A CCC000130 [6/2/99 entry – "received permanent restrictions from AP (attending physician). Conf. (conference) with NCM (nurse case manager). Will send file for Voc. (vocational) asses. (assessment)."].

13. Nurse Henry concluded that the medical information established that plaintiff was disabled from her own occupation. Exhibit A CCC000142.

14. A vocational evaluation was conducted by Continental to examine plaintiff's disability status. Exhibit A CCC000130 and CCC000142.

15. On June 9, 1999, Tony Gulledge conducted a vocational evaluation as to plaintiff's claim for benefits. Exhibit A CCC000141.

16. Mr. Gulledge contacted plaintiff and noted as follows in the administrative record:

> Claimant Contact: 717-469-1151. I spoke with Ms. Teshe today and discussed the requirement of her Own OCC as S&P Analyst. Because Ms. Teshe did not have flexibility to stand as needed she was unable to return work in that occupation. We discussed other sedentary job which offer a sit/stand variety which Ms. Teshe should be capable of with her currently limitations. These would include Telemarketer, Customer Service Rep., Motel Night Auditor, and Automobile Rental Agent. Ms. Teshe noted that she had considered returning to work in other home business.

Id.

17. Based upon his review of the file, his discussion with plaintiff, and his experience as a vocational specialist, Mr. Gulledge concluded that plaintiff had the ability to perform sedentary work of the "sit/stand variety" with her current limitations. Id.

18. Mr. Gulledge documented his impression/recommendation in the record as follows:

> Given Ms. Tesche's age, educational level, work experience, geographical location, and current functional capabilities the entry level trainable job options described above would appear appropriate. File plan: DBS will pay through the Own Occ period and close file. If you have any questions concerning this file plan, please give me a call at ext. 5391.

Id.

19. Based upon the vocational review and the information contained in the claim file, Continental concluded that plaintiff was disabled from performing her own occupation but was not totally disabled from performing any occupation. Exhibit A CCC000130 (6/9/99 entry).

20. By letter dated July 26, 1999, Continental advised plaintiff that it found her to be disabled from her own occupation and that it would pay benefits for the twenty four (24) month own occupation period under the plan. Exhibit A CCC000182.

21. Continental also advised plaintiff by letter dated July 26, 1999 that it did not find her to be disabled from pursuing other occupations stating:

> Based on your limitations and restrictions, you continue to remain disabled from your regular occupation. However, with consideration of your education, training and experience, you are not disabled from other occupations and are not entitled to benefits beyond 24 months (10/30/1999.) We had your claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities.

Id.

22. Continental further delineated its position in a letter dated October 7, 1999 that responded to a letter from counsel retained by plaintiff. Exhibit A CCC000176-7.

23. Continental's disability specialist Laura Collins explained in the October 7, 1999 letter as follows:

> Based on medical information in our file, Ms. Tesche is unable to perform the duties of her occupation as S&P Analyst Assistant which required her to sit 7 hours per day. Information from Steven B. Wolf, M.D. indicates Ms. Tesche is able to sit

for ½ hour at a time, stand ½ hour at a time, lift 5 to 10 pounds, walk 15 minutes at a t time. He notes these are permanent restrictions. With consideration of her education, training and experience, she is not dibbled from other occupations and is not entitled to benefits beyond 24 months (10/30/1999). We had her claim reviewed by a vocational specialist who identified the jobs of Telemarketer, Customer Service Representative, Motel Night Auditor, and Automobile Rental Agent as potential employment opportunities. Id. In this same letter, Continental advised plaintiff of her right to appeal the claim determination under ERISA.

Id.

24. Plaintiff, through counsel, appealed Continental's decision. Exhibit A CCC000135; see also, Exhibit A CCC000129.

25. In the interim, plaintiff through her counsel submitted an updated report from Dr. Wolf dated December 22, 1999, which was the only document submitted by plaintiff to support her appeal. Exhibit A CCC000138-40.

26. The opinions expressed in Dr. Wolf's December 22, 1991 report were based upon his exam in May 1999 as he had not seen or evaluated the plaintiff since that time. Exhibit A CCC000139-40.

27. While Dr. Wolf opined that plaintiff could not perform her prior occupation in his December 22, 1999, he did not opine that plaintiff was disabled from performing any occupation. Id.

28. Indeed, he did not render any opinion as to plaintiff's ability to pursue any occupation but only limited his comments to a statement that plaintiff was not "employable" at the jobs identified in the vocational evaluation. Id.

29. After Ms. Collins evaluated the new medical information from Dr. Wolf and concluded that "no change in decision" was warranted, this matter was assigned to Cheryl Sauerhoff, a member of Continental's Appeal Committee, for an independent review and evaluation. Exhibit A CCC000129 (1/3/2000 entries).

30. In a letter dated February 21, 2000, Ms. Sauerhoff informed plaintiff's counsel that "[A] comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits." Exhibit A CCC000118-9.

31. In her letter affirming the benefit termination, Ms. Sauerhoff outlined the significant medical evidence and explained the foundation for her conclusion to uphold the benefit termination at the any occupation standard. Id.

32. In particular, Ms. Sauerhoff found that the medical restrictions and limitations imposed by plaintiff's treating physicians was consistent with a "not less than sedentary" physical demand level. Id.

33. Ms Sauerhoff explained the foundation for the affirmance of the benefit termination as follows:

> The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to new hour, sitting or one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman. Dr. Wolf was requested to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the occupations described would not be options for the claimant but does not state why. There is no detail of any functional impairment or any information relating to the claimant's inability's to perform her activities of daily living. While we appreciate Dr. Wolf's opinion, the any occupation determination is a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education.

Id.

34. Plaintiff did not provide a report from a vocational expert to Continental at anytime to support her claim that she was disabled from any occupation as defined in the plan. See Exhibit A.

### B. PROPOSED CONCLUSIONS OF LAW

1. Plaintiff bears the burden of proof in establishing that she is entitled to benefits under an ERISA plan.

2.  This Court's evaluation of Continental's claim determination is <u>de novo</u> since the plan does not grant discretion to Continental to make benefit determinations. <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437-8 (3rd Cir. 1997).

3.  Continental's claim determination, predicated on a vocational review and the medical records, was correct as this evidence of record established that plaintiff had the capability to perform several occupations as of October 30, 1999. <u>See</u> <u>Rendulic v. Kaiser Aluminum & Chemical Corp.</u>, 166 F. Supp. 2d 326 (W.D. Pa. 2001) and <u>Ernest v. Plan Adm'r. of Textron Insured Ben. Plan</u>, 124 F. Supp 2d 884 (M.D. Pa. 2000).

4.  Plaintiff was not totally disabled, that is she was not "continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience" as of October 30, 1999 and, thus, she no longer met the express requirement of the plan for the receipt of long term disability benefits.

5.  Continental, as an ERISA fiduciary, was required to enforce the express terms of the plan and terminate plaintiff's long term disability benefits at the any occupation period starting on October 30, 1999.

Christie, Pabarue, Mortensen & Young
A Professional Corporation

BY: _____
Michael J. Burns, Esquire
1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
215-587-1600

Dated: 5/15/02

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I served a true and correct copy of Defendants CNA Insurance Companies and Continental Casualty Company's Pretrial Memorandum upon all other parties to this action by depositing a copy, postage pre-paid in the United States mail, addressed as followed:

>Bradford Dorrance, Esquire
>**Keefer Wood Allen & Rahal, LLP**
>210 Walnut Street
>P.O. Box 11963
>Harrisburg, PA 17108-1963

DATE: 5/15/02

MICHAEL J. BURNS, ESQUIRE

379268_1.DOC