IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                    :
                                   : Civil Action No. 1:CV-01-0326
           Plaintiff               :
   v.                              :
                                   :
CNA INSURANCE COMPANIES, and       :
CONTINENTAL CASUALTY COMPANY,      :
                                   :
           Defendants              : (Judge Caldwell)

**BRADFORD DORRANCE'S AFFIDAVIT IN OPPOSITION TO
DEFENDANTS' MOTION TO PRECLUDE EXPERT TESTIMONY**

   I, the undersigned, hereby answer and oppose defendants' motion to preclude expert testimony and swear and affirm as follows:

   1.  At all material times, I have served as counsel for plaintiff, Joan D. Tesché.

   2.  By letter dated February 21, 2000, Cheryl Sauerhoff, a member of defendant's Appeals Committee, rendered a final administrative decision on Mrs. Tesché's claim for reinstatement of long-term disability benefits.  Attached as Exhibit "A" is a copy of Ms. Sauerhoff's February 21, 2000 decision.  See also Defendant's Trial Exhibit A at CCC000133.

3. Defendant's decision was based, in part, on the vocational opinion of its Disability Specialist, Tony Gulledge, who opined that Mrs. Tesché was capable of performing certain sedentary positions. Attached as Exhibit "B" is a copy of Mr. Gulledge's June 9, 1999 Any OCC Assessment. See also Defendant's Trial Exhibit A at CCC000141.

4. On May 16, 2002, plaintiff filed a pretrial memorandum listing defendant's Disability Specialist, Tony Gulledge, as a witness.

5. Plaintiff's pretrial memorandum further stated that Mr. Gulledge "...may be asked vocational questions at trial (if the parties do not stipulate to the applicable vocational criteria)." Plaintiff's Pretrial Memorandum, Section F (Summary of Expert's Testimony), at p.5.

6. On or about May 16, 2002, defendant filed a pretrial memorandum listing its witnesses, including Ms. Sauerhoff and Mr. Gulledge.

7. In its pretrial memorandum, defendant specifically confirmed that: "Ms. Sauerhoff...and Mr. Gulledge were involved in Continental's handling of plaintiff's claim for long term disability benefits and they will testify, if called, as to their respective handling of this benefit claim as well as their

2

training, education, and experience in handling disability claims in general." Defendants' Pretrial Memorandum at pp. 3-4.

  8. By letter dated May 16, 2002, plaintiff's undersigned attorney, Bradford Dorrance, reminded defendants' attorney, Michael Burns, that plaintiff had identified defendant's Disability Specialist, Mr. Gulledge, as a witness for trial. Mr. Dorrance's letter further suggested that, in lieu of Mr. Gulledge's attendance at trial, counsel should explore a possible stipulation as to the vocational criteria used by Mr. Gulledge in making his vocational determination. Such letter further requested a copy of Mr. Gulledge's curriculum vitae and inquired whether it would be necessary to subpoena Mr. Gulledge for trial. Attached as Exhibit "C" is a copy of Mr. Dorrance's May 16, 2002 letter.

  9. On or about June 4, 2002, Mr. Dorrance called Mr. Burns and inquired about the parties' possible stipulation and the possible need for Mr. Gulledge's testimony at trial. In response, Mr. Burns informed Mr. Dorrance for the <u>first</u> time that Mr. Gulledge was no longer employed by defendant. However, in response to Mr. Dorrance's questions, Mr. Burns stated that:

  (a) he would promptly provide defendant's position concerning the possible vocational stipulation; and

(b)  he would promptly inform Mr. Dorrance whether Mr. Gulledge's vocational testimony could be provided by another employee of defendant.

10.  By letter dated June 21, 2002, and directed to Mr. Burns, Mr. Dorrance confirmed counsel's prior discussions about the parties' possibly stipulating to certain well-settled vocational principles.  Such letter further notified Mr. Burns that plaintiff would need to schedule the deposition of a vocational expert if the parties were unable to enter into an appropriate stipulation.  Attached as Exhibit "D" is a copy of Mr. Dorrance's June 21, 2002 letter.

11.  After sending his June 21, 2002 letter, Mr. Dorrance left at least one message on Mr. Burns's voice mail, indicating that plaintiff would need to depose an expert witness (in the absence of any stipulation and in view of Mr. Gulledge's unavailability for trial).  In his message, Mr. Dorrance further confirmed the proposed date and time of the trial deposition of plaintiff's vocational expert, Mark Lukas, Ed. D.

