IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN D. TESCHE | : CIVIL ACTION |
| vs. | : |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY: | : NO. 1:CV-01-0326<br>(William W. Caldwell, J.) |

**DEFENDANTS CNA INSURANCE COMPANIES AND CONTINENTAL
CASUALTY COMPANY'S REPLY BRIEF IN SUPPORT OF THEIR
<u>MOTION TO PRECLUDE EXPERT TESTIMONY</u>**

Mr. Dorrance's reply brief in the form of an Affidavit excludes a key fact that is significant to the evaluation of the motion to preclude plaintiff's vocational expert evidence. Foremost, before trial, the undersigned advised Mr. Dorrance that the vocational principle that he was seeking to put forth at trial could be appropriately addressed with and directed to Cheryl Sauerhoff, who was called to and did testify at trial. Indeed, while counsel has no specific citation since the trial testimony has not been transcribed, Mr. Dorrance engaged in extensive questioning of Ms. Sauerhoff as to vocational standards and, in particular, Continental's evaluation of a claimant's ability to perform a 40 hour work week as part of its benefit determination. In short, Mr. Dorrance knew before the trial that he had the opportunity to cover his vocational issues with Ms. Sauerhoff, was given the opportunity by this Court to ask such questions of Ms. Sauerhoff at trial, and, indeed, did direct questions regarding vocational issues to her at trial. In light of these facts, Mr. Dorrance's response is disingenuous and his attempt to utilize a vocational expert is moot.

Mr. Dorrance complains that the undersigned "surprised" him by listing but not calling Tony Gulledge at trial and "refused to stipulate to settled vocational principles." Mr. Dorrance, early on, was well aware of the fact that the crux of this case was the vocational determination. In his deposition of Cheryl Sauerhoff in December 2001, Mr. Dorrance asked her if when the occupation's tandard changed, that "CNA was only looking at case from a vocational standpoint" to

391783_1

which she responded that the issues under review made it a "vocational determination." Attached hereto as Exhibit "A" is the Deposition Transcript of Cheryl Sauerhoff at p. 66. Mr. Dorrance during the course of discovery had the ability to depose Mr. Gulledge, had the ability to secure a vocational expert report, and even could have called Mr. Gulledge to testify at trial. Yet for strategic reasons, and perhaps economic reasons, Mr. Dorrance failed to address these issues at an appropriate time. Moreover, Mr. Dorrance deposed Ms. Sauerhoff on December 3, 2001 and discussed the entire claims process, including her evaluation of Mr. Gulledge's vocational synopsis. Continental called Cheryl Sauerhoff to testify at trial. Ms. Sauerhoff was the Appeal Committee Member who conducted the final review and made the conclusive determination as to plaintiff's disability claim. As part of her review, Ms. Sauerhoff evaluated the vocational information on file, including Mr. Gulledge's vocational synopsis. Ms. Sauerhoff, thus, was called to address and did address at trial all of the issues that Mr. Dorrance now complains of in his reply brief. Continental's determination not to use Mr. Gulledge at trial was appropriate, within its discretion, and was not surprising given that the key person in this case was Ms. Sauerhoff. Also, Continental had no obligation to stipulate to any vocational principles, whether well-settled or not.

While the problem as to the timing of the production of Mr. Lukas' report (served on August 6, 2002 with trial scheduled for August 9, 2002) is covered in the original motion, it is important to point out the Mr. Lukas report, attached as Exhibit "F" to plaintiff's reply brief, does not simply identify standard vocational principles as represented by Mr. Dorrance. Instead, Mr. Lukas' report sets forth his independent analysis of certain parts of the record and his conclusion that plaintiff cannot "participate within the customary parameters of competitive employment." Upon receipt of this report, the undersigned via telephone expressed his dismay to Mr. Dorrance that his vocational expert was not simply espousing standard vocational principles as represented but instead was now rendering a professional opinion on the issue that was at the heart of this case. Thus, the issue is not whether Mr. Dorrance was "surprised" but instead is whether Mr. Dorrance was misrepresenting his position to counsel for the defense in order to set the stage for the production

391783_1

and use of a late expert report, irrespective of what the defendant's response would be to Mr. Dorrance's communications regarding vocational issues for trial.

