IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                  :
        Plaintiff        :
    v.                           :   Civil Action No. 1:CV-01-0326
                                 :
CNA INSURANCE COMPANIES, and     :
CONTINENTAL CASUALTY COMPANY,    :
                                 :
        Defendants       :   (Judge Caldwell)

PLAINTIFF'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

FILED
HARRISBURG, PA
FEB 21 2003
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

I.  PRELIMINARY STATEMENT

This is a *de novo* appeal of an insurance company's final decision, terminating long-term disability ("LTD") insurance benefits under an ERISA Employee Welfare Benefit Plan.  See 3/28/02 Memorandum Opinion and Order of the Honorable William W. Caldwell.  Defendant, Continental Casualty Company ("Continental"), denied plaintiff's LTD benefits, arguing that she was not totally disabled from "any occupation" as defined by the applicable policy.  Plaintiff, Joan Tesché ("Mrs. Tesché"), seeks a retroactive award of LTD benefits, together with interest, attorneys' fees, and costs.

II.  FINDINGS OF FACT

1.  Plaintiff, Joan D. Tesché ("Mrs. Tesché"), was born on February 1, 1955, and resides at 7737 Fishing Creek Valley Road,

Harrisburg, Dauphin County, Pennsylvania 17112. Amended Complaint, ¶ 1; Trial Transcript (T.T.) at 5.

2. Defendant, Continental Casualty Company t/a CNA Insurance Companies ("Continental"), is an Illinois corporation engaged in the business of writing and underwriting various types of insurance, including group disability plans. Defendant's Response to Plaintiff's Statement of Material Facts Under Local Rule 56.1, ¶¶ 2, 3; T.T. at 35-39, 70.

3. From May 1988 to May 1997, Mrs. Tesché was an employee of AMP Incorporated ("AMP") of Harrisburg, Pennsylvania. T.T. at 8-9; Defendant's Exhibit A at CCC000141. As an AMP employee, Mrs. Tesché was eligible for long-term disability benefits. Joint Exhibit 1; T.T. at 68, et seq. Under Continental's LTD policy, Mrs. Tesché qualified as an "Insured Employee." Id.; Amended Complaint, ¶ 9. The LTD policy is an "employee welfare benefit plan" governed by ERISA, 29 U.S.C. §1002(1), and related provisions. Id.; T.T. at 35, 60-63. Mrs. Tesché paid all premiums due under Continental policy, which was "noncontributory," i.e., her employer, AMP, did not contribute to the monthly premium. Id. T.T. at 88-89; Cf. T.T. at 68.

4. On or about May 3, 1997, Continental determined that Mrs. Tesché was disabled from her occupation as an AMP System Procedure Analyst; and it paid LTD benefits to Mrs. Tesché for the 24-month "own occupation" period, commencing after the 180-day waiting

2

period.  AMP terminated Mrs. Tesché's employment in May 1997.  T.T. 70-72; Joint Exhibit 2; Defendant's Exhibit A at CCC000111 et seq.

  5.  By letter dated July 26, 1999, Continental's Disability Specialist, Laura Collins, advised Mrs. Tesché that her LTD benefits would terminate on October 30, 1999, because she was not totally disabled from any occupation for which she was qualified.  Defendant's Exhibit A at CCC000182.  In a series of letters, Mrs. Tesché's attorney, Clark DeVere, asked Ms. Collins to provide various ERISA-mandated information including:  the AMP Employee handbook; and the complete descriptions of the job opportunities identified by Continental's vocational specialist, as referenced in Ms. Collins's letter.  Id. at CCC000166, CCC000175, CCC000178.

  6.  In his letter dated and telecopied on October 12, 1999, Mr. DeVere emphasized that he wanted to submit the requested job descriptions to Mrs. Tesché's treating physician, Dr. Steven Wolf, to obtain his opinion about whether Mrs. Tesché was disabled from those occupations.  Id. at CCC000175.

  7.  By letters dated October 22, 1999 and December 3, 1999, Mrs. Tesché, through her attorney, Steven Courtney, timely appealed Continental's initial determination.  Id. at CCC000173, CCC000159; T.T. at 60-63.

