IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

FEB 2 4 2003

MARY E. D'ANDREA, CL[ERK]
Deputy Clerk

| | | |
|---|---|---|
| JOAN D. TESCHE | : | CIVIL ACTION |
| vs. | : | |
| CNA INSURANCE COMPANIES and CONTINENTAL CASUALTY COMPANY | : | NO. 1:CV-01-0326 (William W. Caldwell, J.) |

**DEFENDANTS' CNA INSURANCE COMPANY AND
CONTINENTAL CASUALTY COMPANY'S POST-TRIAL BRIEF**

In lieu of a closing statement and to provide a foundation for its proposed findings of fact and conclusions of law, Defendants CNA Insurance Company and Continental Casualty Company ("Continental") by and through their counsel, Christie, Pabarue, Mortensen and Young, A Professional Corporation herein argue:

**A.   Introduction**

Continental correctly determined that, as of October 30, 1999, plaintiff, Joan Tesche, was able to continuously engage in any occupation for which she was and/or became qualified by education, training or experience and, thus, was no longer totally disabled. A de novo standard of review governs the Court's examination of this ERISA matter. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). The claimant bears the burden of proof in establishing that she is entitled to benefits under an ERISA plan. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3rd Cir. 1997).

The issue in this case was, and remains, whether plaintiff was "continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience." Joint Exhibit 1 at p. 3, Definition of Total Disability. It is not

404976_1

disputed that Ms. Tesche has a chronic back problem that prevented her from returning to work at her "regular occupation" which job required her to sit almost all day. It is further not disputed that the second aspect of the any occupation total disability definition, that plaintiff has been under the regular care of a licensed physician," has been met. Continental based upon the physical limitations and restrictions set by plaintiff's own treating physicians appropriately conducted a vocational evaluation which identified four jobs that not only met the physical restrictions and limitations imposed and, more importantly, permitted Mrs. Tesche to change position from sitting to standing as needed, but also these jobs were within her aptitude and ability based upon her education, training, and past work experience. Under these circumstances, Continental had no choice as the ERISA claim fiduciary but to enforce the terms of the AMP Inc.'s group long term disability plan and terminate benefits when the disability standard changed to "any occupation." Further, the evidence adduced at trial and post-trial supports and affirms that Continental's claim determination was correct.

B.  **Continental's Claim Determination Was And Remains Correct**

As Continental's Cheryl Sauerhoff testified at trial, in order to assess total disability, Continental reviews the totality of evidence submitted by the claimant and adduced in the claim process. N.T. 80. Continental analyzes the evidence as follows: (1) the medical information and restrictions and limitations imposed are examined to see if they correspond with the other medical information in the records; (2) a person's activities of daily living and subjective complaint are evaluated "to see does this come in line with the medical information;" and, (3) all that information is taken together, that is reviewed in it's totality, to assess functionality and then, based upon a person's age,

education, past work experience, and training, an assessment is made as to what other types of occupation she could perform. N.T. 54. A disability determination is not based upon a medical diagnosis or a condition alone, but instead, Continental examines a person's activities of daily living and medical records to determine a claimant's functionality. N.T. 53 and 74

In this case, as documented in the administrative record, Continental obtained information from plaintiff, her employer, and her treating physicians in order to evaluate her disability claim. See Joint Exhibit 2. Continental interviewed Mrs. Tesche via telephone on at least two occasions. Joint Exhibit 2 at CCC000141 and CCC000148-151. Indeed, Continental's Nurse Pam Groover conducted a "comprehensive" interview that inquired as to plaintiff's symptoms, prognosis, typical day, past work, educational background, etc. Id. at CCC000148-151. It cannot be disputed that plaintiff's treating physician's identified plaintiff's physical restrictions and limitations as follows:

    A.    Dr. Morton Rubenstein:

What are the current limitations that prevent return to patient's own job?

    Standing:    ½ - ! consecutive hr/day
    Walking:    3 hr/day
    Sitting:    ½ consecutive hr/day
    Lifting:    10-20 pounds
    Carrying:    10-20 pounds

Is Ms. Tesche at MMI (maximum medical improvement)? Are the limits temporary or permanent? Not Known.

\*\*\* Objective findings MUST BE PROVIDED to support any limitations given.

