IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                          :
       Plaintiff

                                    :

        v.                          : CIVIL ACTION NO. 1:CV-01-0326

                                    :

CNA INSURANCE COMPANIES, and
CONTINENTAL CASUALTY COMPANY,            :
       Defendants

*M E M O R A N D U M*

I.    *Introduction*

This is a claim by Joan Tesché under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, (ERISA) seeking to recover long-term disability (LTD) insurance benefits.  Continental Casualty Company (Continental)[1] denied Plaintiff LTD benefits, arguing that she was not totally disabled from "any occupation" as defined by the insurance policy.  Applying a *de novo* standard of review, we conclude Continental correctly denied Plaintiff LTD benefits because she is not continuously unable to perform any occupation for which she is or becomes qualified by education, training or experience.

---

[1]  Continental is the underwriting company, and is part of the CNA insurance group.

II.    *Background*

Plaintiff was employed by AMP, Inc. (AMP) from May 1988 to May 1997.  AMP funded LTD benefits for its employees by purchasing a group LTD insurance policy from Continental.  The policy pays a monthly benefit for each month of total disability which continues after a 180-day elimination period.  (Defs.' Ex. B, p. 4, doc. 23).  There are two definitions of total disability in the policy dealing with the insured's ability to perform either her "own occupation" or "any occupation."  For the first twenty-four months, the insured is under a total disability if she is: "(1) continuously unable to perform the substantial and material duties of [her] regular occupation; (2) under the regular care of a licensed physician other than himself; and (3) not gainfully employed in any occupation for which [she] is or becomes qualified by education, training or experience."

After twenty-four months, the insured is entitled to benefits only if she is totally disabled from performing "any occupation."  *Id.*  The policy then defines total disability as: "because of Injury or Sickness, the Insured Employee is: (1) continuously unable to engage in any occupation to (sic) which [s]he is or becomes qualified by education, training or experience; and (2) under the regular care of a licensed physician other than [herself]."  *Id.*

2

In May 1988, Plaintiff began working for AMP as a secretary.  She was eventually promoted to systems procedure analyst.  That position required Plaintiff to write instructional manuals and provide information on-line for computer users.  During her time at AMP, Plaintiff received a Desk Top Publishing certificate, and began to pursue an associate's degree in computer systems at Harrisburg Area Community College.

In 1990, Plaintiff began treatment for lower back pain.  From 1993 through 1995, she had two surgeries to fuse her spine, and in 1995, rods and screws were removed from her back.  Plaintiff wears a brace and takes several pain medications.

On May 3, 1997, it was determined that Plaintiff was disabled from her "own occupation" as a systems procedure analyst.  On October 30, 1997, following the elimination period, Plaintiff began to receive LTD benefits because her chronic back pain rendered her unable to perform the duties of her regular occupation.  As the twenty-four-month period of "own occupation" disability drew to a close, Continental requested information from Plaintiff's doctors to evaluate if she was totally disabled from performing "any occupation."

On March 10, 1999, Continental received a medical assessment of Plaintiff's physical limitations from her family physician, Morton Rubenstein.  Dr. Rubenstein stated that

3

Plaintiff may: stand for one-half hour to one hour at a time; lift ten to twenty pounds; carry ten to twenty pounds; and perform no pushing or pulling. He noted that these were Plaintiff's self-described limitations. Dr. Rubenstein did not know whether these restrictions were temporary or permanent.

On May 21, 1999, Continental received a list of Plaintiff's limitations from Steven Wolf, an orthopedic surgeon who treated her. Dr. Wolf noted that Plaintiff: could sit for one-half hour at a time; stand for one-half hour at a time; lift five to ten pounds; walk for fifteen minutes; and was restricted from bending, squatting and crawling. He indicated that these restrictions were permanent, and noted his findings were objective. He also noted that Plaintiff's condition seemed to have been worsening.

