**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-2078
_____

JOAN D. TESCHÉ,
                Appellant

v.

*CONTINENTAL CASUALTY COMPANY;
CNA INSURANCE COMPANIES

*(Amended in accordance with Clerk's Order dated 5/15/03)
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 01-cv-00326)
District Judge: Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
March 22, 2004

Before: ROTH, AMBRO, AND CHERTOFF, CIRCUIT JUDGES

(Filed : September 7, 2004)

_____

OPINION
_____


ROTH, Circuit Judge

      Appellant Joan D. Tesché filed a civil action in United States District Court for the

Middle District of Pennsylvania under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) (ERISA), seeking to recover long-term disability benefits from Continental Casualty Company. She also claimed, among other things, that Continental breached its fiduciary duties under section 1132(a)(2) by failing to disclose information about the appeal process.

Tesché was employed by AMP, Inc. of Harrisburg, Pennsylvania from May 1988 until May 1997. She began working as a secretary, but eventually was promoted to systems procedure analyst. In 1990 Tesché began treatment for lower back pain. Between March 1992 and May 1996 she had three back surgeries. In the third surgery a bone screw was removed because her spine had not fused properly. Today, Tesché wears a brace and takes several pain medications. She receives social security disability benefits.

AMP carried group long-term disability insurance through Continental. The policy provided that an employee is entitled to benefits for the first 24 months, after the 180-day elimination period, if she is totally disabled from performing her "own occupation." The policy made Continental the plan administrator. On May 3, 1997, Tesché was determined to be disabled from her "own occupation" as a systems procedure analyst.[1] She was paid

---

[1] During the first 24 months, total disability, as defined under the policy, occurs when:

> the Insured Employee, because of Injury or Sickness, is:
>
> (1) continuously unable to perform the substantial and material duties of *his regular occupation*;

benefits for a period commencing after the 180-day elimination period (May 3, 1997 through October 30, 1997) for the 24-month "own occupation" period (October 30, 1997 to October 30, 1999).

After the 24 month "own occupation" period, an insured employee is entitled to benefits only if she is totally disabled from performing "any occupation." The policy then defines total disability as follows:

> because of Injury or sickness, the Insured Employee is:
>
> (1) continuously unable to engage *in any occupation* to which he is or becomes qualified by education, training or experience; and
>
> (2) under the regular care of a licensed physician other than himself.

(emphasis added).

In June 1999, Continental referred Tesché to Tony Gulledge, a vocational specialist. He interviewed her over the telephone, and they discussed jobs she could perform with her sit/stand limitations, including telemarketer, customer service representative, motel night auditor, and automobile rental agent. Gulledge's recommendation to Continental was that Tesché could perform these jobs. By letter dated July 26, 1999, Tesché was informed that, effective October 30, 1999, she would no longer

---

> (2) under the regular care of a licensed physician other than himself; and
>
> (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

(emphasis added).

3

receive benefits because she was not continuously unable to engage in "any occupation."

The denial of benefits was affirmed on February 21, 2000. Tesché then filed this ERISA action. The District Court granted summary judgment to Continental on the breach of fiduciary duties claim because Tesché sought relief individualized to her and not on behalf of the entire plan; thus, her claim was not cognizable under section 1132(a)(2). The termination of benefits claim was tried without a jury. Tesché testified that she spends the day in light activity around the house until she gets tired and has to rest. She rests about two hours in the morning and for about the same amount of time in the afternoon, an assertion that is at the heart of her claim of total disability. Mark Lucas, Ed.D., a vocational expert, testified on her behalf that, based on the limitations identified by Tesché's orthopedic surgeon, she was unable to perform any of the jobs suggested by Gulledge. Lukas stated that Tesché's limitations were severe enough to prevent her from working in a competitive setting.

Continental's vocational expert, George Parsons, Ph.D., testified that he disagreed with Lukas's opinion. Parsons testified that there are jobs available that would allow Tesché to work. She would need a job that would give her the choice of alternating between sitting, standing, and walking, and allow her frequent breaks, in other words, one that would accommodate her need for rest, but he believed she could work as an interview clerk, an expediter, administrative support personnel, a scheduler, and an industrial caller.

Applying a *de novo* standard of review, the District Court awarded judgment to

Continental and against Tesché. The court first determined that "any occupation" is broadly defined as work that the insured is qualified to perform based on her education, training or experience. It does not include part-time work. The court then evaluated the testimony of the three vocational experts, Gulledge, Lucas and Parsons.

The District Court concluded that, based on the broad language of the policy, Tesché was not totally disabled because she is not continuously unable to engage in any occupation. Thus, the District Court determined that denial of long-term benefits did not violate ERISA. Tesché appealed.

We will affirm. We exercise jurisdiction under 28 U.S.C. § 1291. The District Court reviews a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) under a *de novo* standard unless the plan gives the administrator discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties stipulated to the *de novo* standard here. This stipulation is reasonable in that there is no language in the policy specifically granting discretionary authority to Continental. The District Court thus was required to make an independent determination of Tesché's eligibility for benefits, see Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1185 (3d Cir. 1991), giving no deference to either party, see Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000).

Tesché argues on appeal that the District Court erred in requiring her to provide objective medical proof of her need to lie down for a period of time in the morning and

afternoon, and deviated from the standard we announced in Mitchell v. Kodak, 113 F.3d 433 (3d Cir. 1997). In Mitchell, we held that a plan administrator acted arbitrarily in denying benefits on the ground that the employee had failed to provide any objective evidence that his chronic fatigue syndrome (CFS) made him unable to engage in substantial gainful work. 113 F.3d at 442-43. We did so because the employee's physicians had supplied undisputed evidence to indicate that the employee suffered from severe CFS that had precluded him from engaging in any work.

The vocational evidence in Tesché's case is not undisputed, however, and thus Mitchell does not determine the outcome here. We conclude that the District Court did not impose any impermissible burden of proof on Tesché. The court merely decided that Parsons's analysis and conclusion was more persuasive after properly examining and weighing the vocational evidence. The court noted the medical restrictions and limitations documented by Tesché's own treating physicians, accepted them, and then determined that Tesché, even so, had not shown that she was disabled from *any occupation* as broadly defined by the policy.

Tesché also argues that Parsons was incompetent and rendered an unreliable, equivocal opinion that the District Court should not have relied upon.[2] We do not agree. Parsons's evaluation was thorough and complete. He took all pertinent records and information into consideration, including the award of social security benefits, and his

---

[2] Parsons's competency was not challenged below and, in any event, cannot reasonably be questioned in view of his extensive qualifications.

opinion is not internally inconsistent. He accepted Tesché's restrictions as stated by her treating physicians but weighed those limitations with her above average ability and, using his expertise, arrived at a sound conclusion that there are jobs available even with her limitations. Furthermore, the Social Security award is not binding on Continental any more than Continental's denial of benefits is binding on the Social Security Administration. The District Court did not err in relying on Dr. Parsons's testimony. See Fed. R. Civ. Pro. 52(a).

In sum, we find no basis for disturbing the District Court's independent determination that Tesché was ineligible for long-term disability benefits under AMP's policy.[3]

Finally, Tesché argues that Continental issued an untimely decision in violation of ERISA. We are not persuaded that a procedural violation occurred here.

For the above reasons, we will affirm the judgment of the District Court in favor of Continental and against Tesché.

---

[3] To the extent that Tesché suggested in her brief that her fibromyalgia strengthens her claim, we note that the record, while noting a diagnosis of fibromyalgia, is devoid of any medical opinion that she is disabled from any occupation due to fibromyalgia.