12.  By letter dated July 22, 2002, Mr. Dorrance provided Mr. Burns with a notice scheduling the telephonic deposition of Dr. Lukas for August 8, 2002.  Mr. Dorrance also

4

enclosed Dr. Lukas's curriculum vitae. Attached as Exhibit "E" is a copy of Mr. Dorrance's July 22, 2002 letter.

13. On August 6, 2002, Mr. Dorrance received Dr. Lukas's August 6, 2002 report. Attached as Exhibit "F" is a copy of Dr. Lukas's August 6, 2002 report, which Mr. Dorrance faxed to Mr. Burns on August 6, 2002.

14. During the August 9, 2002 trial, Cheryl Sauerhoff, a member of defendant's Appeals Committee, testified that defendant's Disability Specialist, Tony Gulledge, had left the company approximately two years ago. Ms. Sauerhoff further testified that defendant continues to employ numerous Disability Specialists.

15. The facts set forth herein are based on my personal knowledge, and the documents attached hereto are true and correct.

_____
Bradford Dorrance

Sworn to and subscribed before me this 10th day of September, 2002.

_____
Notary

5

NOTARIAL SEAL
PAMELA S. WOLFE, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires Dec. 22, 2003

# CNA GROUP BENEFITS

Group Disability-Claim Administration
PO Box 946710 Maitland FL 32794-6710

**Cheryl Sauerhoff**
Claims Consultant
Telephone 1-800-303-9744 x 6343

February 21, 2000

Steven Courtney
Metzger, Wickersham, Knauss & Erb, PC
3211 North Front St.
PO Box 5300
Harrisburg, PA 17110-0300

Claimant: Joan Tesche

Claim No: 94-34900P1702
Policy No: 0083089679

Dear Mr. Courtney:

The Long-Term Disability clam of the above-mentioned claimant has been referred to Appeals pursuant to the receipt of your letter. A comprehensive review of the file has been completed and the results of the review do not alter the Company's original decision to terminate benefits.

*The Long Term Disability Policy indicates that during the 180-day elimination period and the 24-month Employee Occupation period, the Insured Employee, because of Injury or Sickness is:*

- *Continuously unable to perform the substantial and material duties of the regular occupation;*
- *Under the regular care of a licensed physician other than the Insured Employee; and*
- *Not gainfully employed in any occupation for which you are or become qualified by education, training or experience.*

After the Monthly Benefit has been payable for the Insured Employee Occupation period of 24 months, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

- *Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and*
- *Under the regular care of a licensed physician other than himself.*

The date of loss was **5/3/97**. The attending physician statement was completed by Dr. Rubenstein dated 9/19/97 for a diagnosis of "chronic back pain". Ms. Tesche's occupation is noted as systems procedure analyst. The noted restrictions are cannot perform heavy lifting, climbing, bending and tolerates prolonged sitting poorly.

The claimant was found to be disabled from her occupation and paid benefits for the 24 month own occupation period commencing after the 180-day elimination period. Based on the claimant's age, experience, geographic location, salary, education and the medical restrictions given by the treating physician, it was determined that the claimant was not totally disabled from any occupation. Those occupations were detailed in the 10/7/99 letter and will not be revisited at this time.

Exhibit "A"

Policy No: 0083089679                                    -2-

All information has been reviewed and indicated that the claimant is not less than sedentary in the physical demand level for occupational work. The medical documentation does not reflect this level of severity.

The information submitted by Dr. Rubenstein does not support a less than sedentary status, whether in 1999 or previous to this time. Dr. Rubenstein's records, in particular, dated 1997 and 4/17/98 state that the claimant is actively searching for work within her physical limitations. His rendition of the claimant's physical capacity to perform shows standing up to one hour, sitting for one half hour, lifting and carrying 10-20 pounds, and walking for 3 hours per day. He claims that these limitations are "the patient's self-prescribed limitations". In 8/1997, the claimant was considered able to perform at a modified light medium physical capacity level by a physical therapist and Dr. Hartman.