The undersigned is upset that litigation strategy has led to a "he said, she said" debate. Given the conduct of trial and, in particular the cross-examination of Ms. Sauerhoff, the record is complete and the need for a vocational expert on plaintiff's side has been mooted. Moreover, irrespective of Mr. Dorrance's effort to cast himself as a victim, the bottom line is that Mr. Dorrance had plenty of time to address vocational issues in this case and his last minute effort to bolster the evidence by the submission of an expert report cannot be countenanced. For the reasons set forth herein and in their original motion, defendants respectfully request that this court strike and not consider the vocational expert report of Mark Lukas in addressing this case.

CHRISTIE, PABARUE, MORTENSEN & YOUNG
*A Professional Corporation*

BY: _____
MICHAEL J. BURNS, ESQUIRE
Attorney ID No. 62088

1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
(215) 587-1600
(215) 587-1699 (fax)

Attorneys for Defendants

391783_1

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on this 2nd day of October, 2002 has caused to be served the foregoing document upon all other parties to this action by depositing a copy, postage prepaid in the United States mail addressed as follows:

>Bradford Dorrance, Esquire
>Keefer Wood Allen & Rahal, LLP
>210 Walnut Street
>P.O. Box 11963
>Harrisburg, PA 17108-1963

BY: _____
MICHAEL J. BURNS, ESQUIRE

391783_1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2

 3   JOAN D. TESCHE,                  :
            PLAINTIFF                 :
 4                                    :
       VS                             :   NO. 1: CV-01-0326
 5                                    :
     CNA INSURANCE COMPANIES, and     :
 6   CONTINENTAL CASUALTY COMPANY,    :
            DEFENDANTS                :
 7
 8

 9           TELEPHONE
             DEPOSITION OF:    CHERYL SAUERHOFF
10
             TAKEN BY:         PLAINTIFF
11
             BEFORE:           VIRGINIA LORIA, RPR
12                             NOTARY PUBLIC

13           DATE:             DECEMBER 3, 2001, 1:00 p.m.

14           PLACE:            KEEFER WOOD ALLEN & RAHAL LLP
                               210 WALNUT STREET
15                             HARRISBURG, PENNSYLVANIA

16

17
     APPEARANCES:
18
       KEEFER WOOD ALLEN & RAHAL LLP
19     BY:  BRADFORD DORRANCE, ESQUIRE

20        FOR - PLAINTIFF

21     CHRISTIE PARABUE MORTENSEN YOUNG - VIA TELEPHONE
       BY:  MICHAEL J. BURNS, ESQUIRE
22
          FOR - DEFENDANTS
23

24

25
```

GEIGER & LORIA REPORTING SERVICE - 1-800-222-4577

```
 1    the any occ. definition, it's your understanding that CNA
 2    was only looking at the disability issue from a vocational
 3    standpoint.
 4            MR. BURNS:  Objection.  Mischaracterizes the
 5    record and her testimony.  But if you understand the
 6    question, you can answer it.
 7            MR. DORRANCE:  I'll rephrase the question.
 8    BY MR. DORRANCE:
 9       Q    Is it your understanding that after the case
10    transitioned to the issue of whether Ms. Tesche was
11    disabled from any employment, CNA was only looking at this
12    case from a vocational standpoint?
13            MR. BURNS:  Same objections.  But you can answer
14    it if you understand it, Ms. Sauerhoff.
15       A    Well, at that point, once it got beyond the own
16    occupation, we were looking at the medical restrictions,
17    abilities, limitations, medical stability, to determine
18    was she disabled from any occupation.  And that would be a
19    vocational determination.
20    BY MR. DORRANCE:
21       Q    But during the appeal process, did CNA ask Ms.
22    Tesche to provide any additional information supporting
23    her disability claim?
24       A    Well, in the original denial or termination
25
```