  8.  By letter dated October 25, 1999, Continental's Disability Specialist, Laura Collins, refused to provide Mrs. Tesché's attorneys with the requested job descriptions, noting that the

information was available at their local library. Id. at CCC000172. Continental's refusal to provide this requested information was contrary to their customary practice. T.T. 84-88, 98; Defendant's Exhibit A at CCC000172.

9.  In further support of her appeal, Mrs. Tesché submitted a December 22, 1999 medical report from her treating physician, Steven B. Wolf, M.D. In his report, Dr. Wolf opined that Mrs. Tesché was not "employable." Id. at CCC000154, et seq.

10. By letter dated January 3, 2000, Continental confirmed that the final decision would be determined by its Appeals Committee within the time period required by ERISA. Id. at CCC000152; T.T. at 60-62. By letter dated February 21, 2000, Cheryl Sauerhoff, a member of Continental's Appeals Committee, rendered a final decision on Mrs. Tesché's appeal. T.T. at 46-59; Joint Exhibit 2.

11. Continental's final decision was not timely in that:

(a) the decision was not rendered and delivered within 60 days after the date of Mrs. Tesché's initial appeal, as required by ERISA; Defendant's Exhibit A at CCC000115 through CCC000128, T.T. at 60-63;

(b) on February 21, 2000, Ms. Sauerhoff noted in her records "letter drafted," which was contrary to Continental's ERISA procedures; T.T. at 61-63;

(c) Continental could produce no certified mail receipt or other document confirming that Ms. Sauerhoff's February 21,

2000 decision was mailed and received by Mrs. Tesché of her attorney within the required 60-day appeal period; Id.; and

   (d) Mrs. Tesché's attorney, Steven Courtney, did not receive CNA's decision until sometime on or after April 6, 2000.  Id.

  12. Mrs. Tesché, through her attorneys, asked Continental to provide copies of certain documents relating to the LTD policy including:  any summary plan description or plan document; and the AMP/Tyco Employee Handbook.  Defendant's Exhibit A at CCC000166; Dorrance Aff., Exhibit A.  In response to those requests, AMP/Tyco produced a 1997 Employee Handbook, but no summary plan description. Id.

  13. At the August 9, 2002 non-jury trial, Joan Tesché testified about her educational background; her work history; her medical history as it related to her alleged disability; her activities of daily living; her interview with Continental's vocational specialist, Tony Gulledge; and the reasons why she felt she was disabled.  T.T. at 6, et seq.

  14. Mrs. Tesché has a high school degree and took some post-graduate courses at Harrisburg Area Community College.  Her past relevant occupations included working as a secretary and as a system procedure analyst for AMP from 1988 to 1997.  T.T. at 7-9, 21.

  15. With respect to her relevant medical history, Mrs. Tesché has seen various orthopedic doctors since 1990 in connection with her lower back pain; and has had three back surgeries, including

removal of spinal rods and screws in 1996. Id. at 10-11. Steven Wolf, M.D., an orthopedic surgeon, has been Mrs. Tesché's treating physician since approximately 1993. Mrs. Tesché takes the following pain medications: Oxycontin; Ibuprofen; and Darvocet. According to Mrs. Tesché, these medications cause the following side effects: memory loss; lack of concentration and fatigue; drowsiness; and blurred vision. T.T. at 11.

16. Mrs. Tesché has received physical therapy and other forms of treatment and modalities including: semi-annual spinal injections; the periodic use of a lower tear support back brace; a TNS unit; assistive devices to pick up objects; a cane to steady her when walking; and the use of a wheelchair if she is required to walk more than 10 minutes at a time. T.T. at 12.

17. Mrs. Tesché submitted an application to the Social Security Administration, seeking social security disability. By letter dated January 15, 2001, the Social Security Administration awarded monthly benefits of $749 to Mrs. Tesché, retroactive to October 1, 1999. The Administration found that Mrs. Tesché was disabled as of May 1, 1999. T.T. at 14. Joint Exhibit 3.