The above are the patients self-described limitations. If confirmation is required, suggest independent medical examination by a physiatrist or orthopedic surgeon.

Joint Exhibit 2 at CCC000185.

    B.    Dr. Steven B. Wolf:

1. What are Ms. Tesche's current restrictions and limitations in regard to:

    Sitting:    ½ hour at a time;    Standing:    1.2 at a time

    Lifting: 5-10 pounds;    Walking:    15 minutes

    Bending/Squatting/Crawling: 0

Are these restrictions permanent or temporary? If temporary, when do you expect the to change? Permanent.

Joint Exhibit 2 at CCC000184. In his trial deposition on August 8, 2002, Dr. Wolf confirmed that his assessment of plaintiff's physical restrictions and limitations remained the same except that her sitting tolerance was now at 15-20 minutes although "I don't think you can put a stopwatch on it." Deposition of Steven B. Wolf, M.D. at p. 12-13 and 21. As testified to by Ms. Sauerhoff, the physical restrictions and limitations set forth by plaintiff's treating physicians placed her within the category of sedentary work. N.T. 78.

Continental accepted the physical limitations and restrictions provided by plaintiff's treating physician and turned to a vocational evaluation to determine if there were any sedentary jobs that not only permitted plaintiff to change positions, so-called "sit/stand variety," but also met her vocational abilities, that is were consistent with her "age, educational level, work experience, and geographical location." Because Continental accepted the physical restrictions and limitations imposed by plaintiff's treating physicians, it did not need to conduct an independent medical exam. N.T. 81. An in-house vocational evaluation was performed by Tony Gulledge, who after speaking with plaintiff via telephone and reviewing the information set forth in the administrative

404976_1    4

record, identified four jobs, Telemarketer, Customer Services Rep, Motel Night Auditor, and Automobile Rental Agent, that were appropriate based upon the plaintiff's functional capabilities and her age, educational level, work experience, and geographical location. Joint Exhibit 2 at CCC000141.

Under the circumstances, Continental's claim handling and the determinations made were correct and must be upheld.

C.  **The Opinions of Continental's Vocational Counselor Tony Gulledge and Independent Vocational Expert Dr. George Parsons Are More Credible Than Plaintiff's Vocational Expert, Dr. Mark Lukas' Opinion and Support Continentals' Claim Determination**

The independent vocational evaluation conducted by George E. Parson, Ph.D. supports and further solidifies Continental's claim determination. After trial in response to plaintiff's production of a vocational expert report, Continental retained Dr. Parsons, a psychologist who has been a vocational expert for approximately 30 years, to conduct an independent vocational evaluation. Defendants' Exhibits B and D at pp. 6-8. Dr. Parsons was well-qualified for this evaluation as from 1988 to 2002 he had worked as the Director of Behavioral Medicine for a pain center and then worked with a group of physicians specializing in the management of chronic pain (which is the condition that ails plaintiff). Defendants' Exhibits B and D at pp. 6-8. In stark contrast to the limited medical information supplied to plaintiff's vocational expert by plaintiff's counsel, Dr. Parsons received and reviewed all vocational reports, the Amended Complaint, plaintiff's deposition and trial testimony, plaintiff's Social Security Award letter, the trial deposition of Steven Wolf, M.D., the entire administrative record which contained all medical reports and past employment information, and the applicable group policy, inter alia. See Defendants Exhibit C and D at 13-15 and 25-26.

404976_1                                    5

Dr. Parsons, based upon his review of the records, which included Mrs. Tesche's extensive testimony on her condition and background as adduced during the trial and discovery but also as denoted in plaintiff's own vocational expert's report, concluded:

> Based on the information in file it is safe to assume that Ms. Tesche' has performed a number of clerical tasks in the past specifically as they relate to using a computer, communicating with others, co-coordinating and scheduling others and entering data. Her work has been sedentary and light in nature. Her current limitations places her at the sedentary level of employment with the necessity to change her position frequently. Positions as interview clerk, expeditor, administrative support personnel, schedule and industrial caller are but a few of the jobs which would make use of her skills and compile with her functional limitations. These positions are available throughout the USA.