In June 1999, Continental referred Plaintiff's file to one Tony Gulledge, a vocational specialist, to determine if Plaintiff's physical limitations would render her totally disabled from performing "any occupation" after October 1999. Gulledge reviewed the doctors' reports and interviewed Plaintiff over the telephone. They discussed jobs that Plaintiff could perform with her stand/sit limitations: telemarketer, customer service representative, motel night auditor and automobile rental agent. (Defs' Ex. A at CCC000141, doc. 23). Gulledge's recommendation to Continental was: "Given Ms Teshe's (sic) age,

4

education level, work experience, geographical location, and current functional capabilities the entry level trainable job options described above would appear appropriate.  File plan: DBS will pay through the Own Occ period and close file." *Id.* Based on this information, Continental informed Plaintiff that effective October 30, 1999, she would no longer receive LTD benefits because it did not consider her to be totally disabled from performing any occupation.  After securing counsel, Plaintiff requested that Continental's decision be reviewed by its appeals committee.  On February 21, 2000, Continental affirmed its decision to terminate Plaintiff's LTD benefits.[2] (Defs' Ex. A at CCC000133-34, doc. 23).

On August 8, 2002, Dr. Wolf stated in a deposition that he had examined Plaintiff on July 30, 2002.  (doc. 48, p. 12).  He found that Plaintiff still had chronic problems and pain.  *Id.*  Following this examination, Dr. Wolf concluded that Plaintiff's physical limitations and restrictions were very similar to the ones he sent to Centennial in May 1999.  He continues to believe that Plaintiff's tolerance for sitting is very poor, and that she now cannot sit for more than fifteen or twenty minutes at a time.  *Id.*, at 13.

---

[2]  A detailed explanation of the events leading to this decision is contained in the court's memorandum dated March 28, 2002. (doc. 32)

On August 9, 2002, at trial, Plaintiff testified that during a normal day she wakes up around 6:00 a.m., and takes her medication. (doc. 56, p. 14). After an hour, she is able to get up and do some limited physical activities for about two hours. Then she has to rest for about an hour or so, depending on her pain. *Id.,* at p. 15. This cycle of light activity followed by rest continues until Plaintiff retires for the evening at 9:00 p.m. *Id.* During the day, Plaintiff's activities include: light house work, cooking, folding laundry, oil painting, cross stitching and reading.[3] *Id.,* at p. 16. Plaintiff can drive herself once or twice a week. *Id.,* at p. 17. Plaintiff also testified that the medication she takes causes "bad memory, lack of concentration and tiredness." *Id.,* at p. 11.

Additionally, two vocational experts opined whether Plaintiff's physical limitations cause her to be unable to engage in any occupation for which she is qualified by education, training or experience. Mark Lukas, ED.D., concluded that, based on the limitations enumerated by Dr. Wolf, Plaintiff is unable to perform any of the jobs suggested by Mr. Gulledge. (doc. 57, p. 13). Lukas stated that Plaintiff's "limitations were sufficiently severe as to preclude competitive work activity." *Id.,* at p. 11. Another vocational expert, George

---

[3] This list of activities is similar to the one Plaintiff provided in a previous deposition.

Parsons, Ph.D., disagreed with Lukas' opinion. (Def's Ex. D, doc. 59, p. 23). Parsons stated that there are jobs available to Plaintiff that would allow her to work within the physical limitations discussed by her doctors. *Id.*, at p. 17. He believes Plaintiff could work at a job which gave her "the choice of having to alternate from a sitting, standing and walking position at her own choice and would allow her frequent periods of time where she could take longer breaks." *Id.* Parsons felt that Plaintiff could work as: an interview clerk, an expediter, administrative support personnel, a scheduler, and an industrial caller. *Id.*

III.  *Discussion*

Generally, we apply a *de novo* standard of review to a plan administrator's denial of ERISA benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). However, where a plan grants discretionary authority to the administrator to determine eligibility for benefits, the reviewing court must confine its inquiry to determining whether a denial of benefits is "arbitrary and capricious." *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am.*, 222 F.3d 123, 129 (3d Cir. 2000).