Dr. Wolf was requested to give permanent restrictions for the claimant and on 5/11/99 he states that the claimant can sit and stand for one half hour at a time, lift 5 to 10 pounds, walk for 15 minutes and no bending, crawling, squatting. The claimant states that she could not perform her own occupation due to the prolonged sitting and after discussing this with the claimant, the vocational experts detailed occupations that would give the claimant the versatility to move about freely as she needs and are within the permanent restrictions outlined by Dr. Wolf. Dr. Wolf states that she could not return to her own occupation. The letter dated 12/22/99 from Dr. Wolf states that he feels that the occupations described would not be options for the claimant but does not state why. There is no detail of any functional impairment or any information relating to the claimant's inabilities to perform her activities of daily living.

While we appreciate Dr. Wolf's opinion, the any occupation determination is a vocational determination based on the claimant's permanent medical restrictions, geographic location, economic parity, age, experience, and education.

Therefore, based on the information contained within your claim file, we find that the decision to terminate benefits was correct and proper. You have exhausted your administrative remedies at this time and this decision is final and binding.

Sincerely,


Cheryl Sauerhoff
Appeals Committee Member

 **Case Management Database**                                  *Claim Activity*

Claim Nbr 94-34900    Occurrence: 1    Claimant Tesche, Joan D

Activity Type: **Any Occ Assessment**                    Activity Date:    **6/9/1999**
Performed by: **Tony Gulledge**                          Activity Duration **30 Minutes**

Notes TO:    Laura Collins

RE:    Joan D. Teshe

CLAIM #: 94-34900

OWN OCC ENDS: 10/30/99

EDUCATION:   High School Graduate + AA degree.

WORK EXPERIENCE: 5/88 to 5/97: AMP Occ: S&P Analyst
Prior Work History: Hospital Admissions Clerk.

CLAIMANT CONTACT: 717-469-1151.   I spoke with Ms. Tesche today and discussed the requirement of her Own Occ as S&P Analyst.  Because Ms. Teshe did not have flexibility to stand as needed she was unable to return work in that occupation.  We discussed other sedentary job which offer a sit/stand variety which Ms. Teshe should be capable of with her current limitations.  These would include Teleamarketer, Customer Service Rep., Motel Night Auditor, and Automobile Rental Agent.  Ms. Tesche noted that she had considered returning to work in other home businesses.

IMPRESSIONS/RECOMMENDATIONS:  Given Ms Teshe's age, educational level, work experience, geographical location, and current functional capabilities the entry level trainable job options described above would appear appropriate.   File plan: DBS will pay through the Own Occ period and close file. .  If you have any questions concerning this file plan, please give me a call at ext. 5391.

Printed by Tony Gulledge, 6/9/1999 4:01PM                                        Page 1 of 1

Exhibit "B"

HEATH L. ALLEN
N. DAVID RAHAL
CHARLES W. RUBENDALL II
ROBERT L. WELDON
EUGENE E. PEPINSKY, JR.
JOHN H. ENOS III
GARY E. FRENCH
DONNA S. WELDON
BRADFORD DORRANCE
JEFFREY S. STOKES
ROBERT R. CHURCH
STEPHEN L. GROSE
R. SCOTT SHEARER
WAYNE M. PECHT
ELYSE E. ROGERS
DONALD M. LEWIS III
BRIDGET M. WHITLEY
CRAIG A. LONGYEAR
JOHN A. FEICHTEL
ANN MCGEE CARBON
ELIZABETH J. GOLDSTEIN
BARBARA A. GALL

KEEFER WOOD ALLEN & RAHAL, LLP
210 WALNUT STREET
P. O. BOX 11963
HARRISBURG, PA 17108-1963

PHONE (717) 255-8000
FAX (717) 255-8050

EIN No. 23-0716135

ESTABLISHED IN 1878

OF COUNSEL:
SAMUEL C. HARRY

WEST SHORE OFFICE:
415 FALLOWFIELD ROAD
CAMP HILL, PA 17011
(717) 612-5800

WRITER'S DIRECT DIAL:

May 16, 2002

(717) 255-8014

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA 19103-7424

    Re: Joan Tesché v. CNA Insurance Companies, etc.
         U.S. Dist. Ct., Mid. Dist. of PA, No. 1:CV-01-0326

Dear Mike:

    In response to your May 15 letter, I enclose a copy of Cheryl Sauerhoff's deposition transcript, together with exhibits. If appropriate, please forward a check made payable to our firm in the amount of $13.32, representing reimbursement of our copying costs.