18. Mrs. Tesché summarized her activities of daily living, which include limited tasks and roughly four hours of lying on her back to relieve pain. Approximately four days per month, as a result of her pain, Mrs. Tesché is bedridden and unable to do any activities around the house. Mrs. Tesché's pain starts at her neck and radiates

down to her feet.  Weather and physical activity will generally increase her pain, which ranges from a dull ache to a very sharp, severe cutting pain.  <u>Id</u>.  Mrs. Tesché estimates that she able to walk for roughly 10 minutes and able to sit for about 15 minutes before she has to change her position.  T.T. at 18.  Mrs. Tesché can lift up to 10 pounds, but lifting a gallon of milk can cause pain.  Her daughter has the primary responsibility of grocery shopping on her behalf.  T.T. at 19.

19.  Mrs. Tesché explained her activities of daily living and functional limitations during her interview with Continental's vocational specialist, Tony Gulledge.  Mrs. Tesché emphasized that she needed to lie down between one and two hours at a time during the day.  T.T. at 20-21.  That information was not included in Mr. Gulledge's vocational report.  Defendant's Exhibit A at CCC000141.

20.  Mrs. Tesché has attempted to secure home-based employment within her physical limitations.  The only potential opportunity was with Market America, but that job would have required her to travel as part of building a customer base.  T.T. at 21-22.  Mrs. Tesché has also worked with outside agencies such as the Office of Vocational Rehabilitation, but was informed that they did not have any home-based positions.

21.  Mrs. Tesché believes that she would be unable to continuously engage in any form of gainful employment, because:

       (a)   due to her pain and medication, she cannot concentrate;

       (b)   she needs to lie down several times a day for a total of at least four hours; and

       (c)   she would be unable to sustain any employment for a 20- or 40-hour work week.  T.T. at 22-23.

    22.   At the non-jury trial, Cheryl Sauerhoff, Continental's Appeals Committee Director, testified as to her responsibilities and her final decision dated February 21, 2001, in which she terminated Mrs. Tesché's LTD benefits.  T.T. at 34-44; Joint Exhibit 2.  According to Ms. Sauerhoff, the issue is whether Joan Tesché was continuously able to perform any occupation, as determined by certain criteria including:  her qualifications (education, training, or experience); and her age; geographic location; and the medical restrictions imposed by her treating physician.  Joint Exhibit 2; T.T. at 47, 69.  Mrs. Sauerhoff emphasized that a claimant's activities of daily living are important, because any daily limitations can affect the ability to function in a work setting.  T.T. at 53, 75.

    23.   Ms. Sauerhoff confirmed that the Social Security Administration and Continental use similar criteria in determining whether an individual is disabled, including examination of the claimant's education, work experience, age, and medical restrictions. T.T. at 51-53, 73, 99-100.  Based on her prior five-year experience in working for the Social Security Administration, Ms. Sauerhoff opined

that the Social Security regulations are more rigorous and stringent than Continental's criteria. <u>Id</u>. at 99-100. According to Ms. Sauerhoff, the major difference is that Social Security also looks at substantial gainful activity (employment) whereas Continental addresses the claimant's ability to perform any occupation (an undefined term). T.T. at 49-50. <u>Compare</u> Plaintiff's Exhibit B.

24.   Ms. Sauerhoff based her final disability decision solely on the claim file and failed to consult with or interview any individual including: Mrs. Tesché; the disability specialist; the nurse case manager; the vocational case manager; other members of the Appeals Committee; Mrs. Tesché's treating physician; and Continental's panel of medical consultants. T.T. at 89-93.

25.   According to Continental's interpretation, a claimant is entitled to LTD benefits if she is continuously unable to perform <u>full-time</u> employment (emphasis added). As part of its decision, Continental considers whether the individual would be able to work between 30 to 40 hours per week on a regular and continuous basis. T.T. at 102. <u>Compare</u> Plaintiff's Exhibit B.

26.   Mrs. Tesché submitted the August 8, 2002 trial deposition testimony of her treating physician, Steven B. Wolf, M.D., together with Wolf Exhibits 1 (curriculum vitae), 2 (physical capabilities form as of May 1999), and 3 (Dr. Wolf's December 22, 1999 report). Plaintiff's Exhibit A. Dr. Wolf summarized his treatment and observations of Mrs. Tesché since he first saw her in March of

1994. Despite her three surgeries, Mrs. Tesché has continued to have persistent pain in her left sacroiliac joint as well as other symptoms which have increased over time. Mrs. Tesché has had physical therapy as well as sacroiliac joint injections which only provide temporary relief from her chronic pain. Mrs. Tesché has difficulties with activities of daily living and reports the need to lie down several hours during the day. Id.