Defendants Exhibit C at p. 3-4. Dr. Parsons identified several other jobs that fit Ms. Tesche's physical restrictions and limitations and her skill level. Id. Defendants Exhibit D at p. 17. Dr. Parsons further affirmed that plaintiff had the ability to perform the jobs identified by Continental's vocational counselor, Mr. Gulledge, in his vocational assessment. Defendants' Exhibit D at page 22-23. In sum, Dr. Parsons concluded, like Continental, that plaintiff has the ability perform several jobs, that is any occupation, based upon her medically established physician restriction and limitations and given her past education, training, and experience.

Plaintiff's vocational expert, Mark Lukas' assessment and opinion is not credible given the limited information he was provided and reviewed and the narrow conclusion that is not in accord with the disability standard under the Plan. In contrast to Dr. Parsons' receipt and review of all the information gathered during pendency of the claim, in discovery, and at trial, Dr. Lukas was provided and reviewed a very limited record. Of paramount importance is that fact that Dr. Lukas reviewed only one medical report prepared by Dr. Wolf. Deposition of Mark Lukas, ED.D at p. 15. Dr. Lukas did not have

404976_1                                  6

the records or reports of any other treating physicians, like family practitioner, Dr. Rubenstein who noted that plaintiff's physical limitations and restrictions were "self-described", Joint Exhibit 2 at CCC000185, or even from any pain clinic, physical therapy provider, or rehabilitation facility.  <u>See</u> Lukas Deposition at p. 15 and 19.  The control exerted by counsel in narrowly circumscribing the medical and other information presented to Dr. Lukas proves that Dr. Lukas' review was not independent or objective.  As noted by defense expert, Dr. Parsons, in his testimony, a vocational expert faced with only the limited information from Dr. Wolf could reach only one conclusion.  <u>See</u> Defendants Exhibit D at p. 24.

      Dr. Lukas acknowledged in his testimony that plaintiff had the educational background, work experience, and training, that is the vocational capability, necessary to perform at least two of the jobs identified by Mr. Gulledge: telemarketer and motel night auditor.  Lukas Deposition at p. 17.  Further, Mr. Lukas confirmed that these jobs are available to a people who are in their forties.  <u>Id</u>. at 18.  Mr. Lukas' further acknowledged that the primary basis for his vocational opinion was Dr. Wolf's physical restrictions and limitations combined with the incredulous assertion developed after this lawsuit was initiated and pursued by plaintiff that she needs to lie down on average 2 to 4 hours per day, a condition which she testified has existed since 1996.  <u>Id</u>. at 15 and 20.  In other words, plaintiff's vocational expert felt that plaintiff had the qualifications and skills necessary to meet all of the vocational criteria for a return to work but the that medical evidence placed "her below the threshold necessary for participation in competitive employment."  Dr. Lukas assumed that the word "occupation" in the Plan meant "competitive work" but he did not know.  <u>Id</u>. at p. 23.  Despite plaintiff's counsel's

404976_1

7

dire and continued efforts to define "continuously" and/or "occupation" to mean "competitive employment" and/or "gainful employment," in accordance with the Social Security standard, the Plan does not mandate or permit such a narrow, limited focus. In other words, as noted by Ms. Sauerhoff, while "continuously" may reasonably be interpreted to mean full-time employment, it does not require a certain income amount or so-called "gainful employment" like Social Security, it does not require that the work be done 9 to 5, it does not require that the work be down in an office as opposed to at home, and it does not prevent someone from having accommodations –required by federal law – to assist her in performing a job.   Unfortunately, plaintiff's counsel's zeal to win caused him to limit and narrow his vocational expert's assessment, which in turn, has made Dr. Lukas' opinion biased, unfair, not credible, and worthless.

The post-trial vocational evidence clearly support Continental's determination especially given the undeniable differences of plaintiff's vocational expert.

D. **Dr. Wolf's Disability Opinion, In Particular His Statement That Plaintiff Could Not Perform The Jobs Identified By Continental, Is Not Entitled to Any Deference Or Weight; Continental's Use and Focus On the Vocational Assessment Was Correct**

The opinion of Dr. Wolf that plaintiff is disabled, not employable, and/or otherwise not able to engage in any occupation is not credible under the circumstances and, thus, not entitled to any weight or deference by this Court.   In this case, the determination of disability is more appropriately within the purview of a vocational expert who has the knowledge and ability to assess specific employment and the requirements to perform there employment as opposed to generalized knowledge of a medical condition.