7

Here, Plaintiff and Continental have agreed that *de novo* review is appropriate.  (doc. 63, p. 15, doc. 65, p. 18). As discussed in our memorandum of March 28, 2002, there is no explicit or implicit discretion granted to the plan administrator in the policy.  (doc. 32, pp. 15-16).  *De novo* review is appropriate in this case because the policy requires "written proof of loss," but does not specify that Continental "is to be the sole arbiter of the sufficiency of that proof." *Brown v. Continental Casualty Co.*, No. 99-6124, 2003 WL 296325, *4 (E.D. Pa. Feb. 11, 2003); *see also McBride v. Continental Casualty Co.*, No. 97-4625, 1999 WL 301811, *4 (E.D. Pa. May 11, 1999)(applying *de novo* review).  Based on this, we will evaluate this case under the *de novo* standard, and determine "whether the denial of benefits was *correct*, not whether it was reasonable." *Brown*, *supra,* at *6. (emphasis in original).  In exercising *de novo* review, we are not limited to the evidence before the administrator.  *Luby v Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184-85 (3d Cir. 1991).

The issue in this case is whether Plaintiff's physical limitations render her continuously unable to engage in any occupation to which she is or becomes qualified by education, training or experience.  The parties agree that Plaintiff has physical limitations caused by her back problems.  The question

8

is whether Plaintiff is totally disabled because she unable to perform any occupation.

The policy does not expressly define the term occupation. In broad terms, "any occupation" is work which the insured is qualified to perform based on her education, training or experience. Cheryl Sauerhoff, the Appeals Committee Director at CNA, said that the term occupation used in the policy means full-time employment, ranging between thirty and forty hours of work a week. (doc. 56, p. 102). Sauerhoff also testified that "any occupation" does not parallel the Social Security Administration's definition of substantial gainful employment. *Id.*, at p. 74. We conclude that "any occupation" means between thirty or forty hours of full-time employment a week, which the Plaintiff is qualified to perform based on her education, training or experience. It does not include part-time work or volunteer activities.

Plaintiff's ability to perform "any occupation" was evaluated by three vocational experts. In 1999, Tony Gulledge found that Plaintiff's physical limitations would allow her to work as a telemarketer, customer service representative, motel night auditor and automobile rental agent. Gulledge recommended these jobs because they are sedentary occupations which offer a sit/stand option which conforms to Plaintiff's limitations. Additionally, Gulledge noted Plaintiff had considered returning

9

to work in other home occupations. (Defs' Ex. A at CCC000141, doc. 23). Gulledge based his recommendations on a review of Plaintiff's medical records and a telephone interview with her.

Mark Lukas testified that "given the nature of [Plaintiff's] limitations, the extremely abbreviated tolerances for sitting, standing and walking, the presence of chronic pain, the indicated difficulties with concentration I felt her capabilities fell below the threshold necessary to perform competitive employment, even sedentary work." (doc. 57, p. 10). According to Lukas, Plaintiff has the education, experience and training to perform the jobs suggested by Gulledge. *Id.*, pp. 17-18. However, Lukas believes that the physical limitations outlined by Dr. Wolf preclude Plaintiff from returning to "competitive employment." *Id.,* pp. 23-25. Lukas stated that he evaluated Plaintiff's ability to return to "competitive employment," as opposed to a supported employment situation, where productivity standards are lower than competitive employment. *Id.* Lukas' conclusions are based on his review Dr. Wolf's reports and a telephone interview with Plaintiff.

George Parsons concluded that Plaintiff is not totally disabled because there are a number of occupations she can perform based on her employment history and physical limitations. Parsons stated that Plaintiff could continue to work even if she needed to rest during the day. "I think that

10

the concept of lying down for two hours in the morning or two hours in the afternoon is truly an accommodation.  It may change and alter how she goes into work or when she works.  I don't think it stops her from working." (Defs.' Ex. D, doc. 59, p. 37).  Parsons felt that Plaintiff had the capacity to return to computer analysis work, similar to the work she had done for AMP, because she could alternate her working position and take frequent breaks.  *Id*., p. 17-18.  Parsons did not interview Plaintiff, but based his conclusions on various medical records, and Plaintiff's deposition and testimony at trial.  *Id.,* at 13-15.