    In answer to your question, you may contact Dr. Wolf's office and arrange a convenient date on which to review his chart. I would be happy to provide you and Dr. Wolf with any necessary authorization. I may elect to be in attendance while you review the chart, in part because I also want to be aware of its contents. I suggest that you review the chart a few days or weeks before the deposition, because Dr. Wolf may be receiving additional diagnostic reports and tests over the next four months.

    We should discuss our clients' anticipated testimony at trial. One question is whether some of the information from Cheryl Sauerhoff's deposition can be reduced to a stipulation or can be provided in summary manner during her testimony. I

Exhibit "C"

Michael J. Burns, Esquire
May 16, 2002
Page 2


believe Judge Caldwell will expect rather abbreviated testimony from the parties.

Enclosed is a copy of my pre-trial memorandum. You will note that I have identified Tony Gulledge, the Disability Specialist, as a potential witness. In lieu of Tony's attendance at trial, we should explore whether we can stipulate to the vocational criteria used by him in making his vocational determination. I would like a copy of Tony's CV. Please let me know whether I need to subpoena Tony and his CV.

I suggest that we schedule another telephone conference call to discuss further stipulations, to identify trial exhibits, and to streamline the testimony at trial. Thank you.

Sincerely,

KEEFER WOOD ALLEN & RAHAL, LLP


By:
Bradford Dorrance

BD/ral

enclosures

cc:   Mrs. Joan Tesché (w/enclosure)

| | | |
|---|---|---|
| HEATH L. ALLEN<br>N. DAVID RAHAL<br>CHARLES W. RUBENDALL II<br>ROBERT L. WELDON<br>EUGENE E. PEPINSKY, JR.<br>JOHN H. ENOS III<br>GARY E. FRENCH<br>DONNA S. WELDON<br>BRADFORD DORRANCE<br>JEFFREY S. STOKES<br>ROBERT R. CHURCH<br>STEPHEN L. GROSE<br>R. SCOTT SHEARER<br>WAYNE M. PECHT<br>ELYSE E. ROGERS<br>DONALD M. LEWIS III<br>BRIDGET M. WHITLEY<br>CRAIG A. LONGYEAR<br>JOHN A. FEICHTEL<br>ANN MCGEE CARBON<br>ELIZABETH J. GOLDSTEIN<br>BARBARA A. GALL | KEEFER WOOD ALLEN & RAHAL, LLP<br>210 WALNUT STREET<br>P. O. BOX 11963<br>HARRISBURG, PA 17108-1963<br>PHONE (717) 255-8000<br>FAX (717) 255-8050<br>EIN No. 23-0716135 | ESTABLISHED IN 1878<br><br>OF COUNSEL:<br>SAMUEL C. HARRY<br><br>WEST SHORE OFFICE:<br>415 FALLOWFIELD ROAD<br>CAMP HILL, PA 17011<br>(717) 612-5800<br><br>WRITER'S DIRECT DIAL: |

June 21, 2002

(717) 255-8014



Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA 19103-7424

    Re:  Joan Tesché v. CNA Insurance Companies, etc.
         U.S. Dist. Ct., Mid. Dist. of PA, No. 1:CV-01-0326

Dear Michael:

    As we discussed on a few occasions during the past several weeks, I need to know whether your client will stipulate to certain well-settled vocational principles, including the threshold test for determining whether a claimant is disabled: Whether the claimant is able to perform sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours per day during a five-day work week. If CNA is not willing to stipulate to this settled principle, I will need to schedule the deposition of a vocational expert. Please promptly advise me of CNA's position. Thank you.

                                  Sincerely,

                                  KEEFER WOOD ALLEN & RAHAL, LLP

                                By:
                                    Bradford Dorrance

BD/ral
cc:  Mrs. Joan Tesché



Exhibit "D"