       27. When Dr. Wolf last saw Mrs. Tesché on July 30, 2002, she was still having difficulty with her dysfunctional sacroiliac joint, which appeared to be unstable and symptomatic. She also had radicular discomfort down her left leg and some prior shaking in her extremities. She also has received a diagnosis of fibromyalgia, for which she is receiving treatment. Based on his last examination, Dr. Wolf recommended that Mrs. Tesché return to physical therapy to see if there is anything further that could be done with her sacroiliac joint problem  During his eight-year evaluation and treatment of Mrs. Tesché, Dr. Wolf found no evidence of symptom magnification. Wolf Tr. at 9.

       28. Based on his experience and speciality and his lengthy observation and evaluation of Mrs. Tesché, as well as his review of the medical records and diagnostic tests, Dr. Wolf opined that Mrs. Tesché would not be able to continuously work in any occupation from May 1999 through the present, in part due to her inability to sustain employment on a regular and continuing basis for a 40-hour work week.

Id. at 15.  According to Dr. Wolf, Mrs. Tesché's condition worsens with physical activity and she experiences some days that are worse than others.  All of Dr. Wolf's opinions were expressed within a reasonable degree of medical certainty.

29.   On cross examination, Dr. Wolf testified that Mrs. Tesché has a burning, aching pain which is sometimes sharp.  She has numbness and tingling down her left leg and in her arms and hands.  She has sharp pains in her interscapular region, thoracic spine region, heaviness in her extremities, and fatigue.  Id. at 30.  When asked what he meant by the term "employable" in his December 22, 1999 report, Dr. Wolf stated that Mrs. Tesché would not be able "...to hold down a full-time job."  Id. at 36.

30.   On redirect, Dr. Wolf opined that Mrs. Tesché's reported inability to perform any physical activities for approximately four days per month is consistent with her medical profile.  Id. at 40.

31.   Mrs. Tesché presented the December 4, 2002 trial deposition transcript of her vocational expert, Mark Lukas, Ed.D., with Lukas Exhibits 1 (his curriculum vitae), 2 (his August 6, 2002 report), and 3 (his November 20, 2002 vocational assessment and report).  Dr. Lukas summarized his educational background and training and confirmed that he customarily performs vocational assessments and evaluations of individuals.  Dr. Lukas qualifies as a vocational

expert who can testify about the disability issues raised in Joan Tesché's case. Lukas Tr. at 4-5; Lukas Exhibit 1.

32. Based on his experience, his review of the treating physician's trial deposition testimony, medical report, and functional capacity checklist, Dr. Lukas opined that Joan Tesché's capabilities fell below the threshold necessary to perform competitive employment (including those potential positions identified by Continental's vocational specialist and its vocational expert). Lukas Tr. at 10. All opinions set forth in Dr. Lukas's reports and during his trial deposition were expressed within a reasonable degree of vocational certainty. Id. at 13.

33. On cross, Dr. Lukas stated that he did not assess Mrs. Tesché's capabilities to perform work in a sheltered workshop or in supported employment, where the productivity standards are lower than competitive employment. Id. at 23-25.

34. On redirect, Dr. Lukas opined that the term "any occupation" in the Continental LTD policy was synonymous with his terminology "competitive employment." Id. at 26.

35. Defendant, Continental, presented the December 20, 2002 trial deposition testimony of its vocational expert, George E. Parsons, Ph.D., together with Dr. Parsons's curriculum vitae and his October 28, 2002 report. Defendant's Exhibits B, C, and D. Dr. Parsons testified as to his educational background, training, and professional experience, which includes performing vocational

evaluations of patients. Parsons Tr. at 6-8. Dr. Parsons qualifies as a vocational expert who can testify about the disability issues raised in Joan Tesché's case. Parsons Tr. at 6, et seq.