Foremost, Dr. Wolf readily admits that he is not a vocational expert and does not have the credentials or qualifications necessary to assess vocational issues.  Deposition

of Steven B. Wolf, M.D. at p. 18. Dr. Wolf's opinion that plaintiff is unable to work is based upon a "generalized understanding" of what "any human being does on a daily basis," not specifically on what plaintiff does or can do in her actual activities of daily living. Id. at 40. Dr. Wolf testified that knowing a specific person's specific activities of daily living is not important in assessing an ability to work. Id. at 42. Dr. Wolf was unaware of, and seemingly uninterested in, what plaintiff did on a daily basis like how long she walked; how long she slept at night; how long she slept during the day; and what hobbies she participated in, like stained glass, computers, etc. Id. at pp. 24-46. His assessment of plaintiff's inability to work was based on the fact that he knew she was a systems or computer analyst only. Id. at pp. 28-29. Dr. Wolf was equally uninterested in plaintiff's work history as he did not know plaintiff's job description; did not talk to her about her past work history; and, did not talk about her educational history. Id. When asked whether plaintiff went to high school, Dr. Wolf responded: "No. It wasn't pertinent to my exam." Id. at pp. 28-29. As he acknowledged, Dr. Wolf primary focus as a physician is on establishing a person's physical restrictions and limitations – which he did and which opinion was accepted by Continental. Id. at p. 20. Dr. Wolf, based upon his own testimony, clearly does not have the expertise necessary to opine nor did have or accumulate sufficient information to opine, as he did in his reports and testimony, that Mrs. Tesche cannot perform any occupation or any job identified; indeed, that evaluation and opinion is best given by a vocational expert taking into consideration the pronounced medical restrictions and limitations.

Just as importantly, Dr. Wolf's opinion is suspicious as it appears to be predicated on plaintiff's incredulous assertion first developed in this litigation that she

needs to rest or lie down 2 to 4 hours per day, which practice has been ongoing since 1996. N.T. 14-15 and 28-29. In his report dated December 22, 1999 in support of plaintiff's claim appeal, Dr. Wolf pointed out that plaintiff had problems with walking and sitting tolerance; he did not anywhere state or even suggest that plaintiff had to rest or lie down for several hours each day to cope with pain. Joint Exhibit 2 at CCC000139. Dr. Wolf's own treatment notes and reports provided to Continental during the claim process, likewise, do not anywhere indicate or state that plaintiff had to rest or lie down during the day. Id. at CCC000203-229; N.T. 76. During his trial deposition, Dr. Wolf read his note from a July 30, 2002 exam into the record and it too did not relate that plaintiff needed to rest or lie down on a daily basis. Id. at pp. 6-7. Indeed, Dr. Wolf did not witness, and did not otherwise investigate whether plaintiff actually needs to rest or lie down. Id. at pp. 23 and 26. Eventually in his testimony Dr. Wolf conceded that he did not know whether plaintiff's self-reported complaint that she needed to rest or lie down was ever recorded in his office chart. Id. at 23.

While Dr. Wolf would not acknowledge it, see id, it is standard practice for a physician to document pertinent symptoms or complaints of a patient. As Ms. Sauerhoff testified, it did not make sense to her that such a significant functional loss was not recorded anywhere in plaintiff's medical records. N.T. 75-76. A review of Dr. Wolf's notes and reports contained in the administrative record shows that he routinely recorded plaintiff's chief complaint and the basis for the office visit but nowhere did he write that plaintiff needed to rest or lie down 2 to 4 hours a day. See Joint Exhibit 2 at CCC000203-211. The lack of this clearly significant and important complaint (or condition) that lasted since 1996 cannot be simply attributed to oversight – the only

plausible explanation for the absence of this information in Dr. Wolf's records, or any records for that matter, is that this complaint (or condition) did not exist and was merely raised during the litigation to take the focus from the vocational issues. What is even more astonishing is that this complaint (or condition) that is so significant in this lawsuit wasn't even raised or noted in the claim appeal! Clearly, plaintiff's testimony that she needs to rest or lay down 2-4 hours per day is incredulous as it is not supported by any medical record such that Dr. Wolf's opinion based on this point is, equally, incredulous.