Based on a *de novo* review of the record, we conclude that Plaintiff is not totally disabled because she is not continuously unable to engage in any occupation for which she is or becomes qualified by education, training or experience.  Our conclusion is supported by several factors.

First, we agree with the vocational analysis of Dr. Parsons.  Plaintiff's employment history demonstrates that she is an above average employee, who is qualified for any of the jobs discussed by Gulledge, Lukas and Parsons.  Parsons testified that there are several jobs available to Plaintiff which will accommodate her physical limitations.  Specifically, these jobs would allow Plaintiff to alternate between a sitting and a standing position to work.  Plaintiff testified that she

changes position to deal with her pain without thinking about it. (doc. 56, pp. 18-19). She also stated that at home she can sit for fifteen minutes with relative comfort, and stand for about ten or fifteen minutes. *Id.* Additionally, it is important to note that Dr. Wolf stated that he would not stop Plaintiff from trying to work forty hours a week. (doc. 48, p. 15). Based on the broad language of the policy, Plaintiff is unable to claim that she is totally disabled from performing "any occupation."

Next, Plaintiff argues that she is unable to continuously perform any occupation because she must rest for a period of one to two hours in the morning and two hours in the afternoon. (doc. 56, pp. 20-23). Our review of the record indicates that Dr. Wolf did not state that Plaintiff is required to lie down for a period of time in the morning and in the afternoon as part of her physical limitations. This is significant because, unlike the other restrictions specifically noted by Dr. Wolf, there is no medical evidence which confirms need for these periods of rest.

During Dr. Wolf's examination of Plaintiff in July 2002, Plaintiff told him that she needed to lie down frequently. (doc. 48, p. 23). However, he only supplemented Plaintiff's physical limitations by reducing the time Plaintiff can continuously sit from no more than thirty minutes to between

12

fifteen or twenty minutes. *Id.* He did not add two to four hours of rest a day to her physical restrictions and limitations. Dr. Wolf testified that Plaintiff could not perform a job that "would require her to sit for prolonged periods or stand in one position for a long time or do any repetitive bending or lifting...." *Id.*, at p. 15. He did not indicate that Plaintiff would be precluded from performing a job because of her need to lie down for two to four hours a day.

As mentioned above, Dr. Parsons believes that Plaintiff would be able to continuously perform "any occupation" despite her need for periods of rest in the morning and afternoon. Parsons considered this when he looked at various occupations which were recommended to Plaintiff. He stated, "taking periods of time to lie down would alter how she went about doing a job. It wouldn't necessarily prevent her from working but it does alter how she would do it." (Defs.' Ex. D, doc. 59, p. 18).

Considering the above, we conclude that Plaintiff is not totally disabled because she is not continuously unable to engage in any occupation for which she is or becomes qualified by education, training or experience. We conclude Continental was correct in denying benefits claimed by Plaintiff.

We will issue an appropriate order.


s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date:  March 18, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN D. TESCHÉ,                        :
        Plaintiff

                                       :

        v.                             : CIVIL ACTION NO. 1:CV-01-0326

CNA INSURANCE COMPANIES, and           :
CONTINENTAL CASUALTY COMPANY,
        Defendants                     :


*O R D E R*


        AND NOW, this 18th day of March, 2003, it is ordered

that:

        1.  Plaintiff's claim for long-term
        disability benefits under the Employee
        Retirement Income Security Act, 29 U.S.C. §
        1001, *et seq.*, (doc. 1), is denied.

        2.  The Clerk of Court is directed to
        enter judgment in favor of Defendants and
        against Plaintiff.

        3.  The Clerk of Court shall close this
        file.


                                s/ William W. Caldwell
                                William W. Caldwell
                                United States District Judge