| | | |
|---|---|---|
| HEATH L. ALLEN<br>N. DAVID RAHAL<br>CHARLES W. RUBENDALL II<br>ROBERT L. WELDON<br>EUGENE E. PEPINSKY, JR.<br>JOHN H. ENOS III<br>GARY E. FRENCH<br>DONNA S. WELDON<br>BRADFORD DORRANCE<br>JEFFREY S. STOKES<br>ROBERT R. CHURCH<br>STEPHEN L. GROSE<br>R. SCOTT SHEARER<br>WAYNE M. PECHT<br>ELYSE E. ROGERS<br>DONALD M. LEWIS III<br>BRIDGET M. WHITLEY<br>CRAIG A. LONGYEAR<br>JOHN A. FEICHTEL<br>ANN MCGEE CARBON<br>ELIZABETH J. GOLDSTEIN<br>BARBARA A. GALL | **KEEFER WOOD ALLEN & RAHAL, LLP**<br>210 WALNUT STREET<br>P. O. BOX 11963<br>HARRISBURG, PA 17108-1963<br><br>PHONE (717) 255-8000<br>FAX (717) 255-8050<br><br>EIN No. 23-0716135<br><br>July 22, 2002 | ESTABLISHED IN 1878<br><br>OF COUNSEL:<br>SAMUEL C. HARRY<br><br>WEST SHORE OFFICE:<br>415 FALLOWFIELD ROAD<br>CAMP HILL, PA 17011<br>(717) 612-5800<br><br>WRITER'S DIRECT DIAL:<br><br>(717) 255-8014 |

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA 19103-7424

    Re: Joan Tesché v. CNA Insurance Companies, etc.
        U.S. Dist. Ct., Mid. Dist. of PA, No. 1:CV-01-0326

Dear Michael:

    As a follow-up to my previous letters and more recent voice mails, I enclose a notice scheduling the telephonic deposition of plaintiff's vocational expert, Mark Lukas, Ed. D., for 11:30 a.m. on August 8, 2002. Enclosed is Dr. Lukas's CV. Dr. Lukas shall prepare a brief report setting forth certain vocational principles. I will provide that report to you as soon as I receive it. Please call me if you have any questions. Thank you.

                            Sincerely,

                            KEEFER WOOD ALLEN & RAHAL, LLP

                            By:
                            Bradford Dorrance

BD/ral

enclosures

cc: Mrs. Joan Tesché

                        Exhibit "E"

08/06/2002  13:18   610565⬤        6105657380        MARK LUKAS ED⬤                    PAGE  01

# MARK LUKAS, ED.D.
### VOCATIONAL & EVALUATION SERVICES

25 WEST THIRD STREET
MEDIA, PENNSYLVANIA 19063-2803

EVALUATIONS
TESTING
COUNSELING

610-565-7466
FAX: 610-565-7380
EMAIL: drlukas@enter.net

August 6, 2002

Bradford Dorrance, Esquire
Keefer, Wood, Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, Pennsylvania 17108-1963

Re: Joan Tesche

Dear Mr. Dorrance:

In response to your request, I have reviewed the documents you provided which included the following: Letter from Laura Collins, HIA, CNA Group Benefits, dated October 7, 1999, including job descriptions; Joan Tesche's Affidavit in Support of Her Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, dated January 28, 2002; and oral deposition transcript of Joan D. Tesche, dated October 4, 2001.

It should be noted, in the materials reviewed, that there is some indication of limited work capability offered by Steven B. Wolf, M.D. Additionally, in her affidavit, Ms. Tesche identified that she continues with chronic pain and failed back syndrome. Ms. Tesche indicated that her condition is of a severity as to require her to lie down an average of 2 to 4 hours per day and on some days, she is unable to perform any physical activities and must lie in bed for most of the day. There are also references to a constellation of symptomatology surrounding her chronic pain including problems with concentration, memory and fatigue.

In consideration of the restrictions and types of limitations reported by Ms. Tesche in her affidavit, clearly, her capabilities are below the threshold necessary for participation in competitive employment. This includes factors such as consistency and regularity in attendance and punctuality, an ability to meet reasonable productivity standards and a capability to interact effectively with co-workers, supervisors, the general public, etc., and to do so on a sustained basis. It is evident, in recognition of the limitations identified by Ms.

08/06/2002  13:18   610565        6105657380           MARK LUKAS ED                PAGE  02

Bradford Dorrance, Esquire
Page 2
Joan Tesche

Tesche, including the need to lie down periodically throughout the course of a work day, that her limitations would simply not allow her to participate within the customary parameters of competitive employment as previously described.

Thank you for providing the opportunity to provide a vocational comment in regard to Joan Tesche. I would be most pleased to review any additional documents should they become available which may have some bearing upon the opinions and conclusions expressed herein.

Sincerely yours,

*Mark Lukas/dml*

Mark Lukas, Ed.D., C.R.C.

ML/dml

*Dictated but not read*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:

<u>First-Class Mail, Postage Prepaid
Addressed as Follows:</u>

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103-7424

(Attorneys for Defendants)

Dated: 9/16/02

Bradford Dorrance