    36.  Based on his review of the medical records and other documents, Dr. Parsons opined that Mrs. Tesché would be capable of "continuous employment," including the capability of performing her former position as a Systems Procedure Analyst. Id. According to Dr. Parsons, Mrs. Tesché's need to lie down for several hours each day would not necessarily prevent her from working, but would require some accommodation by her employer. Id. at 18, 23.

    37.  Dr. Parsons further opined that Mrs. Tesché's award of Social Security disability is a factor in rendering his opinion. However, Dr. Parsons was uncertain whether the Administration's criteria would be the same or similar to the "continuous employment" issue involved in this litigation. Id. at 21. Compare Plaintiff's Exhibit B. Dr. Parsons disagreed with Dr. Lukas's opinion that Mrs. Tesché's capabilities fell below the threshold necessary for competitive employment.

    38.  On cross, Dr. Parsons conceded that he did not follow his customary practice in this case, because he did not perform a vocational interview of Mrs. Tesché. In Dr. Parsons's opinion, a vocational interview is helpful in rendering an opinion on the question of total disability. Id. at 26-28. Compare Lukas Tr. In reviewing the Continental policy definition of "any occupation," Dr.

13

Parsons opined that the term "occupation" means that the individual receives payment for working. <u>Id</u>. at 32. The term "occupation" does not connote "volunteer work." <u>Id</u>. at 33. Dr. Parsons further conceded that his report failed to address employer accommodations that would be needed for Mrs. Tesché to perform any job. <u>Id</u>. at 34. Dr. Parsons further admitted that lack of productivity and time missed from work can ultimately lead to an employee's being unable to continue working. <u>Id</u>. at 34-35. Dr. Parsons's use of the phrase "continuously able to perform a job" reflected his opinion that every occupation requires some degree of consistency and regularity in terms of productivity and attendance. <u>Id</u>. at 35-36. <u>Compare</u> Lukas Exhibit 3 and Plaintiff's Exhibit B.

  39. Dr. Parsons opined that Mrs. Tesché's restrictions would require an accommodation by her employer but would not preclude her from gainful employment; however, Dr. Parsons did not contact any prospective employer and did not know whether any employer would be willing and able to accommodate any of the positions which he had identified for Mrs. Tesché. <u>Id</u>. at 37-38.

### III. PROPOSED CONCLUSIONS OF LAW

  1. This is a civil action involving alleged claims in excess of $75,000.00, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1332 (diversity of citizenship) and on 28

U.S.C. §1331 (federal question jurisdiction).  <u>See</u> 29 U.S.C. §1001, <u>et seq.</u>, as amended.

  2. Pursuant to Section 502(a), (f) of ERISA, 29 U.S.C. §1132(a), (f), the United States District Court has jurisdiction and venue over this action by a beneficiary of an ERISA-regulated plan to recover LTD benefits.

  3. Based on a heightened and critical <u>de novo</u> review of Continental's final decision, Joan Tesché is totally disabled from "any occupation" as defined by the governing policy and applicable law.  <u>See</u>, <u>e.g.</u> <u>Mitchell v. Eastman Kodak Company</u>, 113 F.3d 433 (3d Cir. 1997).  <u>See</u> also parties' prior briefs.

  5. Since Mrs. Tesché has established her entitlement to ERISA benefits, she is entitled to accrued interest, attorneys' fees, and costs.  <u>Anthus v. Colt Industries Operating Corp.</u>, 971 F.2d 999 (3d Cir. 1992); 29 U.S.C. § 1132(g)(1).

          Respectfully submitted,

          KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 2/21/03

          Bradford Dorrance
          I. D. No. 32147
          210 Walnut Street
          P. O. Box 11963
          Harrisburg, PA  17108-1963
          (717) 255-8014

          (Attorneys for Plaintiff)

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing document upon the person(s) and in the manner indicated below:

<u>First-Class Mail, Postage Prepaid
Addressed as Follows:</u>

Michael J. Burns, Esquire
CHRISTIE PARABUE MORTENSEN YOUNG
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103-7424

(Attorneys for Defendants)

Dated: 2/21/03

_____
Bradford Dorrance