Lastly, it is important to point out that Dr. Wolf saw plaintiff on only three occasions after May 1999 and before trial: March 2000, May 2000, and July 2002. Id. at p. 12. His December 12, 1999 report was based upon an exam that occurred in May 1999, not a new exam in the December 1999 time frame. This information, as well as the other points raised above, not only lessens any deference afforded Dr. Wolf as a treating physician but it also raises questions about how fair and independent his review and opinion really is. Does three visits in three and one-half years provide you with a sufficient foundation to opine on a person's in ability to work when admittedly you don't ask and could care less about that person's past experience and current specific activities of daily living? All in all, it becomes clear that Continentals' facts on plaintiff's specific and actual activities of daily living, past experience, and medical restrictions supersedes a conclusory medical opinion not supported by treatment records, based upon a generalized understanding, and lacking any focus on plaintiff's actual, specific activities and background based on only 3 exams over 3½ year time.

E.  **Plaintiff's Failure To Produce Certain, Key Medical Records Is Relevant As It Further Shows The Control Over The Information Presented As to her Disability**

It is well-established that a claim fiduciary does not have an affirmative duty to seek any information, including medical records, regarding any claim for benefits. Pinto v. Reliance Standard Life Ins. Co., 214 F3d 377, 394, fn 8(3d Cir. 2000); Freiss v. Standard Reliance Life Ins. Co., 122 F. Supp. 2d 566,573 (E.D. Pa. 2000), Doyle v. Nationwide Insurance Co., and Affiliates Emple HealthCare Plan, 2003 U.S. Dist. LEXIS 1192 (E.D. Pa. January 28, 2003). Consistent with this legal point, the Plan itself places the burden on the claimant to submit written proof of loss. Joint Exhibit 1 at p. 7. Plaintiff admitted at trial that she was being treated at the "Hershey pain management clinic." N.T. 11, lines 17-22. Dr. Wolf also noted that plaintiff was treating with the Hershey Pain Clinic in his report dated December 22, 1999. Joint Exhibit 2 at CCC000139 ("She is currently going to the Hershey Pain Clinic for treatment."). Plaintiff never submitted these records to Continental. Plaintiff never produced these records in discovery. Plaintiff did not present or introduce these records at trial. Plaintiff further did not offer any additional records or the testimony of her former and current family physicians. This omission by plaintiff is relevant because it further exposes that the information regarding plaintiff's disability was controlled and managed for the sake of the litigation.

## F. Conclusion

Based upon the totality of evidence and the law, Continental's claim handling and focus was appropriate and its determination thereon as proven via the administrative record and at trial, was correct and must be upheld. Continental reserves the right to seek attorneys, fees, costs, and expenses under ERISA, 29 U.S.C. §1132(g).

**Christie, Pabarue, Mortensen & Young**
**A Professional Corporation**

BY: _Michael J. Burns/jc_ (signature)
Michael J. Burns, Esquire
1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
215-587-1600

Dated: 2/21/03

## F. Conclusion

Based upon the totality of evidence and the law, Continental's claim handling and focus was appropriate and its determination thereon as proven via the administrative record and at trial, was correct and must be upheld. Continental reserves the right to seek attorneys, fees, costs, and expenses under ERISA, 29 U.S.C. §1132(g).

**Christie, Pabarue, Mortensen & Young**
**A Professional Corporation**

BY: _Michael J. Burns/jc_ (signature)
Michael J. Burns, Esquire
1880 JFK Blvd., 10th Floor
Philadelphia, PA 19103
215-587-1600

Dated: 2/21/03

## CERTIFICATE OF SERVICE

I, Michael J. Burns, Esquire, do hereby certify that a true and correct copy of the attached Defendant's CNA Insurance Company and Continental Casualty Company's Post-Trial Brief was served on February 21, 2003, by first class mail upon counsel listed below:

Bradford Dorrance, Esquire
**Keefer Wood Allen & Rahal, LLP**
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963

By: *Michael J. Burns/k*
Michael J. Burns, Esquire

Dated: 2/21/03